1
2
3
4
5
6
7
8

Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9  In re Microsoft Browser Extension Litigation

10

11

12

13

14

No. 2:25-cv-00088-RSM

**CONSOLIDATED CLASS ACTION COMPLAINT**

**JURY DEMAND**

15    Pursuant to the Court's Orders dated March 5, 2025 (ECF No. 28) and March 25, 2025

16 (ECF No. 33), Plaintiffs Aaron Ramirez, Colbow Design LLC, Daniel Perez, David Hiser, Justin

17 Tech Tips LLC, and Storm Productions LLC, individually and on behalf of all others similarly

18 situated, bring this action against Defendant Microsoft Corporation, and allege as follows:

### I.    INTRODUCTION

20    1.    This action is brought on behalf of online content creators who allege that Microsoft

21 misappropriated commissions they earned by referring customers to purchase products online.

22 Plaintiffs are online creators who post content on websites or platforms like YouTube, Instagram,

23 and TikTok. One way these creators earn money is by directing their viewers and website visitors

24 to purchase specific products and services from online retailers. Content creators post "affiliate

25 links" that include an identifying code that is unique to a particular creator, so when a purchase is

26 made using a creator's affiliate link, online retailers know whom to credit with the sale.

CONSOLIDATED CLASS ACTION COMPLAINT - 1
No. 2:25-cv-00088-RSM

2.      Microsoft owns and operates Microsoft Edge Shopping, a browser tool that it advertises as a way for consumers to get online discounts. Microsoft Edge Shopping, however, does not merely identify potential discounts—it replaces content creators' referral codes with Microsoft's own code, allowing Microsoft to take millions of dollars in referral commissions that it did not earn.

3.      Affiliate links connect shoppers, content creators, and retailers in the digital economy. Each affiliate link is a unique uniform resource locator ("URL") posted by content creators to earn commissions on products they recommend. When a member of the creator's audience clicks on an affiliate link and purchases a recommended product, the creator receives a portion of the sale as compensation. This process is seamless to the shopper and rewards the content creator who drove the sale.

4.      Browser extensions are small software programs that add features to a user's internet browser. Microsoft Edge Shopping ("Microsoft Shopping"), offered by Microsoft, is one such browser extension.

5.      In many instances, consumers voluntarily install a browser extension for online shopping and register for an account in order to get access to coupons and discounts. By contrast, the Microsoft Shopping Browser extension comes pre-loaded on Microsoft's Edge browser, which is the default internet browser on every Windows PC.

6.      For online shoppers, the Microsoft Shopping extension works by searching for available coupons, offering price comparisons or price history, and incorporating a built-in rewards point system called "Microsoft Cashback." Microsoft claims it has saved users of the Microsoft Shopping extension over $14 billion as of the filing of this complaint.[1]

7.      Based on these purported savings, Microsoft Shopping appeals to consumers looking for discounts on products or services they are already interested in purchasing, in many cases based on the recommendations from content creators such as Plaintiffs.

---

[1] Microsoft Edge Shopping, https://www.microsoft.com/en-us/edge/shopping.

CONSOLIDATED CLASS ACTION COMPLAINT - 2
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

8.      Microsoft Shopping's browser extension, however, is designed to take commissions from content creators, including website operators, online publications, YouTube channels, influencers, and other content creators online (collectively, "Content Creators").

9.      Under industry standards for online marketing, when a shopper clicks an affiliate link and purchases a product, the Content Creator who posted the link should receive the affiliate commission for the sale because they provided the last link or affiliate code that was clicked before the user made their purchase. This process is referred to as "last-click attribution model" and, as discussed further below, is the most widely used model for online marketing.

10.     When shoppers activate the Microsoft Shopping extension, Microsoft exploits last-click attribution to cheat Content Creators out of the commissions to which they are entitled and divert the money to itself. The Microsoft Shopping extension makes the shopper's interaction with that extension the "last click" for attribution purposes, even though in reality Microsoft had no role in marketing the product to the shopper or generating the sale for the online retailer.

11.     As described more thoroughly below, Microsoft programed the Microsoft Shopping browser extension to operate behind the scenes to affect any and all affiliate codes during the checkout process and to redirect commissions to itself. It does so by substituting its own affiliate marketing identity code into a consumer's cookie in place of the Content Creator's affiliate marketing identity code, even though the consumer used the Content Creator's specific affiliate web link to obtain and purchase a product or service.

12.     Through these practices, Microsoft Shopping deprives Content Creators of the revenue they have earned and on which many Content Creators depend to sustain their businesses.

13.     Plaintiffs are Content Creators whose commission payments Microsoft has wrongfully misappropriated. Plaintiffs bring this case on their own behalf and on behalf of all others similarly situated to recover the damages they have sustained and enjoin Microsoft's wrongful conduct going forward.

CONSOLIDATED CLASS ACTION COMPLAINT - 3
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## II.    JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class Member is of diverse citizenship from Defendant, there are more than 100 Class Members nationwide, and the aggregate amount in controversy exceeds $5,000,000. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

15.    This Court has personal jurisdiction over Microsoft under 28 U.S.C. § 1407, because Microsoft has sufficient minimum contacts in the Western District of Washington, and because Microsoft has otherwise intentionally availed itself of the markets within the Western District of Washington through its business activities, such that the exercise of jurisdiction by this Court is proper and necessary.

16.    Venue is proper under 28 U.S.C. § 1391(b)(1) & (2) because a substantial part of the events or omissions giving rise to the claims occurred in the Western District of Washington and because Microsoft maintains its principal place of business in Redmond, Washington.

## III.    DEFENDANT

17.    Defendant Microsoft Corporation is a Washington corporation organized and incorporated under the laws of Delaware. It transacts business and is headquartered within this judicial district at 1 Microsoft Way, Redmond, Washington 98052.

## IV.    PLAINTIFFS

**A.    Aaron Ramirez**

18.    Aaron Ramirez is a resident of the State of California.

19.    Mr. Ramirez is a Content Creator and affiliate marketer, who has had an account on YouTube for approximately seven years. He creates content regarding fashion and fitness, among other things, and he has nearly 225,000 followers.

20.    Mr. Ramirez invests substantial time and effort into cultivating his follower base, searching for the best deals from online merchants, and promoting those deals online.

CONSOLIDATED CLASS ACTION COMPLAINT - 4
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

21.     Mr. Ramirez regularly partners with online merchants, either directly or through third-party affiliate networks, to advertise the online merchants' products through affiliate links. Some of Mr. Ramirez's merchant partners include Amazon, Best Buy, Hollister, Abercrombie & Fitch, Walmart, H&M, and Banana Republic.

22.     Mr. Ramirez has partnered with the above online merchants for over two years, and he intends to continue partnering with these merchants in the future. He partners with online merchants to receive commissions when followers buy products that he recommends.

23.     In the past two years, Mr. Ramirez has generated approximately $290,000 or more in sales for which he received a commission, and has earned approximately $26,000 or more in commission payments through affiliate marketing.

24.     Mr. Ramirez would have earned more in commissions but for Microsoft's scheme to poach commissions via its Microsoft Shopping browser extension. Through this extension, Microsoft took credit for sales that Mr. Ramirez generated with his affiliate links.

**B.     Colbow Design LLC (a/k/a "Brad Colbow")**

25.     Colbow Design LLC is a limited liability company organized and existing under the laws of Ohio with its principal place of business in Ohio.

26.     Colbow Design LLC is owned and operated by Brad Colbow, a Content Creator and affiliate marketer who has had a platform on YouTube for over ten years.

27.     Mr. Colbow runs an art illustration channel on YouTube that has approximately 890,000 subscribers. His videos provide his audience with an array of reviews and recommendations for the latest technology, with a focus on digital illustration.

28.     Mr. Colbow also rates products and shares affiliate links on his own website, https://www.bradsartschool.com.

29.     Mr. Colbow invests substantial time and effort into cultivating his follower base, searching for the best deals from online merchants, and promoting those deals online.

30.     Mr. Colbow regularly partners with online merchants, either directly or through

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

third-party affiliate networks, to advertise the online merchants' products through affiliate links. Some of Mr. Colbow's merchant partners include Amazon and MagicLinks, the latter of which he uses to provide links to products on B&H Photo and Best Buy.

31.     Mr. Colbow has partnered with Amazon for over ten years and with MagicLinks for nearly four years. He intends to continue partnering with both Amazon and MagicLinks in the future. Mr. Colbow partners with online merchants to receive commissions when followers buy products that he recommends.

32.     In the past two years, Mr. Colbow's various affiliate links have generated approximately 9,000 ordered items for which he received a commission. From 2020 to 2024, Mr. Colbow has received approximately $98,000 in commission payments through affiliate marketing.

33.     Mr. Colbow would have earned more in commissions but for Microsoft's scheme to poach commissions via its Microsoft Shopping browser extension. Through this extension, Microsoft took credit for sales that Mr. Colbow generated with his affiliate links.

**C.     Daniel Perez**

34.     Daniel Perez is a resident of the State of Florida.

35.     Mr. Perez is a Content Creator and affiliate marketer with accounts on TikTok, YouTube, and Facebook. Mr. Perez has approximately 35,000 followers on these various platforms. He posts his affiliate marketing links on https://www.fycdeals.com/, as well as a Telegram group and a Facebook group.

36.     Mr. Perez invests substantial time and effort into cultivating his follower base, searching for the best deals from online merchants, and promoting those deals online.

37.     Mr. Perez regularly partners with a number of online merchants, either directly or through third-party affiliate networks, to advertise the online merchants' products through affiliate links. Some of Mr. Perez's merchant partners include Amazon, Walmart, Target, and Woot. His affiliate links have generated thousands of purchases and thousands of dollars in commissions from those purchases.

CONSOLIDATED CLASS ACTION COMPLAINT - 6
No. 2:25-cv-00088-RSM

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

38.    Mr. Perez has partnered with Amazon since March of 2023, with Walmart since March of 2024, with Target since approximately April of 2024, and with Woot for approximately six months. He intends to continue partnering with each of these online merchants in the future. He partners with online merchants to receive commissions when followers buy products that he recommends.

39.    In the past year, Mr. Perez has generated more than 15,000 orders for which he received a commission and has earned approximately $19,500 in commission payments through affiliate marketing.

40.    Mr. Perez would have earned more in commissions but for Microsoft's scheme to poach commissions via its Microsoft Shopping browser extension. Through this extension, Microsoft took credit for sales that Mr. Perez generated with his affiliate links.

**D.    David Hiser**

41.    David Hiser is a resident of the State of Washington.

42.    Mr. Hiser is a Content Creator and affiliate marketer who has operated a YouTube account for approximately eight years. He creates content regarding recreational travel and has nearly 135,000 followers.

43.    Mr. Hiser invests substantial time and effort into cultivating his follower base, searching for the best deals from online merchants, and promoting those deals online.

44.    Mr. Hiser regularly partners with online merchants, either directly or through third-party affiliate networks, to advertise the online merchants' products through affiliate links. Some of Mr. Hiser's merchant partners include Lectric eBikes, Micro-Air, Hutch Mountain, and Wolfbox.

45.    Mr. Hiser has partnered with many of these online merchants since 2019, and he intends to continue partnering with these online merchants in the future. He partners with online merchants to receive commissions when followers buy products that he recommends.

46.    Since 2019, Mr. Hiser has generated at least approximately 2,000 orders for which

he received a commission and has earned approximately $20,000 in commission payments through affiliate marketing.

47.    Mr. Hiser would have earned more in commissions but for Microsoft's scheme to poach commissions via its Microsoft Shopping browser extension. Through this extension, Microsoft took credit for sales that Mr. Hiser generated with his affiliate links.

**E.    Justin Tech Tips LLC (a/k/a "Justin Wyatt")**

48.    Justin Tech Tips LLC ("Justin Tech Tips") is a limited liability company organized and existing under the laws of Texas with its principal place of business in Texas.

49.    Justin Tech Tips is owned and operated by Justin Wyatt, a Content Creator and affiliate marketer who has had a platform on YouTube for over four years.

50.    On YouTube alone, Mr. Wyatt's channel "Just!N Tech" has over 108,000 subscribers. The channel features reviews for gaming computers, as well as videos on gaming technology and virtual reality. Justin Tech Tips also has accounts on TikTok, Rumble, Facebook, and Instagram, and Mr. Wyatt makes posts on his own website, https://justintech.tips/.

51.    Mr. Wyatt invests substantial time and effort into cultivating his follower base, searching for the best deals from online merchants, and promoting those deals online.

52.    Mr. Wyatt regularly partners with or otherwise promotes a number of popular online merchants through his affiliate links, including Best Buy, Amazon, Walmart, HP, and LG.

53.    Mr. Wyatt has partnered with and/or promoted products from Best Buy and Amazon for approximately four years, Walmart for approximately one year, HP for approximately three and a half years, and LG for approximately one year. He intends to continue partnering with many, if not all, of these merchants in the future. Mr. Wyatt partners with online merchants to receive commissions when followers buy products recommended by Mr. Wyatt.

54.    Per year, Justin Tech Tips generates approximately 10,000 transactions and hundreds of thousands of dollars in commissions through affiliate marketing with its merchant partnerships and affiliate marketing. Since its inception in 2020, Justin Tech Tips has generated

CONSOLIDATED CLASS ACTION COMPLAINT - 8
No. 2:25-cv-00088-RSM

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1  close to one million dollars in affiliate commissions.

2      55.    Justin Tech Tips would have earned more in commissions but for Microsoft's

3  scheme to poach commissions via its Microsoft Shopping browser extension. Through this

4  extension, Microsoft took credit for sales that Justin Tech Tips generated with its affiliate links.

5  **F.    Storm Productions (a/k/a "Madison Avenue Spy")**

6      56.    Storm Productions LLC is a limited liability company organized and existing under

7  the laws of New York with its principal place of business in New York, New York.

8      57.    Storm Productions has operated a popular shopping blog called Madison Avenue

9  Spy that showcases the best deals in the fashion world via affiliate links. The blog has nearly

10  22,000 subscribers and generates significant traffic. Storm Productions also runs an Instagram

11  account by the same name as well as a Substack called MadSpy, where it also regularly posts

12  fashion affiliate links. The Instagram account has approximately 110,000 followers, and the

13  Substack has over 12,000 subscribers. In addition to these platforms, Madison Avenue Spy has an

14  online presence on Pinterest, TikTok, X (formerly Twitter), Facebook, and Telegram.

15      58.    Storm Productions invests substantial time and effort into cultivating its follower

16  base, searching for the best fashion deals from online merchants, and promoting those deals online.

17      59.    Storm Productions regularly partners with online merchants, either directly or

18  through third-party affiliate networks, to advertise the online merchants' products through affiliate

19  links. Some of Storm Productions' merchant partners include Nordstrom, Saks Fifth Avenue,

20  Sephora, Outnet, and Neiman Marcus.

21      60.    Storm Productions has partnered with Nordstrom, Saks Fifth Avenue, and Sephora

22  for more than five years and has partnered with Outnet and Neiman Marcus for ten years or more.

23  Storm Productions intends to continue partnering with these merchants in the future. Storm

24  Productions partners with these and other online merchants to receive commissions when

25  followers buy products recommended by Storm Productions.

26      61.    For years, Storm Productions has earned substantial commissions on sales

CONSOLIDATED CLASS ACTION COMPLAINT - 9
No. 2:25-cv-00088-RSM

generated through affiliate links. In the past year, Storm Productions has generated over 5,000 orders and earned over $200,000 in commission payments through affiliate marketing.

62.    Storm Productions would have earned more in commissions but for Microsoft's scheme to poach commissions via its Microsoft Shopping browser extension. Through this extension, Microsoft took credit for sales that Storm Productions generated with its affiliate links.

## V.    STATEMENT OF FACTS

### A.    Background

#### 1.    Creators and the Commission System

63.    A Content Creator is someone who produces material such as videos, articles, podcasts, or social media posts to engage an audience and earn income from their work. Content Creators generate revenue through sponsored content, affiliate marketing, ad revenue, merchandise sales, and/or subscriptions.

64.    Online merchants, like Walmart, Best Buy, Target, and Macy's, partner with Content Creators to promote their products and services and, in exchange, provide commissions to those Content Creators from the sale of those products and services.

65.    Content Creators earn commissions by directing their readers, viewers, and/or followers to affiliate links that they share on their various platforms and social media channels. Those links lead to online retailer sites where shoppers can purchase the items promoted by the creator in its content.

66.    With the increasing popularity of e-commerce, social media, and platforms like YouTube, Instagram, and TikTok, many merchants have turned to the online creator community to promote and market their products to consumers. Independent creators, in turn, are able to secure compensation for their work through commissions.

67.    How much money a Content Creator earns depends on factors like the commission rate, the price of the product, and how many people ultimately buy products recommended through their links. For example, in 2023, a typical affiliate commission rate for fitness products was

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

between 10-20%, as shown below.[2]

| Product Category | Affiliate Commissions (% of Sale) |
| --- | --- |
| Arts & Crafts | 12% |
| Beauty | 15-20% |
| Business | 20-25% |
| Clothing | 10-15% |
| Computers & Tech | 15-20% |
| Education | 20% |
| Family | 20-25% |
| Financial | 30-40% |
| Fitness | 10-20% |
| Food & Drink | 10-20% |
| Hair | 10% |
| Health | 20-30%+ |
| Home | 10-20% |
| Jewelry | 15-30% |
| Paleo | 10% |
| Pets | 10-20% |
| General Products | 10-20% |
| Recreation | 10% |
| Services | 30% |
| SaaS | 20-30% |
| Adult | 10-15%+ |

68.     Around 80% of creators earn up to $80,000 a year from affiliate marketing, while top creators can earn over $1 million, as shown below.[3]

| Income | Share of Affiliate Marketers |
| --- | --- |
| Up to $80,000 | 80% |
| $80,000 to $1 Million | 15% |
| Over $1 Million | 1% |

69.     In 2023, the size of the affiliate marketing industry was $15.7 billion, and it is expected to grow to $36.9 billion by 2030.[4]

70.     The affiliate marketing industry is profitable because it is an effective way to market products and services to consumers.

71.     According to the 2024 Modern Consumer Survey published by GRIN, the world's leading online creator management platform, 74% of consumers have purchased a product because

---

[2] Ruthie Carie, *How to Negotiate with Affiliates*, REFERSION (last updated Mar. 1, 2023), https://www.refersion.com/blog/affiliates-negotiation/.

[3] Shubham Singh, *115 Affiliate Marketing Statistics (2025): Market Size & Trends*, DEMANDSAGE (Feb. 18, 2025), https://www.demandsage.com/affiliate-marketing-statistics/.

[4] Rewardful Team, *18 Affiliate Marketing Statistics for 2025*, REWARDFUL (last updated Dec. 5, 2024), https://www.rewardful.com/articles/affiliate-marketing-statistics.

CONSOLIDATED CLASS ACTION COMPLAINT - 11
No. 2:25-cv-00088-RSM

a social media influencer has recommended it.[5]

72.     One recent study found that "influencer-directed social media marketing is twice as effective as brand-directed social media marketing in driving brand sales."[6]

73.     Affiliate marketing currently drives 16% of all e-commerce sales in the United States.[7]

74.     Plaintiffs and Class Members are online creators who create content on their own websites as well as websites such as YouTube, TikTok, Twitter/X, Facebook, and Instagram, and earn commissions for promoting products and services as affiliate marketers.

### 2.     Affiliate Links

75.     Affiliate links are special links that Content Creators use to make money online. When a creator shares an affiliate link, it directs their audience to a product or service on a retailer's website. If a person clicks on the link and buys something, the creator who shared the link earns a commission, which is usually either a percentage of the sale price or a set amount.

76.     For example, individuals who participate in Walmart's Affiliate Link program receive "[c]omission(s) on products that are actually purchased by a customer within the relevant cookie window after the customer has initially entered our Site ("Referral Window") as long as the customer re-enters our Site directly during that time and not through another affiliate link."[8]

77.     Creators can share these links on various social media platforms. The timing and method of sharing depend on the platform and the affiliate's audience. On Instagram, creators might include links in their bio, stories, or captions. On TikTok, creators place links in their bio or share them in the comment sections of their videos. YouTube creators might include affiliate links

---

[5] Press Release, GRIN Technologies, Inc., U.S. Shoppers Are Under the Influence: 74% of Consumers Have Purchased a Product Because an Influencer Recommended It (Mar. 20, 2024, 8:00 AM) https://www.businesswire.com/news/home/20240320786326/en/U.S.-Shoppers-Are-Under-the-Influence-74-of-Consumers-Have-Purchased-a-Product-Because-an-Influencer-Recommended-It.

[6] Ashish Kumar et al., *Battle of Influence: Analysing the Impact of Brand-Directed and Influencer-Directed Social Media Marketing on Customer Engagement and Purchase Behaviour*, 33 Australasian Marketing Journal 87, 92 (Apr. 23, 2024), https://journals.sagepub.com/doi/10.1177/14413582241247391 (click arrow at top right to download PDF) (last visited May 2, 2025).

[7] Singh, *supra* note 3.

[8] Terms of Use for the Walmart Affiliate Program, https://affiliates.walmart.com/terms (last visited Apr. 29, 2025).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

in their video descriptions or pinned comments, often alongside product reviews or tutorials. Twitter/X users may tweet links along with engaging posts. Creators can also use platforms like Facebook or Pinterest, where links can be shared in posts, groups, or on boards.

78.     The creators who use affiliate links often recommend products they use and enjoy. They include bloggers, influencers, and social media users who have built trust with their audience. Creators often spend significant time and energy researching products, creating content, and engaging with their followers to make sure their recommendations are helpful and genuine. By doing this and receiving compensation through affiliate links, they not only earn money but also provide value to their audience by highlighting useful or interesting products.

79.     Some creators rely on affiliate commissions for supplemental income of several hundred to several thousand dollars a month. Other creators develop sufficient audience engagement to earn a living from affiliate commissions alone.

80.     Affiliate links operate through unique URLs and cookies. When someone clicks an affiliate link posted by a Content Creator, the link contains information about the creator, such as their unique ID. While affiliate links vary in appearance, the URL for those links generally contain the following common elements displayed below.[9]



81.     The affiliate link passes data to the retailer's website, which stores the data in a "cookie" on the customer's device. A tracking cookie is a small piece of data that a website stores on a user's computer or device to monitor online activity. It acts as a virtual note that allows the website to remember specific actions, such as visited pages or items placed in a shopping cart. Some cookies can also track activity across multiple websites, often for targeted advertising or analytics purposes.

---

[9] Dibakar Ghosh, *What Are Affiliate Links and How Do They Work?*, AUTHORITYHACKER (last updated Aug. 12, 2024), https://www.authorityhacker.com/what-are-affiliate-links/.

CONSOLIDATED CLASS ACTION COMPLAINT - 13
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

82.    Cookies associated with affiliate links track the customer's activity, such as browsing and purchasing. If, after clicking on an affiliate link, the customer purchases the linked product within a certain period, the creator earns a commission.

83.    To address the scenario where a user has clicked on multiple affiliate links before making a purchase, the affiliate marketing industry, for the most part, uses the last-click attribution model to assign attribution for the referral. That model attributes the sale to the affiliate who provided the final link clicked by a customer before making a purchase. This system is designed to attribute the revenue to the source that directly drove the conversion. For example, if a customer clicks on an affiliate link on a blogger's website but later clicks a different affiliate link from another source before completing their purchase, the second affiliate—the one with the "last click"—is the one who gets credit for the sale.

84.    Many merchants, including Walmart, prohibit the practice of "cookie stuffing" that cause "tracking systems to conclude that a user has clicked through a Qualifying Link—to pay commissions accordingly—even if the user has not actually clicked through any such link."[10]

### 3.    Browser Extensions

85.    An internet browser extension is a small software program that enhances the functionality of a web browser. Browser extensions are designed to perform specific tasks or add features that improve the user's browsing experience.

86.    Browser extensions work by integrating with the browser's architecture and running alongside it. They often add new buttons, menus, or tools to the browser's interface. For example, an ad blocker extension might prevent advertisements from displaying on web pages, while a password manager extension could help users securely store and autofill their login information.

### B.    The Microsoft Shopping Browser Extension

87.    Microsoft is a multinational technology company that develops and sells software,

---

[10] Walmart, *supra* note 8.

CONSOLIDATED CLASS ACTION COMPLAINT - 14
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

hardware, and services. Microsoft launched Microsoft Shopping—initially for Microsoft's Edge web browser—in November 2020.

88.    The Microsoft Shopping browser extension comes pre-installed on the Microsoft Edge browser, which is the default browser for Windows devices. Users of other internet browsers can add the "Microsoft Bing Search with Rewards" shopping browser extension for free by searching for "Microsoft Shopping" in their web browser's extension store, such as Google Chrome.[11]

89.    Microsoft's professed goal with Microsoft Shopping is to make online shopping cheaper and easier: "When you visit a retailer site, Microsoft Edge will alert you if there are any coupons available for that site. You can view the list of coupons at any time by clicking on the blue shopping tag in the address bar. At checkout, you can copy and paste a code or Microsoft Edge can automatically try them all to determine which one will save you the most."[12] Microsoft advertises that its shopping extension saved users an average of $431 per year from January 2023

---

[11] Chrome Web Store, https://chromewebstore.google.com/ (type "Microsoft Shopping" into the search bar and press enter) (last visited Apr. 29, 2025).

[12] Mark Shelton, *Introducing Shopping with Microsoft Edge*, MICROSOFT CORPORATION: EDGE INSIDER (Nov. 9, 2020), https://techcommunity.microsoft.com/discussions/edgeinsiderannouncements/introducing-shopping-with-microsoft-edge/1870080.

CONSOLIDATED CLASS ACTION COMPLAINT - 15
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

to December 2023 based on the values of coupons presented to users worldwide.[13]



90.     As shown above, upon visiting a merchant's website, the Microsoft Shopping browser extension alerts the user that it has found 10 coupon codes available for that site. Microsoft Shopping lists each coupon code, the available discount, and any terms for using a particular coupon.

91.     When coupons or other notifications are available, Microsoft Shopping displays a blue price tag icon on the Internet user's web browser in the corner of their search bar, as shown

---

[13] *Explore Shopping Features in Microsoft Edge*, MICROSOFT CORPORATION, https://www.microsoft.com/en-us/edge/features/shopping?form=MA13FJ (last visited Apr. 29, 2025).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

below.



92.    Microsoft Shopping offers the ability to (1) scan for coupons on the web and apply them at checkout on an online merchant's website; (2) join Microsoft Rewards to earn cashback on eligible purchases; and (3) compare prices across retailers, as shown below.[14]



93.    When the Microsoft Shopping browser extension finds applicable coupons for a particular product or service on a merchant's website, the Microsoft Shopping price tag icon will appear on the web browser, indicating the number of coupons that Microsoft Shopping found, and

---

[14] *Save Money with Built-In Browser Features*, Microsoft Corporation, https://www.microsoft.com/en-us/edge/shopping?ep=952&es=shopping-experiment1&form=MG0AU0&cs=2199494592 (last visited Apr. 29, 2025).

CONSOLIDATED CLASS ACTION COMPLAINT - 17
No. 2:25-cv-00088-RSM

Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

a window will pop up automatically on the user's screen, as shown below.



94.    The Microsoft Shopping browser extension works on many major merchants' websites, including Macy's, Walmart, Best Buy, and Target.

95.    Microsoft Shopping functions by automatically reading and modifying the content of websites visited by the user. This enables it to identify the shopping site, detect the items in the cart, and interact with the checkout process.

96.    When a user of the Microsoft Shopping browser extension activates the extension by applying a coupon code or electing to receive cashback rewards for a purchase, Microsoft Shopping inserts its own affiliate code, so that it receives any available affiliate commissions from its users' purchases—and in so doing replaces the affiliate code of any Content Creator that had originally recommended a given product or service to the user, as set forth below.

C.    **Microsoft Shopping's Exploitation of Last-Click Attribution**

97.    For consumers using the Microsoft Shopping browser extension, Microsoft Shopping modifies affiliate cookies created by Content Creators' affiliate links and replaces them with its own affiliate code. This practice redirects the commission from the original creator—who marketed the product to the shopper, provided the affiliate link to the shopper, and ultimately caused the shopper to want to buy the item from the retailer—to Microsoft. Through this practice, Microsoft deprives Content Creators of their rightful earnings and surreptitiously takes credit for and profits from sales that it did not generate.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

98.     Microsoft Shopping's ability to alter affiliate cookies is rooted in its browser integration and permissions. When a shopper clicks on the Microsoft Shopping extension pop-up to copy available coupons or to activate cashback rewards, Microsoft Shopping removes the Content Creator's affiliate cookie and replaces it with their own.

99.     Because most affiliate marketing operates on the "last click" model, Microsoft Shopping wrongfully takes credit for sales where it inserts its affiliate code just before purchase, even though it was not responsible for the referral. Microsoft Shopping's scheme is especially effective because it inserts its cookie at the very last point of the transaction, as the shopper is completing the checkout process. Content Creators cannot stop Microsoft Shopping's replacement of their affiliate codes at the last moment of the shopping process.

100.     Microsoft has designed its browser extension in a manner that requires users to actively engage with the browser extension—i.e., click buttons—in order to receive a discount, search for coupons, or earn cash back. Without that user interaction, the online marketer who promoted the product or service to the consumer would still be credited with the sale and receive any corresponding payment—because Microsoft is only able to add its affiliate code and get credit for the sale if the online shopper clicks on the pop-up to activate the Microsoft Shopping extension's features.

101.     Accordingly, Microsoft's goal is to entice online shoppers to activate Microsoft Shopping—even when the browser extension has not identified any working coupons.

**D.     Activation of the Microsoft Shopping Extension**

102.     There are several scenarios in which the Microsoft Shopping extension works to displace the rightful referrer of an online sale to claim commission credit for sales that Microsoft did not influence, much less generate.

103.     The first is Microsoft Cashback, a program that gives Microsoft Rewards members cash back when they shop online with participating retailers through Bing and Microsoft Edge.[15]

---

[15] *Microsoft Cashback*, https://www.microsoft.com/en-us/edge/features/shopping-cashback (last visited Apr. 25, 2025).

CONSOLIDATED CLASS ACTION COMPLAINT - 19
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

To participate in Microsoft Cashback, a user must first sign into the user's Microsoft Rewards account. After doing so, a consumer who comes across an item online containing the Microsoft Cashback Shopping tag will be prompted to "Activate now," as shown below.



104.    Once Microsoft Cashback is activated, users making eligible purchases will receive rebates credited to the user's Microsoft Rewards account.

105.    The second scenario involves coupons displayed by the Microsoft Shopping browser extension. As described above, when a consumer adds items to an online shopping cart, Microsoft Shopping will scan the internet for available coupons and discount codes. If Microsoft Shopping finds a coupon or discount code, a pop-up window automatically appears on the consumer's screen, prompting the consumer to attempt to apply the coupon code before completing a purchase. The pop-up appears and encourages users to click even though many of the suggested coupons may be stale or invalid—and Microsoft takes credit for the sale even if none of the coupons that a customer attempts to use provide any discount.

106.    In both the Microsoft Cashback and coupon scenarios, Microsoft Shopping inserts its cookie at the last moment before a purchase is made to improperly obtain a commission for the sale. In some instances, Microsoft removes a creator's affiliate marketing cookie and replaces it with a "partner affiliate cookie," effectively rerouting the referral and associated commission

CONSOLIDATED CLASS ACTION COMPLAINT - 20
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

payment to a Microsoft partner. Microsoft Shopping aggregates coupons from and partners with numerous third-party online coupon providers, including Coupert, CouponBirds, and LinkMyDeals.[16]

107.    In response to these and/or similar tactics, Google recently updated its affiliate ads policy for Chrome extensions to prevent this very conduct by requiring that "affiliate links, codes, or cookies must only be included when the extension provides a direct and transparent user benefit related to the extension's core functionality. It is not permitted to inject affiliate links without related user action and without providing a tangible benefit to users."[17]

108.    Google's updated policy also forbids an extension from applying or replacing "affiliate promo codes without the user's explicit knowledge or related user action."[18]

109.    Below are examples showing how Microsoft Shopping replaces affiliate cookies for consumers using either Microsoft Cashback or coupons provided by Microsoft Shopping.

*Scenario 1: Affiliate Codes Replaced by Microsoft Shopping Cashback*

110.    As demonstrated below, Microsoft Shopping will displace the affiliate cookie for **Plaintiff Justin Tech Tips** if an online shopper using an affiliate link from Justin Tech Tips activates Microsoft Cashback.

111.    Plaintiffs, including Justin Tech Tips, rely on the commissions they earn from affiliate links as a key source of their revenue.

---

[16] Other relevant coupon aggregators include, but are not limited to, Coupons.com, Swagbucks, CouponFollow, Coupon Cabin, Cently, BradsDeals, DealNews, The Krazy Coupon Lady, Promodescuentos, OzBargain, Dealabs, Chollometro, RedFlagDeals, Meliuz, Flybuys, Woot, Wowcher, HotDeals, CashKaro, MyPoints, Pepper.com, Worthepenny, Shiprocket, ProvenPixel, Discounthero, Brandreward, Promokodi.net, PhonePe, and Tataneu.com.
[17] *Affiliate Ads,* GOOGLE LLC: CHROME WEB STORE - PROGRAM POLICIES (last updated Mar. 11, 2025), https://developer.chrome.com/docs/webstore/program-policies/affiliate-ads.
[18] *Id.*

CONSOLIDATED CLASS ACTION COMPLAINT - 21
No. 2:25-cv-00088-RSM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26



**Figure 1**. Plaintiff Justin Tech Tips' YouTube video reviewing the Corsair Vengeance i8300, which features affiliate links to HP Products, among others, in the video's description.

112.    In the images above, a viewer of one of Justin Tech Tips' YouTube videos can see and click on affiliate links posted in the description of the video, including the highlighted link for

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Hewlett Packard ("HP") computer products.



**Figure 2.** A prospective buyer navigates to HP's website from Justin Tech Tips' affiliate link. Microsoft Shopping has not yet been activated.

113.    As shown above, a user who navigates to the HP website through the highlighted link and places a product in the shopping cart will see that "[s]avings are available" through the Microsoft Shopping browser extension.



**Figure 3.** A view of the relevant cookie values when an online shopper goes to purchase an HP product through the affiliate link for Justin Tech Tips, before the Microsoft Shopping browser extension has been activated.

114.    Before the user activates the Microsoft Shopping extension by selecting cashback or a coupon, the cookies on the website accurately depict "Justin+Tech+Tips+LLC" as the driver of the sale, as shown in the image above.

115.    As such, Justin Tech Tips would earn a commission for this purchase if the consumer completed the purchase without activating the Microsoft Shopping extension.

116.    However, during checkout, the buyer is prompted to "Activate" cashback rewards through the Microsoft Shopping browser extension. If the buyer clicks "Activate," Microsoft

CONSOLIDATED CLASS ACTION COMPLAINT - 23
No. 2:25-cv-00088-RSM

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

displaces all cookies linking Justin Tech Tips as the rightful referrer for purposes of earning the commission, as shown below.



**Figure 4.** Once cashback rewards are activated, all cookies previously associated with "Justin+Tech+Tips+LLC" are replaced with "Microsoft+Shopping," thereby depriving Justin Tech Tips of earning any commission from the sale of the product and giving credit to Microsoft.

117.     **Plaintiff Brad Colbow** (Colbow Design LLC) has his own affiliate links with Walmart.com. Walmart is able to track purchases made via Mr. Colbow's affiliate links by tracking particular cookies on its website, such as an "AID cookie" that corresponds with Mr. Colbow's affiliate referral code, which is "52269."

118.     When a user clicks on the Walmart affiliate marketing links posted by Mr. Coblow, and the user proceeds to add products to the user's online shopping cart, the corresponding AID cookie will attribute referral and sale of the product to Mr. Colbow, thereby crediting him with the

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

sale and corresponding commission payment, as indicated in the image below.



**Figure 5.** When a user clicks on Mr. Colbow's affiliate link for a digital drawing tablet and is directed to Walmart.com, the AID cookie value correctly credits Mr. Colbow for the referral prior to the activation of Microsoft Shopping.

119.    However, during the checkout process described above, the Microsoft Shopping browser extension displays a popup offering "up to 3% cash back" by clicking "OK", as shown below.



**Figure 6.** Mr. Coblow's AID cookie value (52269) on Walmart.com that ensures his eligibility to receive a commission from Walmart persists through the checkout process prior to the activation of Microsoft Shopping.

CONSOLIDATED CLASS ACTION COMPLAINT - 25
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

120.    If the user activates the Microsoft Shopping browser extension during checkout by clicking "OK" to participate in the cash back rewards program, Microsoft wrongfully removes Mr. Colbow's AID cookie and replaces it with Microsoft's AID cookie (wmlspartner=_2003851), thereby taking credit for the referral and corresponding commission payment for that particular product, as displayed below.



**Figure 7.** Upon clicking "OK" to activate Microsoft cash back, the AID cookie value for the same product is replaced with a value that is associated with Microsoft ("2003851"), thereby depriving Mr. Colbow of his rightful commission for referral and sale of the product.

121.    In the scenario discussed above, Mr. Colbow normally would receive a commission from Walmart for generating a sale through his affiliate link. In fact, in an actual transaction on April 24, 2025, Mr. Colbow did receive a commission for a purchase made from one of his affiliate links where the Microsoft Shopping extension had not been activated. Prior to that purchase, Mr. Colbow had received two separate commission payments for unrelated purchases of that same

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

product for the period of April 1, 2025 to April 24, 2025, as demonstrated below:



**Figure 8.** Screenshot (captured on April 24, 2025) showing two total transactions generated from Mr. Colbow's affiliate link for the Huion Karma 12 Graphics Drawing Tablet. Mr. Colbow had earned $6.89 in commission payments as a result of the two transactions.

122.    On April 24, 2025, after the above screenshot of Mr. Colbow's affiliate dashboard was captured, the same product (a Huion Karma 12 Graphics Drawing Tablet) was purchased through Mr. Colbow's affiliate link and did not activate the Microsoft Shopping extension during the transaction. Later that same day, a subsequent purchase for the same product was made, again using Mr. Colbow's affiliate link. However, for the second transaction, Microsoft Cashback rewards was activated.

123.    Both items shipped on April 26, 2025—at which point Mr. Colbow should have been eligible to receive a commission for both transactions. However, as captured by Mr. Colbow's affiliate marketing dashboard, he only received a commission payment for the *first* transaction— in which Microsoft Shopping was never activated. He did not receive a commission payment for the second transaction where Microsoft Shopping Cashback was activated.



**Figure 9.** Screenshot (captured on April 27, 2025) showing three total transactions generated from Mr. Colbow's affiliate link for the Huion Karma 12 Graphics Drawing Tablet. Following the first transaction, Mr. Colbow's total commission payments rose to $10.33.

124.    Thus, Mr. Colbow's affiliate links generated at least four transactions for the Huion

CONSOLIDATED CLASS ACTION COMPLAINT - 27
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Karma drawing tablet between April 1, 2025 and April 27, 2025. However, Mr. Colbow only received three commission payments—apparently for no reason other than that Microsoft Shopping Cashback was activated for the fourth transaction.

125.    **Plaintiff Daniel Perez** also partners with Walmart to post affiliate links and is subject to this same wrongful conduct by Microsoft when Microsoft Shopping is activated. Under normal circumstances, Walmart compensates Mr. Perez for his purchase referrals through his AID cookie value (3699778).

126.    For instance, if an online shopper follows Mr. Perez's affiliate link for a digital drawing tablet on Walmart.com, the AID cookie value correctly credits Mr. Perez for the referral, as shown in the image below.



**Figure 10.** Online shopper following Mr. Perez's affiliate link for a digital drawing tablet on Walmart.com, where the AID cookie value correctly credits Mr. Perez for the referral prior to the activation of Microsoft Shopping.

127.    This AID cookie value persists through the checkout process, during which a popup

encourages users to active the Microsoft Shopping browser extension by clicking "OK" to "[g]et up to 3% cash back", as shown below.



**Figure 11.** Mr. Perez's AID cookie value (3699778) on Walmart.com that ensures his eligibility to receive a commission from Walmart persists through the checkout process prior to the activation of Microsoft Shopping.

128.    If the user clicks "OK" to activate the Microsoft Shopping browser extension during checkout, Microsoft wrongfully removes Mr. Perez's AID cookie and replaces it with a different AID cookie (wmlspartner=_2003851), thereby taking credit for the referral and wrongfully obtaining the corresponding commission payment for that particular product, as shown below.

129.    Notably, once the purchaser activates Microsoft cash back, the "AID" cookie value is substituted with the same Microsoft AID cookie value ("2003851") as the "AID" cookie value

1    in the previous example where Mr. Colbow's "AID" cookie was replaced.



**Figures 12.** Upon clicking "OK" to activate Microsoft cash back, the AID cookie value for the same product is replaced with a value associated with Microsoft ("2003851"), thereby depriving Mr. Perez of his rightful commission for referral and sale of the product.

130.    Throughout this process, users are unaware that the activation of Microsoft's cash back rewards diverts commissions from Content Creators and affiliates like Brad Colbow and Daniel Perez who were instrumental in referring their followers to purchase the product.

131.    **Plaintiff David Hiser** posts affiliate links on his YouTube channel "Fate Unbound." One of his YouTube videos includes an affiliate link through the online merchant Wolfbox. Buyers who click on the link are directed to Wolfbox's product page for its "MegaVolt23 Jump Starter" where, upon completion of purchase, Mr. Hiser is entitled to a commission for the sale.

132.    As shown below, when an online shopper navigates to Wolfbox from Mr. Hiser's affiliate link, the cookie value correctly credits Mr. Hiser's YouTube channel as the affiliate

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

referral prior to activation of Microsoft Shopping.



**Figure 13**. Online shopper navigates to Wolfbox from affiliate link posted by David Hiser's YouTube channel "Fate Unbound." Prior to activation of Microsoft Shopping, "Fate%20Unbound" is correctly credited as the affiliate referrer.

133.    However, during the checkout process, Microsoft Shopping prompts the purchaser to hit "Activate" to earn "Up to $5 cash back," as shown below.



**Figure 14.** Microsoft Shopping browser extension popup during checkout process encouraging users to activate Microsoft Shopping.

CONSOLIDATED CLASS ACTION COMPLAINT - 31
No. 2:25-cv-00088-RSM

134.    As in the above examples, if the online shopper activates the Microsoft Shopping browser extension by clicking "OK", the affiliate cookie for Fate Unbound is replaced with an entirely different cookie value, thereby depriving Mr. Hiser of his rightfully earned commission.

135.    Notably, the Microsoft AID cookie value that is inserted below (2003851) is the same value that replaced the affiliate cookies for Plaintiffs Brad Colbow and Daniel Perez upon activating Microsoft Shopping Cashback rewards.



**Figure 15.** Upon clicking "OK" to activate Microsoft cash back, the AID cookie value for the same product is replaced with a value associated with Microsoft ("2003851"), thereby depriving Mr. Hiser of his rightful commission for referral and sale of the product.

136.    **Plaintiff Madison Avenue Spy** (a/k/a "Storm Productions") regularly earns commissions through a number of merchant websites, including Mythersea. Buyers who click on an affiliate link from Madison Avenue Spy for Mythersea products are directed to Mythersea's website where, upon completion of a purchase, Madison Avenue Spy is entitled to a commission for the sale.

137.    As shown below, when an online shopper navigates to Mythersea from an affiliate link posted by Madison Avenue Spy, the cookie value correctly credits Madison Avenue Spy as

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1  the affiliate referrer prior to activation of Microsoft Shopping.



**Figure 16.** Online shopper navigates to Mythersea from affiliate link posted by Madison Avenue Spy. Prior to activation of Microsoft Shopping, Madison Avenue Spy is correctly credited as the affiliate referrer.

138.    However, during the checkout process, the Microsoft Shopping browser extension prompts users to activate the Microsoft Shopping browser extension by clicking "OK" to "[g]et up to 6% cash back", as shown below.



**Figure 17.** Microsoft Shopping browser extension popup during checkout process encouraging users to activate Microsoft Shopping.

CONSOLIDATED CLASS ACTION COMPLAINT - 33
No. 2:25-cv-00088-RSM

139.    As in the above examples, if the online shopper activates the Microsoft Shopping browser extension by clicking "OK", the affiliate cookie for Madison Avenue Spy is removed, thereby depriving it of its rightfully earned commission.



**Figure 18.** Upon activating cash back through Microsoft Shopping, the "referrer" field is updated, and "Madison Avenue Spy" is removed from all previously associated cookies.

***Scenario 2: Affiliate Codes Replaced by Microsoft Shopping Unsuccessful Coupon***

140.    In the second scenario, Microsoft Shopping replaces an affiliate cookie if an online user tries to apply coupons from Microsoft Shopping to the promotional code field in their shopping cart. Of particular concern, Microsoft will replace a Content Creator's associated cookies even if no valid coupons are identified.

141.    As shown in the image below, viewers of Justin Tech Tips' YouTube video on "Best Gaming PC Under $1000" are provided with affiliate links in the description of the video,

CONSOLIDATED CLASS ACTION COMPLAINT - 34
No. 2:25-cv-00088-RSM

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

which relate to products discussed in the video.



**Figure 19.** Affiliate links in the description of Justin Tech Tips' YouTube video on "Best Gaming PC Under $1000," including for the "LG 32' UltraGear QHD 165H."

142.    If the viewer clicks on the "LG 32' UltraGear QHD 165H" affiliate link, the viewer will be directed to LG's website for that specific product, and Justin Tech Tips is eligible to receive a commission for the purchase of any product within a commissionable category on LG's website, such as laptops, gaming monitors, appliances, speakers, and soundbars.

143.    Thus, if a viewer clicks the LG affiliate link for Justin Tech Tips and adds any product in a commissionable category to the shopping cart, before activating the Microsoft Shopping browser extension, the cookie values properly refer to "Affiliate 6521739", which is the affiliate code associated with Justin Tech Tips' account in his merchant agreement with LG

CONSOLIDATED CLASS ACTION COMPLAINT - 35
No. 2:25-cv-00088-RSM

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Electronics, as shown in the image below.



**Figure 20.** The cookie values for the LG product in the purchaser's cart before the Microsoft Browsing shopping extension is activated properly reflect the Justin Tech Tips affiliate code.

144.    However, when the shopper goes to complete the purchase, the Microsoft Shopping browser extension suggests coupon codes. As shown below, one of the coupon codes suggested by Microsoft Shopping was unsuccessful.

**Figure 21.** The Microsoft Shopping browser extension prompts users to enter coupon codes, including coupon codes that are invalid or otherwise dysfunctional.[19]

145.    Even though this coupon code was unsuccessful and provided no value to the user, Microsoft Shopping nevertheless still replaced the affiliate code for Justin Tech Tips with its own affiliate code, which deprives Justin Tech Tips of payment and wrongfully diverts that affiliate

---

[19] Note that the "$200.00" in "Total Savings" reflects the sales price of the item in the cart, not the successful application of a coupon.

CONSOLIDATED CLASS ACTION COMPLAINT - 36
No. 2:25-cv-00088-RSM

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    commission to Microsoft, as show in the image below.



**Figure 22.** Cookie values after an online shopper unsuccessfully attempted to enter coupon suggested through Microsoft Shopping, showing that the affiliate cookie for Justin Tech Tips ("Affiliate 6521739") is replaced with an affiliate value ("Affiliate 4938167") credited to Microsoft and/or its affiliate partners.

146.    Thus, Microsoft Shopping replaced the affiliate cookies for Justin Tech Tips despite failing to find a valid coupon for the LG product in the online shopper's cart.

147.    The above scenario is not unique to Plaintiff Justin Tech Tips. If activated, either through cashback rewards or coupons, Microsoft Shopping can and will replace the affiliate cookies for other Content Creators.

148.    **Plaintiff Aaron Ramirez** promotes products through his YouTube Channel of the same name and provides affiliate marketing links to those products. Mr. Ramirez works with "Magiclinks" to streamline his affiliate links for various online merchants, including Express.com.

149.    As shown below, when a viewer follows Mr. Ramirez's unique affiliate marketing link to Express.com, a cookie is set that identifies "Magiclinks" as the source of the referral and the "campaign" cookie has a value of "52269"—which corresponds with Mr. Ramirez's affiliate

CONSOLIDATED CLASS ACTION COMPLAINT - 37
No. 2:25-cv-00088-RSM

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    code to give him credit for the sale.



**Figure 23.** Cookie values at Express.com showing that "MagicLinks" is rightfully credited as the appropriate referral source and the campaign cookie value "52269" corresponds with Mr. Ramirez's affiliate marketing code.

150.    Thus, when one of Mr. Ramirez's viewers clicks on his affiliate marketing link and adds products to their shopping cart at express.com, Mr. Ramirez's unique affiliate marketing tag—which is set as a cookie with the value "52269"—attaches to the shopping session and attributes the referral and sale of the product to Mr. Ramirez. As a result, Mr. Ramirez is credited with the sale and corresponding commission payment if the sale is completed with the campaign cookie set to "52269" and the source cookie set to "MagicLinks."

151.    However, as depicted below, if the shopper who clicked on Mr. Ramirez's affiliate link also has the Microsoft Shopping extension on their internet browser, Microsoft will prompt

CONSOLIDATED CLASS ACTION COMPLAINT - 38
No. 2:25-cv-00088-RSM

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the user to try to apply coupons and cash back in the checkout process.



**Figure 24.** Screenshot taken during the checkout process prior to the user activating Microsoft Shopping, which prompts the user to copy coupon codes or apply cashback rewards.

152.    If the user clicks the button to "Copy" any of the coupon codes listed in the Microsoft Shopping extension, Microsoft wrongfully removes all affiliate marketing cookies associated with Mr. Ramirez and MagicLinks and replaces the cookie "source" as "Bing Rebates by Microsoft" and the campaign value as "2003851."

153.    However, the "coupon" that Microsoft Shopping recommends (4731) for a "5%

Student Discount" does not actually work, as depicted in the images below.



**Figure 25**. Microsoft Shopping auto-populates the same coupons in the "promo code" field at checkout that appear in the Microsoft Shopping window. However, the proposed code "4731" does not work and provides no discount.

154.  Thus, despite the fact that Mr. Ramirez referred the purchaser to Express.com—not Microsoft—and despite the fact that Microsoft Shopping's proposed "5% off" coupon code (4731) is invalid and provides no actual benefit to the purchaser, Microsoft wrongfully replaces Mr. Ramirez's affiliate cookies with its own.



**Figure 26**. Once the purchaser clicks the "Copy" button for Microsoft Shopping's proposed coupon code (4731), Microsoft replaces Mr. Ramirez's campaign and source cookies ("52269" and "Magic Links", respectively) with its own campaign and source cookies ("2003851" and "Bing Rebates by Microsoft", respectively).

155.  Thus, Microsoft Shopping has wrongfully taken credit for the referral of certain products and the corresponding sales commissions from Plaintiffs and Class Members—even where Microsoft Shopping failed to identify any valid coupons for the sale.

CONSOLIDATED CLASS ACTION COMPLAINT - 40
No. 2:25-cv-00088-RSM

**E.       Microsoft Shopping Has Wrongfully Diverted Affiliate Commissions from Plaintiffs**

156.    Microsoft, as the internet browser operator for Microsoft Edge, has unique access to the cookies and other information associated with online transactions made on the Edge browser, and therefore Microsoft has knowledge and information regarding the affiliate commissions that it has wrongfully diverted from Plaintiffs and Class Members. Microsoft also receives and retains logs reflecting these transactions and cookie replacements, especially given that Microsoft controls the primary browser—Microsoft Edge—on which Microsoft Shopping runs.

157.    In addition to Microsoft's own knowledge and information, it is a near statistical certainty that affiliates with at least 300 purchases for which they were eligible to receive a commission did in fact have at least one of those commissions taken by Microsoft Shopping as a result of the cookie swapping conduct discussed above.

158.    Plaintiffs conducted a statistical analysis using a Monte Carlo simulation to model the probability of Microsoft Shopping taking an affiliate commission on various numbers of online transactions.

159.    Based on publicly available data, Plaintiffs estimated the probability that a cookie swap occurred on Microsoft Shopping prior to receiving discovery on this issue from Microsoft.

160.    For the analysis, Plaintiffs conducted Monte Carlo simulations for sets of 1,000 affiliate transactions, with different scenarios based on the total number of purchases for which a Content Creator was eligible to receive compensation (100, 200, and 300). These simulations modeled whether a purchaser was coming from a U.S. or non-U.S. location, the browser the purchaser was using (Chrome, Safari, Firefox, Edge, or another browser), and whether the purchaser had the Microsoft Shopping browser extension installed. The simulation included a sensitivity analysis estimating the impact of various probabilities of a cookie swap occurring when a simulated shopper is using the Microsoft Edge browser extension.

161.    Microsoft Edge is the second most popular browser on desktops in the United

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

States, behind only Google Chrome.[20] Across all platforms (desktop, tablet, and mobile device), Microsoft Edge is the third most popular browser both in the United States and worldwide, behind only Google Chrome and Apple's Safari.[21] Accordingly, the simulations accounted for the weighted probabilities of a user conducting their online shopping via these various browsers.

162.    Although Microsoft Shopping has historically been available on Google Chrome and Safari, the simulations conservatively only allowed the possibility of a cookie swap in those instances where Microsoft Edge was identified as the applicable internet browser for a specific transaction. With these variables in mind, the simulations calculate the likelihood that a Content Creator with a given number of eligible affiliate purchases had at least one affiliate commission taken as a result of the Microsoft Shopping browser extension. The results of this analysis are set

---

[20] *Desktop Browser Market Share United States Of America, Mar 2024 – Mar 2025*, STATCOUNTER: GLOBAL STATS, https://gs.statcounter.com/browser-market-share/desktop/united-states-of-america (last visited Apr. 29, 2025).

[21] *Browser Market Share United States Of America, Mar 2024 – Mar 2025*, STATCOUNTER: GLOBAL STATS, https://gs.statcounter.com/browser-market-share/all/united-states-of-america (last visited Apr. 29, 2025); *Browser Market Share Worldwide, Mar 2024 – Mar 2025*, STATCOUNTER: GLOBAL STATS, https://gs.statcounter.com/browser-market-share (last visited Apr. 29, 2025).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

forth below.

| Affiliate Purchases | Swap Probability | Affected Probability | Num Affected (Mean) | Num Affected (SD) |
|---|---|---|---|---|
| 100 | 5.0% | 56.4% | 0.86 | 0.97 |
| 100 | 10.0% | 84.2% | 1.73 | 1.28 |
| **100** | **20.0%** | **97.3%** | **3.41** | **1.75** |
| 100 | 30.0% | 99.7% | 5.05 | 2.17 |
| 100 | 40.0% | 99.9% | 6.80 | 2.56 |
| 100 | 50.0% | 100.0% | 8.35 | 2.76 |
| 100 | 60.0% | 100.0% | 10.22 | 3.06 |
| 100 | 70.0% | 100.0% | 12.01 | 3.19 |
| 100 | 80.0% | 100.0% | 13.60 | 3.42 |
| 100 | 90.0% | 100.0% | 15.32 | 3.56 |
| 100 | 100.0% | 100.0% | 16.83 | 3.83 |
| 200 | 5.0% | 82.1% | 1.67 | 1.25 |
| 200 | 10.0% | 96.1% | 3.31 | 1.83 |
| **200** | **20.0%** | **99.9%** | **6.83** | **2.59** |
| 200 | 30.0% | 100.0% | 10.46 | 3.07 |
| 200 | 40.0% | 100.0% | 13.52 | 3.42 |
| 200 | 50.0% | 100.0% | 17.02 | 3.75 |
| 200 | 60.0% | 100.0% | 20.23 | 4.33 |
| 200 | 70.0% | 100.0% | 23.69 | 4.68 |
| 200 | 80.0% | 100.0% | 26.88 | 4.78 |
| 200 | 90.0% | 100.0% | 30.48 | 5.07 |
| 200 | 100.0% | 100.0% | 33.94 | 5.29 |
| 300 | 5.0% | 93.0% | 2.59 | 1.53 |
| 300 | 10.0% | 99.1% | 5.04 | 2.22 |
| **300** | **20.0%** | **100.0%** | **10.10** | **3.17** |
| 300 | 30.0% | 100.0% | 15.05 | 3.74 |
| 300 | 40.0% | 100.0% | 20.23 | 4.22 |
| 300 | 50.0% | 100.0% | 25.23 | 4.66 |
| 300 | 60.0% | 100.0% | 30.74 | 5.12 |
| 300 | 70.0% | 100.0% | 35.56 | 5.52 |
| 300 | 80.0% | 100.0% | 40.83 | 5.90 |
| 300 | 90.0% | 100.0% | 45.82 | 6.24 |
| 300 | 100.0% | 100.0% | 50.66 | 6.72 |

**Figure 27**. Monte Carlo Simulation & Sensitivity Analysis: Statistical Probability that Microsoft Took at Least One Purchase Commission in 100, 200, and 300 Affiliate Purchases

163.    The results of the Monte Carlo analysis demonstrate that, even with the conservative assumption of a 20% probability that a cookie swap occurs when an online shopper is using Microsoft Edge, affiliates with as few as 100 purchases on which they are eligible to receive a commission have a 97.3% chance that at least one of their commissions would be taken by Microsoft. Stated differently, 973 times out of 1,000, at least one (and an average of 3.41) of

CONSOLIDATED CLASS ACTION COMPLAINT - 43
No. 2:25-cv-00088-RSM

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

their commissions would be taken by Microsoft.

164.    For an affiliate with 200 purchases that are eligible to receive a commission and the conservative swap probability of 20%, there is a more than 99% chance that at least one of the affiliate's commissions would be taken by Microsoft. Stated differently, 999 times out of 1,000, at least one (and an average of 6.83) of their commissions would be taken by Microsoft.

165.    Last, for an affiliate with 300 purchases that are eligible to receive a commission and the same modest swap probability of 20%, there is a 100% chance that at least one of the affiliate's commissions would be taken by Microsoft. That means that 1,000 times out 1,000, at least one (and an average of 10) of their commissions would be taken by Microsoft.

**F.    Damages & Harm**

166.    At various points in time, Microsoft has offered cash back rewards and/or displayed coupon codes for many if not all of the merchants with whom Plaintiffs and Class Members have directly or indirectly partnered.

167.    Many, if not all, of Plaintiffs' and Class Members' merchant partners use the last-click attribution model.

168.    Plaintiffs and Class Members were harmed by Microsoft's conduct because the Microsoft Shopping browser extension systematically takes commission payments from their rightful owners—i.e., the individuals who promoted and shared the affiliate links and generated the referrals and ultimate sales of products or services.

169.    Plaintiffs were harmed by Microsoft through the Microsoft Shopping browser extension, which deprived them of referral fees and sales commissions that they earned as the generators of those referrals and sales.

170.    The Microsoft Shopping browser extension is activated during millions of online purchases each year. In the absence of the Microsoft Shopping browser extension, Plaintiffs and Class Members would have earned more money in the form of referral fees and sales commissions from their respective affiliate links.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

171.    Plaintiffs continue to devote time and energy to content creation to generate commissions. Plaintiffs accordingly face future harm in the form of lost referral fees and sales commissions because the Microsoft Shopping browser extension continues to take affiliate marketing commissions to which they are entitled.

## VI.    <u>STATUTE OF LIMITATIONS</u>

172.    Plaintiffs did not know and through the exercise of reasonable diligence could not have known that Microsoft Shopping schemed to unlawfully take commissions from them. Microsoft Shopping did not disclose its affiliate-code-replacement scheme. Instead, Microsoft Shopping relied on technical complexity, user trust, the affiliate marketing process, and its own marketing to actively conceal its conduct.

173.    The technical complexity of affiliate cookie replacements obscured Microsoft Shopping's actions. Microsoft Shopping's operations occurred entirely in the background of the online shopping process. Once the extension was installed, it integrated seamlessly with the browser and monitored user activity on shopping websites without any visible indication of its interference with affiliate cookies.

174.    Microsoft Shopping relied on and abused user trust and permissions granted during installation. By requesting broad access to modify webpage content, Microsoft Shopping could replace affiliate codes as part of its purported coupon search process. Microsoft Shopping users were unaware of the technical details or implications of these permissions.

175.    Content Creators had no direct visibility into this process. The substitution of Microsoft Shopping's affiliate cookie happened during the shopper's checkout, after the shopper had left the Content Creator's site. Content Creators had no mechanism to track whether their codes were being replaced or otherwise altered. Content Creators typically rely on reporting tools provided by affiliate programs to monitor clicks and commissions. However, these tools do not reveal if or when the affiliate codes were replaced mid-transaction, leaving Content Creators unaware of the potential loss of revenue.

CONSOLIDATED CLASS ACTION COMPLAINT - 45
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

176.    Microsoft Shopping's promotional messaging focused heavily on its consumer benefits, such as saving money through automated coupon applications. This marketing diverted attention from Microsoft Shopping's interactions with affiliate marketing. By framing itself as a tool for user savings, Microsoft Shopping avoided scrutiny from both shoppers and Content Creators regarding its broader impact on affiliate marketing.

177.    Thus, any applicable statute of limitations has been tolled.

178.    In addition, Microsoft's actions and omissions constitute overt acts that began a new statute of limitations because those acts advanced the unfair objectives of the scheme. Each replacement of an affiliate code constitutes a new and independent act that perpetuates the scheme.

## VII.    CLASS ALLEGATIONS

## NATIONWIDE CLASS

179.    Pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), Plaintiffs seek certification of the following nationwide class (the "Nationwide Class" or the "Class"):

**All Content Creators in the United States who lost revenue from their unique affiliate links because Microsoft removed the affiliate cookie information of the Content Creators.**

180.    The Nationwide Class asserts a claim against Microsoft for violation of the Washington Consumer Protection Act (Count 1).

## STATEWIDE SUBCLASSES

181.    Pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), Plaintiffs seek certification of state-by-state common law and consumer protection claims (Counts 2 through 24), on behalf of separate statewide Subclasses for each State (the "Statewide Subclasses"), defined as follows:

**All Content Creators in the State of [name of state] who lost revenue from their unique affiliate links because Microsoft removed the affiliate cookie information of the Content Creators.**

182.    Excluded from the Nationwide Class and each Statewide Subclass are Microsoft,

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

any entity in which Microsoft has a controlling interest, and Microsoft's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Nationwide Class and each Statewide Subclass are any judicial officer presiding over this matter, members of their im-mediate family, and members of their judicial staff.

183.    **Numerosity: Federal Rule of Civil Procedure 23(a)(1).** There are at least thousands of members in the Nationwide Class and in each Subclass. The members of each Class and Subclass are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable.

184.    **Commonality and Predominance: Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** As to each Class and Subclass, this action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. These common questions include:

    A.    Whether Microsoft used the Microsoft Shopping browser extension to replace Content Creators' affiliate codes with its own;

    B.    Whether Microsoft received commissions that should have been properly awarded to Content Creators;

    C.    Whether Microsoft unfairly took advantage of the operation of affiliate codes in order to reap commissions for itself;

    D.    Whether Microsoft's conduct was knowing and willful;

    E.    Whether Microsoft actively concealed this conduct;

    F.    Whether Microsoft's practices were unfair and deceptive;

    G.    Whether Class Members consented to Microsoft's practices;

    H.    How much Microsoft profited from its practice;

    I.    Whether Microsoft is liable for damages; and

    J.    Whether Microsoft's conduct should be enjoined.

185.    **Typicality: Federal Rule of Civil Procedure 23(a)(3).** As to each Class and

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Subclass, Plaintiffs' claims are typical of other Class Members' claims because Plaintiffs and Class Members were subjected to the same allegedly unlawful conduct and harmed in the same way.

186.    **Adequacy of Representation: Federal Rule of Civil Procedure 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and are committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiffs have no conflicts of interest with the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

187.    **Predominance & Superiority. Federal Rule of Civil Procedure 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Common issues in this litigation also predominate over individual issues because the issues discussed in the above paragraph on commonality are more important to the resolution of this litigation than any individual issues. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by individual Plaintiffs and Class Members are relatively small compared to the burden and expense required to individually litigate their claims against Microsoft, and thus, individual litigation to redress Microsoft's wrongful conduct would be impracticable. Individual litigation by each Class Member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

188.    **Risk of Prosecuting Separate Actions.** This case is appropriate for certification because prosecuting separate actions by individual proposed Class Members would create the risk

CONSOLIDATED CLASS ACTION COMPLAINT - 48
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1  of inconsistent adjudications and incompatible standards of conduct for Microsoft or would be

2  dispositive of the interests of members of the proposed Class.

3      189.    **Injunctive and Declaratory Relief.** Class certification is also appropriate under

4  Rule 23(b)(2) and (c). Defendants, through their uniform conduct, acted or refused to act on

5  grounds generally applicable to the Class as a whole, making injunctive relief appropriate to the

6  Class as a whole. Plaintiffs seek prospective injunctive relief as a wholly separate remedy from

7  any monetary relief.

8      **VIII.    CLAIMS ON BEHALF OF THE NATIONWIDE CLASS**

9  **COUNT ONE — VIOLATION OF WASHINGTON'S CONSUMER PROTECTION ACT,
   RCW §§ 19.86 *ET SEQ.***

10     190.    Plaintiffs repeat and reallege the allegations contained in the Statement of Facts as

11  if fully set forth herein.

12     191.    Plaintiffs, other members of the Class, and Microsoft are "persons," as defined by

13  RCW § 19.86.010(1).

14     192.    Microsoft advertised, offered, or sold goods or services in Washington and engaged

15  in trade or commerce directly or indirectly affecting the people of Washington, as defined by RCW

16  § 19.86.010(2).

17     193.    Microsoft engaged in unfair or deceptive acts or practices in the conduct of trade or

18  commerce, in violation of RCW § 19.86.020, including:

19          A.    Designing, maintaining, and operating the Microsoft Shopping browser

20  extension in such a matter as to misappropriate Plaintiffs and Class Members' commissions

21  and referral fees;

22          B.    Overwriting and replacing Plaintiffs and Class Members' affiliate tracking

23  codes and cookies with Microsoft's tracking codes and cookies;

24          C.    Misrepresenting that Plaintiffs and Class Members would earn all

25  commission payments for sharing affiliate links and generating the referral and ultimate

26  sale of products or services; and

CONSOLIDATED CLASS ACTION COMPLAINT - 49
No. 2:25-cv-00088-RSM

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

D.     Omitting, suppressing, and concealing the material fact that the Microsoft Shopping browser extension systematically takes commission payments from Plaintiffs and Class Members.

194.    Microsoft's conduct further offends public policy and is immoral, unethical, oppressive, or unscrupulous because it contravenes existing standards and norms in the affiliate marketing industry that prohibit the use of cookie stuffing to divert affiliate commissions, and caused substantial harm that greatly outweighs any possible utility from the conduct.

195.    Microsoft acted intentionally, knowingly, and maliciously to violate Washington's Consumer Protection Act, and recklessly disregarded Plaintiffs' and Class Members' rights.

196.    Microsoft's conduct is injurious to the public interest because it violates RCW § 19.86.020, has injured persons, and had and has the capacity to injure persons. The acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

197.    As a direct and proximate result of Microsoft's unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and/or monetary and non-monetary damages.

198.    As a direct and proximate result of Microsoft's unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and/or monetary damages in that, among other things, Plaintiffs and Class Members suffered economic injury by being deprived of affiliate commissions they should have earned from referrals through their affiliate links.

199.    Plaintiffs and Class Members seek an order enjoining the conduct complained or herein and ordering Microsoft to take remedial measures to stop its conduct.

200.    Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages under RCW § 19.86.090 for each Class Member (up to $25,000 per Class Member), injunctive relief, civil penalties, and attorneys' fees and costs.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**IX.    CLAIMS ON BEHALF OF THE STATEWIDE SUBCLASSES**

**CLAIMS ON BEHALF OF THE CALIFORNIA SUBCLASS**

**COUNT TWO — CONVERSION**

201.    The California Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

202.    At the time consumers made purchases on eCommerce merchants' websites, Plaintiff and California Subclass Members possessed or had a right to possess the affiliate tracking code that identified Plaintiff and California Subclass Members as the parties entitled to commissions for referring consumers to products and services sold by the eCommerce merchants' websites and the parties entitled to commission. These affiliate tracking codes are specific to Plaintiff and each California Subclass Member.

203.    Microsoft intentionally and substantially interfered with Plaintiff's and California Subclass Members' affiliate tracking codes through the operation of the Microsoft Shopping extension, which intentionally caused Plaintiff's and California Subclass Members' affiliate tracking codes to be overwritten with Microsoft's own tracking codes.

204.    Microsoft, without proper authorization, assumed and exercised the right of ownership over Plaintiff's and California Subclass Members' affiliate tracking codes, in hostility to the rights of Plaintiff and California Subclass Members, without justification.

205.    Microsoft's wrongful exercise of control over Plaintiff's and California Subclass Members' personal property constitutes conversion.

206.    Plaintiff and California Subclass Members neither assented to nor ratified Microsoft's interference with their commissions.

207.    As a direct and proximate result of Microsoft's conversion, Plaintiff and California Subclass Members were harmed.

208.    Microsoft is liable to Plaintiff and California Subclass Members for damages and

CONSOLIDATED CLASS ACTION COMPLAINT - 51
No. 2:25-cv-00088-RSM

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

costs permitted by law.

**COUNT THREE — INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

209.     The California Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

210.     Plaintiff and California Subclass Members are engaged in ongoing, valid contractual relationships with eCommerce merchants to promote products and services to consumers in exchange for commissions, including as set forth herein. Under the terms of these contracts, Plaintiff and California Subclass Members distribute affiliate links to refer consumers to products and services sold or offered by the eCommerce merchants. In return, eCommerce merchants provide Plaintiff and California Subclass Members with a referral fee or commission payment if a consumer completes a transaction on the eCommerce merchant's website after navigating to the merchant's website through an affiliate link distributed by Plaintiff and Florida Subclass Members.

211.     Microsoft knew or reasonably should have known of the economic relationships between eCommerce merchants on the one hand and Plaintiff and California Subclass Members on the other, whereby Plaintiff and California Subclass Members promote and provide affiliate links to consumers for products or services on an eCommerce merchant's website in exchange for receiving commissions from the eCommerce merchant for transactions credited to Plaintiff's and California Subclass Members' affiliate links via last-click attribution. Microsoft knew that the Microsoft Shopping extension monitors and logs a consumer's browsing activity and understood that economic relationships such as those between affiliate marketers like Plaintiff and California Subclass Members and eCommerce merchants are standard in the affiliate marketing industry. Specifically, the Microsoft Shopping extension is designed to monitor and contemporaneously log detailed information about a consumer's browsing activity, including the full-string URL of each web page visited by a consumer. From these URLs, Microsoft knew when a consumer navigated

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

to a specific merchant's website using a specific affiliate's referral link and thus knew of the existence of a commission-based economic relationship between the specific merchant and the specific affiliate retailer.

212.    Through use of the Microsoft Shopping extension, Microsoft diverts commission payments from Plaintiff and California Subclass Members who promoted and shared an affiliate link and generated the referral and ultimate sale of an eCommerce merchant's product or service. Microsoft, via the Microsoft Shopping extension, replaces tracking tags that identify online marketers as the source of the referral with its own tracking tags and holds itself out as the referrer of the specific products and/or services even though the sale in question emanated from an online marketer's affiliate marketing link. Through this misconduct, Microsoft intentionally interferes with Plaintiff's and California Subclass Members' contracts with eCommerce merchants. This conduct is independently wrongful, improper, and without justification as set forth herein, including because it constitutes conversion, violates California's Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200 *et seq.*, and violates the Washington Consumer Protection Act, RCW §§ 19.86 *et seq.* This conduct is further wrongful, improper, and without justification because it contravenes existing standards and norms in the affiliate marketing industry that prohibit the use of cookie stuffing to divert affiliate commissions.

213.    Microsoft knew that a breach or disruption of Plaintiff's and California Subclass Members' contracts with eCommerce merchants was certain or substantially certain to occur as a result of its conduct alleged herein. Specifically, Microsoft understood that the Microsoft Shopping extension, when activated, overwrites and replaces any existing affiliate tracking codes. Microsoft knew that when a consumer navigated to a specific merchant's website using an online marketer's affiliate link and the Microsoft Shopping extension activated, the Microsoft Shopping extension would overwrite and replace the existing online marketer's tracking code and replace it with Microsoft's tracking code. Microsoft knew that the overwriting and replacement of existing affiliate tracking codes by the Microsoft Shopping extension would result in Microsoft, rather than

CONSOLIDATED CLASS ACTION COMPLAINT - 53
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the affiliate, being credited for the sale and cause eCommerce merchants to breach their agreements with Plaintiff and California Subclass Members by paying Microsoft, instead of Plaintiff and California Subclass Members, the monies that Plaintiff and California Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links.

214.    Microsoft's intentional conduct caused eCommerce merchants to breach their agreements with Plaintiff and California Subclass Members by paying Microsoft, instead of Plaintiff and California Subclass Members, the monies that Plaintiff and California Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links.

215.    As a direct and proximate result of Microsoft's interference with Plaintiff's and California Subclass Members' contracts with eCommerce merchants, Plaintiff and California Subclass Members suffered harm and economic injury by being deprived of commissions they should have rightfully received pursuant to their contracts with eCommerce merchants for providing referrals through their affiliate links. As a result of the above conduct, Microsoft is liable to Plaintiff and California Subclass Members for damages in an amount to be determined at trial.

## COUNT FOUR — INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

216.    The California Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

217.    Plaintiff and California Subclass Members are engaged in an economic relationship with eCommerce merchants whereby Plaintiff and California Subclass Members refer their followers to merchants through affiliate links and in exchange for receiving referral fees or commissions from the eCommerce merchant when a consumer uses their specific affiliate link to access the eCommerce merchant's website and complete a purchase of a product or service. Plaintiff and California Subclass Members are engaged in ongoing economic relationships with

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

eCommerce merchants, including as set forth herein. Based on the length and extent of these relationships, Plaintiff and California Subclass Members reasonably expect to continue earning commissions in exchange for referring consumers to eCommerce merchants.

218.    Microsoft knew or reasonably should have known of the economic relationships between eCommerce merchants on the one hand and Plaintiff and California Subclass Members on the other, whereby Plaintiff and California Subclass Members promote and provide affiliate links to consumers for products or services on an eCommerce merchant's website in exchange for receiving commissions from the eCommerce merchant for transactions credited to Plaintiff's and California Subclass Members' affiliate links via last-click attribution. Microsoft knew that the Microsoft Shopping extension monitors and logs a consumer's browsing activity and understood that economic relationships such as those between affiliate marketers like Plaintiff and California Subclass Members and eCommerce merchants are standard in the affiliate marketing industry. Specifically, the Microsoft Shopping extension is designed to monitor and contemporaneously log detailed information about a consumer's browsing activity, including the full-string URL of each web page visited by a consumer. From these URLs, Microsoft knew when a consumer navigated to a specific merchant's website using a specific affiliate's referral link and thus knew of the existence of a commission-based economic relationship between the specific merchant and the specific affiliate retailer.

219.    Through use of the Microsoft Shopping extension, Microsoft diverts commission payments from Plaintiff and California Subclass Members who promoted and shared an affiliate link and generated the referral and ultimate sale of an eCommerce merchant's product or service. Microsoft, via the Microsoft Shopping extension, replaces tracking tags that identify online marketers as the source of the referral with its own tracking tags and holds itself out as the referrer of the specific products and/or services even though the sale in question emanated from an online marketer's affiliate marketing link. This conduct, which interferes with Plaintiff's and California Subclass Members' prospective economic advantage, is independently wrongful, improper, and

CONSOLIDATED CLASS ACTION COMPLAINT - 55
No. 2:25-cv-00088-RSM

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

without justification as set forth herein, including because it constitutes intentional interference with contractual relations, conversion, violates California's Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200 *et seq.*, and violates the Washington Consumer Protection Act, RCW §§ 19.86 *et seq.* This conduct is further wrongful, improper, and without justification because it contravenes existing standards and norms in the affiliate marketing industry that prohibit the use of cookie stuffing to divert affiliate commissions.

220.    Microsoft either desired to divert commissions from Plaintiff and California Subclass Members to itself through the conduct alleged herein or knew that the diversion of Plaintiff and California Subclass Members' commissions was certain or substantially certain to occur as a result of its conduct alleged herein. Specifically, Microsoft understood that the Microsoft Shopping extension, when activated, overwrites and replaces any existing affiliate tracking codes. Microsoft knew that when a consumer navigated to a specific merchant's website using an online marketer's affiliate link and the Microsoft Shopping extension activated, the Microsoft Shopping extension would overwrite and replace the existing online marketer's tracking code and replace it with Microsoft's tracking code, resulting in Microsoft, rather than the affiliate, being credited for the sale and rewarded with any commission or referral fee.

221.    Plaintiff's and California Subclass Members' economic relationships with eCommerce merchants were actually disrupted by Microsoft's conduct because the Microsoft Shopping extension deprived Plaintiff and California Subclass Members of the monies that they rightfully earned as the true originators of sales arising from their affiliate marketing links.

222.    As a direct and proximate result of Microsoft's conduct described herein, Plaintiff and California Subclass Members suffered economic injury by being deprived of commissions they should have earned from referrals through their affiliate links.

223.    As a result of the above conduct, Microsoft is liable to Plaintiff and California Subclass Members for damages in an amount to be determined at trial.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## COUNT FIVE — UNJUST ENRICHMENT

224.    The California Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

225.    Plaintiff and California Subclass Members lack an adequate remedy at law. Microsoft's misconduct has interfered with Plaintiff's and California Subclass Members' ability to profit from their affiliate marketing efforts and constitutes ongoing harm that requires equitable relief.

226.    Plaintiff and California Subclass Members have an interest, both equitable and legal, in the referral fees and commission payments to which they were wrongfully deprived. These payments were rightfully earned by Plaintiff and California Subclass Members, not Microsoft.

227.    Plaintiff and California Subclass Members conferred a benefit on Microsoft, because Plaintiff and California Subclass Members drove prospective customers to eCommerce merchants' webpages, through their affiliate links and advertising efforts, to make a purchase that resulted in Microsoft's receipt of referral fees and commission payments from those merchants.

228.    Microsoft benefitted from the referral fees and commission payments that were credited to it as a function of the Microsoft Shopping extension wrongfully representing to the merchant that Microsoft, rather than Plaintiff and California Subclass Members, should be assigned credit for the conversion via last-click attribution.

229.    Microsoft understood that it so benefitted, and it also understood and appreciated that the Microsoft Shopping extension would cause the harm described herein because the Microsoft Shopping extension monitors for existing affiliate tracking codes in a consumer's browser and, when activated, overwrites any existing affiliate tracking codes. Specifically, the Microsoft Shopping extension is designed to contemporaneously monitor and log detailed information about a user's browsing activity. This information includes, among other things, the full-string URL of each web page visited by a consumer. From these URLs, Microsoft knew when

a consumer navigated to a specific merchant's website using a specific affiliate's referral link. Microsoft further knew that, when activated, the Microsoft browser extension overwrites and replaces any existing affiliate codes with Microsoft's own tracking code. Microsoft understood that when a consumer navigated to an eCommerce merchant's website using a specific online marketer's affiliate link and the Microsoft Shopping extension was activated, the Microsoft Shopping extension would overwrite and replace the online marketer's tracking code with Microsoft's tracking code, which would result in Microsoft, rather than the online marketer, being assigned credit for the sale and awarded any commission or referral fee.

230.    But for Microsoft's unjust and improper use of the Microsoft Shopping extension, it would not have been credited and awarded commission on sales that emanated from Plaintiff's and California Subclass Members' respective affiliate marketing links.

231.    As a result of Microsoft's wrongful conduct as alleged in this Complaint, Microsoft has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and California Subclass Members.

232.    Microsoft continues to benefit and profit from the operation of the Microsoft Shopping extension while Plaintiff and California Subclass Members continue to have their rightful commission payments taken by Microsoft.

233.    Microsoft's unjust enrichment is traceable to, and resulted directly and proximately from the conduct alleged herein, including by using the Microsoft Shopping extension to wrongfully credit itself with referrals and commissions it did not rightfully earn.

234.    The benefit conferred upon, received, and enjoyed by Microsoft was not conferred officiously or gratuitously, and it would be inequitable and unjust for Microsoft to retain the benefit.

235.    Equity and good conscience militate against permitting Microsoft to retain the profits and benefits from its wrongful conduct, which should be restored to Plaintiff and California Subclass Members.

CONSOLIDATED CLASS ACTION COMPLAINT - 58
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    **COUNT SIX — VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**

2        236.    The California Plaintiff identified above ("Plaintiff," for purposes of this Count),

3    individually and on behalf of the California Subclass, repeats and realleges the allegations

4    contained in the Statement of Facts as if fully set forth herein.

5        237.    Plaintiff and California Subclass Members lack an adequate remedy at law.

6    Microsoft's misconduct has interfered with Plaintiff's and California Subclass Members' ability

7    to profit from their affiliate marketing efforts and constitutes ongoing harm that requires equitable

8    relief.

9        238.    California's Unfair Competition Law ("UCL") defines "unfair competition" to

10   include any "unlawful, unfair, or fraudulent" business act or practice. CAL. BUS. & PROF. CODE §§

11   17200 *et seq.*

12       239.    Microsoft has engaged in acts and practices that are unlawful and unfair in violation

13   of the UCL.

14       240.    Microsoft is a "person" as defined by CAL. BUS. & PROF. CODE §17201.

15       241.    Microsoft business acts and practices are unlawful because they interfere with the

16   prospective economic advantage and contractual relations of online marketers and constitute

17   conversion, as set forth above. They also have unjustly enriched Microsoft for the reasons stated

18   above.

19       242.    Microsoft committed unfair business practices by using the Microsoft Shopping

20   extension to take credit for sales referrals and thereby receive commission payments that rightfully

21   belong to Plaintiff and California Subclass Members.

22       243.    Microsoft's conduct is unfair in violation of the UCL because it violates

23   California's public policy against interfering with another's prospective economic advantage. *See*

24   5 Witkin, *Summary 11th Torts* § 854 (2024). Microsoft's conduct is also unfair in violation of the

25   UCL because it significantly harms or threatens competition in the affiliate marketing industry by

26   contravening industry standards and norms that prohibit cookie stuffing or similar methods to

CONSOLIDATED CLASS ACTION COMPLAINT - 59
No. 2:25-cv-00088-RSM

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

wrongfully secure affiliate commissions.

244.    Microsoft, though the operation of the Microsoft Shopping extension, wrongfully deprives Plaintiff and California Subclass Members of monies they rightfully earned as the true originators of sales arising from their affiliate marketing links.

245.    The gravity of harm resulting from Microsoft's practice of appropriating commissions that belong to online marketers like Plaintiff and California Subclass Members outweighs any potential utility therefrom. Microsoft's conduct set forth in this Complaint violates public policy and is unscrupulous, offensive, and substantially injurious.

246.    Microsoft actually and proximately caused harm to Plaintiff and California Subclass Members in that, among other things, they suffered economic injury by being deprived of commissions they should have earned from referrals through their affiliate links and suffered a loss of property by being deprived of their affiliate tracking codes.

247.    The conduct alleged herein is continuing, and there is no indication that Microsoft and will cease such activity in the future.

248.    Microsoft's conduct in violation of the UCL has caused Plaintiff and California Subclass Members to be deprived of referral fees and commission payments for sales they rightfully originated. Plaintiff and California Subclass Members thus suffered lost money or property because of Microsoft's conduct.

249.    Plaintiff and California Subclass Members therefore seek restitution, an injunction, and all other appropriate relief in equity, including reasonable attorneys' fees and costs of suit.

## CLAIMS ON BEHALF OF THE FLORIDA SUBCLASS
## COUNT SEVEN — CONVERSION

250.    The Florida Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Florida Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

251.    At the time consumers made purchases on eCommerce merchant's websites,

CONSOLIDATED CLASS ACTION COMPLAINT - 60
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Plaintiff and Florida Subclass Members had an entitlement to possession of the affiliate tracking codes that identified Plaintiff and Florida Subclass Members as the parties entitled to commissions for referring consumers to products and services sold by eCommerce merchants. These affiliate tracking codes are specific to Plaintiff and each Florida Subclass Member.

252.    Microsoft deprived Plaintiff and Florida Subclass Members of their specific affiliate tracking codes through the operation of the Microsoft Shopping extension, which intentionally caused Plaintiff's and Florida Subclass Members' affiliate tracking codes to be overwritten with Microsoft's own tracking codes.

253.    Microsoft assumed and exercised control over Plaintiff's and Florida Subclass Members' affiliate tracking codes, in hostility to the rights of Plaintiff and Florida Subclass Members, without justification.

254.    Microsoft's wrongful exercise of control over Plaintiff's and Florida Subclass Members' personal property constitutes conversion.

255.    Plaintiff and Florida Subclass Members neither assented to nor ratified Microsoft's over interference with their commissions.

256.    As a direct and proximate result of Microsoft's conversion, Plaintiff and Florida Subclass Members were harmed.

257.    Microsoft is liable to Plaintiff and Florida Subclass Members for all damages and costs permitted by law.

**COUNT EIGHT — UNJUST ENRICHMENT**

258.    The Florida Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Florida Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

259.    Plaintiff and Florida Subclass Members lack an adequate remedy at law. Microsoft's misconduct has interfered with Plaintiff's and Florida Subclass Members' ability to profit from their affiliate marketing efforts and constitutes ongoing harm that requires equitable

CONSOLIDATED CLASS ACTION COMPLAINT - 61
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

relief.

260.    Plaintiff and Florida Subclass Members have an interest, both equitable and legal, in the referral fees and commission payments to which they were wrongfully deprived. These payments were rightfully earned by Plaintiff and Florida Subclass Members, not Microsoft.

261.    Plaintiff and Florida Subclass Members conferred a benefit on Microsoft, because Plaintiff and Florida Subclass Members drove prospective customers to eCommerce merchants' webpages, through their affiliate links and advertising efforts, to make purchases that resulted in Microsoft's wrongful receipt of referral fees and commission payments from those merchants.

262.    Microsoft benefitted from the referral fees and commission payments that were credited to it as a function of the Microsoft Shopping extension wrongfully representing to the merchant that Microsoft, rather than Plaintiff and Florida Subclass Members, should be assigned credit for the conversion via last-click attribution.

263.    Microsoft wrongfully secured the referral fees and commission payments by using the Microsoft Shopping extension to overwrite affiliate tracking codes that identified Plaintiff and Florida Subclass Members as the referrers of consumers and the parties to be awarded commissions and replace those affiliate tracking codes with tracking codes identifying Microsoft as the referrer to whom a commission should be awarded.

264.    But for Microsoft's unjust and improper use of the Microsoft Shopping extension, it would not have been credited and awarded commission on sales that emanated from Plaintiff's and Florida Subclass Members' respective affiliate marketing links.

265.    As a result of Microsoft's wrongful conduct as alleged in this Complaint, Microsoft has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Florida Subclass Members, and it would be unjust to permit Microsoft to retain the commissions and referral fees it diverted from Plaintiff and Florida Subclass Members.

266.    Microsoft continues to benefit and profit from the operation of the Microsoft Shopping extension while Plaintiff and Florida Subclass Members continue to have their rightful

CONSOLIDATED CLASS ACTION COMPLAINT - 62
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

commission payments taken by Microsoft.

267.   The benefit conferred upon, received, and enjoyed by Microsoft was not conferred officiously or gratuitously, and it would be inequitable and unjust for Microsoft to retain the benefit.

**COUNT NINE — INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

268.   The Florida Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Florida Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

269.   Plaintiff and Florida Subclass Members are engaged in ongoing economic relationships with eCommerce merchants to promote products and services to consumers in exchange for commissions, including as set forth herein. As part of these relationships, Plaintiff and Florida Subclass Members distribute affiliate links to refer consumers to products and services sold or offered by the eCommerce merchants. In return, eCommerce merchants provide Plaintiff and Florida Subclass Members with a referral fee or commission payment if a consumer completes a transaction on the eCommerce merchant's website after navigating to the merchant's website through an affiliate link distributed by Plaintiff and Florida Subclass Members.

270.   Microsoft had knowledge of the business relationships between eCommerce merchants on the one hand and Plaintiff and Florida Subclass Members on the other, whereby Plaintiff and Florida Subclass Members promote and provide affiliate links to consumers for products or services on an eCommerce merchant's website in exchange for receiving commissions from the eCommerce merchant for transactions credited to Plaintiff's and Florida Subclass Members' affiliate links via last-click attribution. Microsoft knew that the Microsoft Shopping extension monitors and logs a consumer's browsing activity and understood that economic relationships such as those between affiliate marketers like Plaintiff and Florida Subclass Members and eCommerce merchants are standard in the affiliate marketing industry. Specifically, the Microsoft Shopping extension is designed to monitor and contemporaneously log detailed

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

information about a consumer's browsing activity, including the full-string URL of each web page visited by a consumer. From these URLs, Microsoft knew when a consumer navigated to a specific merchant's website using a specific affiliate's referral link and thus knew of the commission-based economic relationship between the specific merchant and the specific affiliate retailer.

271.   Through use of the Microsoft Shopping extension, Microsoft diverts commission payments from Plaintiff and Florida Subclass Members who promoted and shared an affiliate link and generated the referral and ultimate sale of an eCommerce merchant's product or service. Specifically, the Microsoft Shopping extension replaces tracking tags that identify online marketers as the source of an eCommerce referral with Microsoft's own tracking tags. Microsoft thus holds itself out to the eCommerce merchant as the party responsible for referring the consumer even though the sale in question emanated from an online marketer's affiliate marketing link. This conduct is wrongful, improper, and without justification as set forth herein, including because it constitutes conversion and violates the Washington Consumer Protection Act, RCW §§ 19.86 *et seq*. This conduct is further wrongful, improper, and without justification because it contravenes existing standards and norms in the affiliate marketing industry that prohibit the use of cookie stuffing to divert affiliate commissions.

272.   Microsoft knew that its conduct was certain or substantially certain to interfere with Plaintiff's and Florida Subclass Members' business relationships with eCommerce merchants. Specifically, Microsoft understood that the Microsoft Shopping extension, when activated, overwrites and replaces any existing affiliate tracking codes. Microsoft knew that when the Microsoft Shopping extension activated after a consumer navigated to a specific merchant's website using a specific online marketer's affiliate link, the Microsoft Shopping extension would overwrite and replace the existing online marketer's tracking code and replace it with Microsoft's tracking code. Microsoft knew that the overwriting and replacement of existing affiliate tracking codes by the Microsoft Shopping extension would result in the eCommerce merchant crediting Microsoft, rather than the online marketer, with the sale and paying Microsoft, instead of Plaintiff

CONSOLIDATED CLASS ACTION COMPLAINT - 64
No. 2:25-cv-00088-RSM

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and Florida Subclass Members, the monies that Plaintiff and Florida Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links.

273. Microsoft's intentional conduct interfered with Plaintiff's and Florida Subclass Members' business relationships with eCommerce merchants by causing eCommerce merchants to pay Microsoft, instead of Plaintiff and Florida Subclass Members, the monies that Plaintiff and Florida Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links.

274. As a direct and proximate result of Microsoft's interference with Plaintiff's and Florida Subclass Members' contracts with eCommerce merchants, Plaintiff and Florida Subclass Members suffered harm and economic injury by being deprived of commissions they should have rightfully received pursuant to their contracts with eCommerce merchants for providing referrals through their affiliate links. As a result of the above conduct, Microsoft is liable to Plaintiff and Florida Subclass Members for damages in an amount to be determined at trial.

## COUNT TEN — INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

275. The Florida Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Florida Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

276. Plaintiff and Florida Subclass Members are engaged in ongoing, valid contractual relationships with eCommerce merchants to promote products and services to consumers in exchange for commissions, including as set forth herein. Under the terms of these contracts, Plaintiff and Florida Subclass Members distribute affiliate links to refer consumers to products and services sold or offered by the eCommerce merchants. In return, eCommerce merchants provide Plaintiff and Florida Subclass Members with a referral fee or commission payment if a consumer completes a transaction on the eCommerce merchant's website after navigating to the merchant's website through an affiliate link distributed by Plaintiff and Florida Subclass Members.

277. Microsoft had knowledge of the contractual relationships between eCommerce

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

merchants on the one hand and Plaintiff and Florida Subclass Members on the other, whereby Plaintiff and Florida Subclass Members promote and provide affiliate links to consumers for products or services on an eCommerce merchant's website in exchange for receiving commissions from the eCommerce merchant for transactions credited to Plaintiff's and Florida Subclass Members' affiliate links via last-click attribution. Microsoft knew that the Microsoft Shopping extension monitors and logs a consumer's browsing activity and understood that contractual relationships such as those between affiliate marketers like Plaintiff and Florida Subclass Members and eCommerce merchants are standard in the affiliate marketing industry. Specifically, the Microsoft Shopping extension is designed to monitor and contemporaneously log detailed information about a consumer's browsing activity, including the full-string URL of each web page visited by a consumer. From these URLs, Microsoft knew when a consumer navigated to a specific merchant's website using a specific affiliate's referral link and thus knew of the commission-based contractual relationship between the specific merchant and the specific affiliate retailer.

278.    Through use of the Microsoft Shopping extension, Microsoft diverts commission payments from Plaintiff and Florida Subclass Members who promoted and shared an affiliate link and generated the referral and ultimate sale of an eCommerce merchant's product or service. Specifically, the Microsoft Shopping extension replaces tracking tags that identify online marketers as the source of an eCommerce referral with its own tracking tags and holds itself out as the referrer of the specific products and/or services even though the sale in question emanated from an online marketer's affiliate marketing link. This conduct is wrongful as alleged herein, including because it constitutes conversion and violates Washington's Consumer Protection Act, RCW §§ 19.86 *et seq*. This conduct is further wrongful, improper, and without justification because it contravenes existing standards and norms in the affiliate marketing industry that prohibit the use of cookie stuffing to divert affiliate commissions

279.    Microsoft knew that a breach or disruption of Plaintiff's and Florida Subclass Members' contracts with eCommerce merchants was certain or substantially certain to occur as a

CONSOLIDATED CLASS ACTION COMPLAINT - 66
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

result of its conduct alleged herein. Specifically, Microsoft understood that the Microsoft Shopping extension, when activated, overwrites and replaces any existing affiliate tracking codes. Microsoft knew that when a consumer navigated to a specific merchant's website using an online marketer's affiliate link and the Microsoft Shopping extension activated, the Microsoft Shopping extension would overwrite and replace the existing online marketer's tracking code and replace it with Microsoft's tracking code. Microsoft knew that the overwriting and replacement of existing affiliate tracking codes by the Microsoft Shopping extension would result in Microsoft, rather than the affiliate, being credited for the sale and cause eCommerce merchants to breach their agreements with Plaintiff and Florida Subclass Members by paying Microsoft, instead of Plaintiff and Florida Subclass Members, the monies that Plaintiff and Florida Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links.

280.    Microsoft's intentional conduct caused eCommerce merchants to breach their agreements with Plaintiff and Florida Subclass Members by paying Microsoft, instead of Plaintiff and Florida Subclass Members, the monies that Plaintiff and Florida Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links.

281.    As a direct and proximate result of Microsoft's interference with Plaintiff's and Florida Subclass Members' contracts with eCommerce merchants, Plaintiff and Florida Subclass Members suffered harm and economic injury by being deprived of commissions they should have rightfully received pursuant to their contracts with eCommerce merchants for providing referrals through their affiliate links. As a result of the above conduct, Microsoft is liable to Plaintiff and Florida Subclass Members for damages in an amount to be determined at trial.

## CLAIMS ON BEHALF OF THE NEW YORK SUBCLASS

### COUNT ELEVEN — CONVERSION

282.    The New York Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the New York Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

CONSOLIDATED CLASS ACTION COMPLAINT - 67
No. 2:25-cv-00088-RSM

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

283.    At the time consumers made purchases on eCommerce merchant's websites, Plaintiff and New York Subclass Members had a right in the affiliate tracking code that identified Plaintiff and New York Subclass Members as the parties entitled to commissions for referring consumers to products and services sold by eCommerce merchants. These affiliate tracking codes are specific to Plaintiff and each New York Subclass Member.

284.    Microsoft deprived Plaintiff and New York Subclass Members of their rights in their specific affiliate tracking codes through the operation of the Microsoft Shopping extension, which intentionally caused Plaintiff's and New York Subclass Members' affiliate tracking codes to be overwritten with Microsoft's own tracking codes.

285.    Microsoft assumed and exercised control over Plaintiff's and New York Subclass Members' affiliate tracking codes, in hostility to the rights of Plaintiff and New York Subclass Members, without justification.

286.    Microsoft's wrongful exercise of control over Plaintiff's and New York Subclass Members' personal property constitutes conversion.

287.    Plaintiff and New York Subclass Members neither assented to nor ratified Microsoft's interference with their commissions.

288.    As a direct and proximate result of Microsoft's conversion, Plaintiff and New York Subclass Members were harmed.

289.    Microsoft is liable to Plaintiff and New York Subclass Members for damages and costs permitted by law.

## COUNT TWELVE — UNJUST ENRICHMENT

290.    The New York Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the New York Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

291.    Plaintiff and New York Subclass Members lack an adequate remedy at law. Microsoft's misconduct has interfered with Plaintiff's and New York Subclass Members' ability

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

to profit from their affiliate marketing efforts and constitutes ongoing harm that requires equitable relief.

292.    Plaintiff and New York Subclass Members have an interest, both equitable and legal, in the referral fees and commission payments to which they were wrongfully deprived. These payments were rightfully earned by Plaintiff and New York Subclass Members, not Microsoft.

293.    Plaintiff and New York Subclass Members conferred a benefit on Microsoft, because Plaintiff and New York Subclass Members drove prospective customers to eCommerce merchants' webpages, through their affiliate links and advertising efforts, to make purchases that resulted in Microsoft's receipt of referral fees and commission payments from those merchants.

294.    Microsoft benefitted from the referral fees and commission payments that were credited to it as a function of the Microsoft Shopping extension wrongfully representing to the merchant that Microsoft, rather than Plaintiff and New York Subclass Members, should be assigned credit for the conversion via last-click attribution.

295.    Microsoft understood that it so benefitted, and it also understood and appreciated that the Microsoft Shopping extension would cause the harm described herein because the Microsoft Shopping extension monitors for existing affiliate tracking codes in a consumer's browser and, when activated, overwrites any existing affiliate tracking codes. Specifically, the Microsoft Shopping extension is designed to contemporaneously monitor and log detailed information about a user's browsing activity. This information includes, among other things, the full-string URL of each web page visited by a consumer. From these URLs, Microsoft knew when a consumer navigated to a specific merchant's website using a specific affiliate's referral link. Microsoft further knew that, when activated, the Microsoft browser extension overwrites and replaces any existing affiliate codes with Microsoft's own tracking code. Microsoft understood that when a consumer navigated to an eCommerce merchant's website using a specific online marketer's affiliate link and the Microsoft Shopping extension was activated, the Microsoft Shopping extension would overwrite and replace the online marketer's tracking code with

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Microsoft's tracking code, which would result in Microsoft, rather than the online marketer, being assigned credit for the sale and awarded any commission or referral fee.

296.    But for Microsoft's unjust and improper use of the Microsoft Shopping extension, it would not have been credited and awarded commission on sales that emanated from Plaintiff's and New York Subclass Members' respective affiliate marketing links.

297.    As a result of Microsoft's wrongful conduct as alleged in this Complaint, Microsoft has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and New York Subclass Members.

298.    Microsoft continues to benefit and profit from the operation of the Microsoft Shopping extension while Plaintiff and New York Subclass Members continue to have their rightful commission payments taken by Microsoft.

299.    Microsoft's unjust enrichment is traceable to, and resulted directly and proximately from the conduct alleged herein, including by using the Microsoft Shopping extension to wrongfully credit itself with referrals and commissions it did not rightfully earn.

300.    The benefit conferred upon, received, and enjoyed by Microsoft was not conferred officiously or gratuitously, and it would be inequitable and unjust for Microsoft to retain the benefit.

301.    Equity and good conscience militate against permitting Microsoft to retain the profits and benefits from its wrongful conduct, which should be restored to Plaintiff and New York Subclass Members.

## COUNT THIRTEEN — INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

302.    The New York Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the New York Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

303.    Plaintiff and New York Subclass Members are engaged in ongoing economic relationships with eCommerce merchants to promote products and services to consumers in

CONSOLIDATED CLASS ACTION COMPLAINT - 70
No. 2:25-cv-00088-RSM

exchange for commissions, including as set forth herein. As part of these relationships, Plaintiff and New York Subclass Members distribute affiliate links to refer consumers to products and services sold or offered by the eCommerce merchants. In return, eCommerce merchants provide Plaintiff and New York Subclass Members with a referral fee or commission payment if a consumer completes a transaction on the eCommerce merchant's website after navigating to the merchant's website through an affiliate link distributed by Plaintiff and New York Subclass Members.

304.    Microsoft had actual knowledge of the business relationships between eCommerce merchants on the one hand and Plaintiff and New York Subclass Members on the other, whereby Plaintiff and New York Subclass Members promote and provide affiliate links to consumers for products or services on an eCommerce merchant's website in exchange for receiving commissions from the eCommerce merchant for transactions credited to Plaintiff's and New York Subclass Members' affiliate links via last-click attribution. Microsoft knew that the Microsoft Shopping extension monitors and logs a consumer's browsing activity and understood that economic relationships such as those between affiliate marketers like Plaintiff and New York Subclass Members and eCommerce merchants are standard in the affiliate marketing industry. Specifically, the Microsoft Shopping extension is designed to monitor and contemporaneously log detailed information about a consumer's browsing activity, including the full-string URL of each web page visited by a consumer. From these URLs, Microsoft knew when a consumer navigated to a specific merchant's website using a specific affiliate's referral link and thus knew of the commission-based economic relationship between the specific merchant and the specific affiliate retailer.

305.    Through use of the Microsoft Shopping extension, Microsoft diverts commission payments from Plaintiff and New York Subclass Members who promoted and shared an affiliate link and generated the referral and ultimate sale of an eCommerce merchant's product or service. Specifically, the Microsoft Shopping extension replaces tracking tags that identify online marketers as the source of an eCommerce referral with Microsoft's own tracking tags. Microsoft

CONSOLIDATED CLASS ACTION COMPLAINT - 71
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

thus holds itself out to the eCommerce merchant as the party responsible for referring the consumer even though the sale in question emanated from an online marketer's affiliate marketing link. This conduct is wrongful, improper, and without justification as set forth herein, including because it constitutes conversion and violates Washington's Consumer Protection Act, RCW §§ 19.86 *et seq*. This conduct is further wrongful, improper, and without justification because it contravenes existing standards and norms in the affiliate marketing industry that prohibit the use of cookie stuffing to divert affiliate commissions. Microsoft's misconduct was motivated to injure Plaintiff and New York Subclass Members by unlawful means, rather than by its self-interest or any other economic considerations.

306.    Microsoft knew that its conduct was certain or substantially certain to interfere with Plaintiff's and New York Subclass Members' business relationships with eCommerce merchants. Specifically, Microsoft understood that the Microsoft Shopping extension, when activated, overwrites and replaces any existing affiliate tracking codes. Microsoft knew that when the Microsoft Shopping extension activated after a consumer navigated to a specific merchant's website using a specific online marketer's affiliate link, the Microsoft Shopping extension would overwrite and replace the existing online marketer's tracking code and replace it with Microsoft's tracking code. Microsoft knew that the overwriting and replacement of existing affiliate tracking codes by the Microsoft Shopping extension would result in the eCommerce merchant crediting Microsoft, rather than the online marketer, with the sale and paying Microsoft, instead of Plaintiff and New York Subclass Members, the monies that Plaintiff and New York Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links.

307.    Microsoft's intentional conduct interfered with Plaintiff's and New York Subclass Members' business relationships with eCommerce merchants by causing eCommerce merchants to pay Microsoft, instead of Plaintiff and New York Subclass Members, the monies that Plaintiff and New York Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

308.    As a direct and proximate result of Microsoft's interference with Plaintiff's and New York Subclass Members' contracts with eCommerce merchants, Plaintiff and New York Subclass Members suffered harm and economic injury by being deprived of commissions they should have rightfully received pursuant to their contracts with eCommerce merchants for providing referrals through their affiliate links. As a result of the above conduct, Microsoft is liable to Plaintiff and New York Subclass Members for damages in an amount to be determined at trial.

## COUNT FOURTEEN — INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

309.    The New York Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the New York Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

310.    Plaintiff and New York Subclass Members are engaged in ongoing, valid contractual relationships with eCommerce merchants to promote products and services to consumers in exchange for commissions, including as set forth herein. Under the terms of these contracts, Plaintiff and New York Subclass Members distribute affiliate links to refer consumers to products and services sold or offered by the eCommerce merchants. In return, eCommerce merchants provide Plaintiff and New York Subclass Members with a referral fees or commission payment if a consumer completes a transaction on the eCommerce merchant's website after navigating to the merchant's website through an affiliate link distributed by Plaintiff and New York Subclass Members.

311.    Microsoft had actual knowledge of the contractual relationships between eCommerce merchants on the one hand and Plaintiff and New York Subclass Members on the other, whereby Plaintiff and New York Subclass Members promote and provide affiliate links to consumers for products or services on an eCommerce merchant's website in exchange for receiving commissions from the eCommerce merchant for transactions credited to Plaintiff's and New York Subclass Members' affiliate links via last-click attribution. Microsoft knew that the Microsoft Shopping extension monitors and logs a consumer's browsing activity and understood

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

that contractual relationships such as those between affiliate marketers like Plaintiff and New York Subclass Members and eCommerce merchants are standard in the affiliate marketing industry. Specifically, the Microsoft Shopping extension is designed to monitor and contemporaneously log detailed information about a consumer's browsing activity, including the full-string URL of each web page visited by a consumer. From these URLs, Microsoft knew when a consumer navigated to a specific merchant's website using a specific affiliate's referral link and thus knew of the commission-based contractual relationship between the specific merchant and the specific affiliate retailer.

312.    Through use of the Microsoft Shopping extension, Microsoft diverts commission payments from Plaintiff and New York Subclass Members who promoted and shared an affiliate link and generated the referral and ultimate sale of an eCommerce merchant's product or service. Specifically, the Microsoft Shopping extension replaces tracking tags that identify online marketers as the source of an eCommerce referral with its own tracking tags and holds itself out as the referrer of the specific products and/or services even though the sale in question emanated from an online marketer's affiliate marketing link. Microsoft's intentional conduct is wrongful, improper, and without justification as set forth herein, including because it constitutes conversion and violates the Washington Consumer Protection Act, RCW §§ 19.86 *et seq*.

313.    Microsoft knew that a breach or disruption of Plaintiff's and New York Subclass Members' contracts with eCommerce merchants was certain or substantially certain to occur as a result of its conduct alleged herein. Specifically, Microsoft understood that the Microsoft Shopping extension, when activated, overwrites and replaces any existing affiliate tracking codes. Microsoft knew that when a consumer navigated to a specific merchant's website using an online marketer's affiliate link and the Microsoft Shopping extension activated, the Microsoft Shopping extension would overwrite and replace the existing online marketer's tracking code and replace it with Microsoft's tracking code. Microsoft knew that the overwriting and replacement of existing affiliate tracking codes by the Microsoft Shopping extension would result in Microsoft, rather than

CONSOLIDATED CLASS ACTION COMPLAINT - 74
No. 2:25-cv-00088-RSM

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the affiliate, being credited for the sale and cause eCommerce merchants to breach their agreements with Plaintiff and New York Subclass Members by paying Microsoft, instead of Plaintiff and New York Subclass Members, the monies that Plaintiff and New York Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links.

314.    Microsoft's conduct caused eCommerce merchants to breach their agreements with Plaintiff and New York Subclass Members by paying Microsoft, instead of Plaintiff and New York Subclass Members, the monies that Plaintiff and New York Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links.

315.    As a direct and proximate result of Microsoft's interference with Plaintiff's and New York Subclass Members' contracts with eCommerce merchants, Plaintiff and New York Subclass Members suffered harm and economic injury by being deprived of commissions they should have rightfully received pursuant to their contracts with eCommerce merchants for providing referrals through their affiliate links. As a result of the above conduct, Microsoft is liable to Plaintiff and New York Subclass Members for damages in an amount to be determined at trial.

## CLAIMS ON BEHALF OF THE OHIO SUBCLASS
### COUNT FIFTEEN — CONVERSION

316.    The Ohio Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Ohio Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

317.    At the time consumers made purchases on eCommerce merchants' websites, Plaintiff and Ohio Subclass Members had a right to possess the affiliate tracking codes that identified Plaintiff and Ohio Subclass Members as the parties entitled to commissions for referring consumers to products and services sold by eCommerce merchants. These affiliate tracking codes are specific to Plaintiff and each Ohio Subclass Member.

318.    Microsoft deprived Plaintiff and Ohio Subclass Members of their rights in their

CONSOLIDATED CLASS ACTION COMPLAINT - 75
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

specific affiliate tracking codes through the operation of the Microsoft Shopping extension, which intentionally caused Plaintiff's and Ohio Subclass Members' affiliate tracking codes to be overwritten with Microsoft's own tracking codes.

319.     Microsoft assumed and exercised control over Plaintiff's and Ohio Subclass Members' affiliate tracking codes, in hostility to the rights of Plaintiff and Ohio Subclass Members, without justification.

320.     Microsoft's wrongful exercise of control over Plaintiff's and Ohio Subclass Members' personal property constitutes conversion.

321.     Plaintiff and Ohio Subclass Members neither assented to nor ratified Microsoft's interference with their commissions.

322.     As a direct and proximate result of Microsoft's conversion, Plaintiff and Ohio Subclass Members were harmed.

323.     Microsoft is liable to Plaintiff and Ohio Subclass Members for damages and costs permitted by law.

## COUNT SIXTEEN — INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

324.     The Ohio Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Ohio Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

325.     Plaintiff and Ohio Subclass Members are engaged in ongoing, valid contractual relationships with eCommerce merchants to promote products and services to consumers in exchange for commissions, including as set forth herein. Under the terms of these contracts, Plaintiff and Ohio Subclass Members distribute affiliate links to refer consumers to products and services sold or offered by the eCommerce merchants. In return, eCommerce merchants provide Plaintiff and Ohio Subclass Members with a referral fees or commission payment if a consumer completes a transaction on the eCommerce merchant's website after navigating to the merchant's website through an affiliate link distributed by Plaintiff and Ohio Subclass Members.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

326.     Microsoft had knowledge of the contractual relationships between eCommerce merchants on the one hand and Plaintiff and Ohio Subclass Members on the other, whereby Plaintiff and Ohio Subclass Members promote and provide affiliate links to consumers for products or services on an eCommerce merchant's website in exchange for receiving commissions from the eCommerce merchant for transactions credited to Plaintiff's and Ohio Subclass Members' affiliate links via last-click attribution. Microsoft knew that the Microsoft Shopping extension monitors and logs a consumer's browsing activity and understood that contractual relationships such as those between affiliate marketers like Plaintiff and Ohio Subclass Members and eCommerce merchants are standard in the affiliate marketing industry. Specifically, the Microsoft Shopping extension is designed to monitor and contemporaneously log detailed information about a consumer's browsing activity, including the full-string URL of each web page visited by a consumer. From these URLs, Microsoft knew when a consumer navigated to a specific merchant's website using a specific affiliate's referral link and thus knew of the commission-based contractual relationship between the specific merchant and the specific affiliate retailer.

327.     Through use of the Microsoft Shopping extension, Microsoft diverts commission payments from Plaintiff and Ohio Subclass Members who promoted and shared an affiliate link and generated the referral and ultimate sale of an eCommerce merchant's product or service. Specifically, the Microsoft Shopping extension replaces tracking tags that identify online marketers as the source of an eCommerce referral with its own tracking tags and holds itself out as the referrer of the specific products and/or services even though the sale in question emanated from an online marketer's affiliate marketing link.

328.     Microsoft knew that a breach or disruption of Plaintiff's and Ohio Subclass Members' contracts with eCommerce merchants was certain or substantially certain to occur as a result of its conduct alleged herein. Specifically, Microsoft understood that the Microsoft Shopping extension, when activated, overwrites and replaces any existing affiliate tracking codes. Microsoft knew that when a consumer navigated to a specific merchant's website using an online marketer's

CONSOLIDATED CLASS ACTION COMPLAINT - 77
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

affiliate link and the Microsoft Shopping extension activated, the Microsoft Shopping extension would overwrite and replace the existing online marketer's tracking code and replace it with Microsoft's tracking code. Microsoft knew that the overwriting and replacement of existing affiliate tracking codes by the Microsoft Shopping extension would result in Microsoft, rather than the affiliate, being credited for the sale and cause eCommerce merchants to breach their agreements with Plaintiff and Ohio Subclass Members by paying Microsoft, instead of Plaintiff and Ohio Subclass Members, the monies that Plaintiff and Ohio Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links. Microsoft's intentional conduct is wrongful, improper, and without justification as set forth herein, including because it constitutes conversion and violates the Washington Consumer Protection Act, RCW §§ 19.86 *et seq*.

329.    Microsoft's conduct caused eCommerce merchants to breach their agreements with Plaintiff and Ohio Subclass Members by paying Microsoft, instead of Plaintiff and Ohio Subclass Members, the monies that Plaintiff and Ohio Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links.

330.    As a direct and proximate result of Microsoft's interference with Plaintiff's and Ohio Subclass Members' contracts with eCommerce merchants, Plaintiff and Ohio Subclass Members suffered harm and economic injury by being deprived of commissions they should have rightfully received pursuant to their contracts with eCommerce merchants for providing referrals through their affiliate links. As a result of the above conduct, Microsoft is liable to Plaintiff and Ohio Subclass Members for damages in an amount to be determined at trial.

## COUNT SEVENTEEN — INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

331.    The Ohio Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Ohio Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

332.    Plaintiff and Ohio Subclass Members are engaged in ongoing economic

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

relationships with eCommerce merchants to promote products and services to consumers in exchange for commissions, including as set forth herein. As part of these relationships, Plaintiff and Ohio Subclass Members distribute affiliate links to refer consumers to products and services sold or offered by the eCommerce merchants. In return, eCommerce merchants provide Plaintiff and Ohio Subclass Members with a referral fee or commission payment if a consumer completes a transaction on the eCommerce merchant's website after navigating to the merchant's website through an affiliate link distributed by Plaintiff and Ohio Subclass Members.

333.    Microsoft had actual knowledge of the business relationships between eCommerce merchants on the one hand and Plaintiff and Ohio Subclass Members on the other, whereby Plaintiff and Ohio Subclass Members promote and provide affiliate links to consumers for products or services on an eCommerce merchant's website in exchange for receiving commissions from the eCommerce merchant for transactions credited to Plaintiff's and Ohio Subclass Members' affiliate links via last-click attribution. Microsoft knew that the Microsoft Shopping extension monitors and logs a consumer's browsing activity and understood that economic relationships such as those between affiliate marketers like Plaintiff and Ohio Subclass Members and eCommerce merchants are standard in the affiliate marketing industry. Specifically, the Microsoft Shopping extension is designed to monitor and contemporaneously log detailed information about a consumer's browsing activity, including the full-string URL of each web page visited by a consumer. From these URLs, Microsoft knew when a consumer navigated to a specific merchant's website using a specific affiliate's referral link and thus knew of the commission-based economic relationship between the specific merchant and the specific affiliate retailer.

334.    Through use of the Microsoft Shopping extension, Microsoft diverts commission payments from Plaintiff and Ohio Subclass Members who promoted and shared an affiliate link and generated the referral and ultimate sale of an eCommerce merchant's product or service. Specifically, the Microsoft Shopping extension replaces tracking tags that identify online marketers as the source of an eCommerce referral with Microsoft's own tracking tags. Microsoft

CONSOLIDATED CLASS ACTION COMPLAINT - 79
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

thus holds itself out to the eCommerce merchant as the party responsible for referring the consumer even though the sale in question emanated from an online marketer's affiliate marketing link. In doing so, Microsoft acted intentionally and maliciously. This conduct is wrongful, improper, and without justification as set forth herein, including because it constitutes conversion and violates the Washington Consumer Protection Act, RCW §§ 19.86 *et seq*. This conduct is further wrongful, improper, and without justification because it contravenes existing standards and norms in the affiliate marketing industry that prohibit the use of cookie stuffing to divert affiliate commissions.

335.    Microsoft knew that its conduct was certain or substantially certain to interfere with Plaintiff's and Ohio Subclass Members' business relationships with eCommerce merchants. Specifically, Microsoft understood that the Microsoft Shopping extension, when activated, overwrites and replaces any existing affiliate tracking codes. Microsoft knew that when the Microsoft Shopping extension activated after a consumer navigated to a specific merchant's website using a specific online marketer's affiliate link, the Microsoft Shopping extension would overwrite and replace the existing online marketer's tracking code and replace it with Microsoft's tracking code. Microsoft knew that the overwriting and replacement of existing affiliate tracking codes by the Microsoft Shopping extension would result in the eCommerce merchant crediting Microsoft, rather than the online marketer, with the sale and paying Microsoft, instead of Plaintiff and Ohio Subclass Members, the monies that Plaintiff and Ohio Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links.

336.    Microsoft's conduct interfered with Plaintiff's and Ohio Subclass Members' business relationships with eCommerce merchants by causing eCommerce merchants to pay Microsoft, instead of Plaintiff and Ohio Subclass Members, the monies that Plaintiff and Ohio Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links.

337.    As a direct and proximate result of Microsoft's interference with Plaintiff's and Ohio Subclass Members' contracts with eCommerce merchants, Plaintiff and Ohio Subclass

CONSOLIDATED CLASS ACTION COMPLAINT - 80
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Members suffered harm and economic injury by being deprived of commissions they should have rightfully received pursuant to their contracts with eCommerce merchants for providing referrals through their affiliate links. As a result of the above conduct, Microsoft is liable to Plaintiff and Ohio Subclass Members for damages in an amount to be determined at trial.

## COUNT EIGHTEEN — UNJUST ENRICHMENT

338.    The Ohio Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Ohio Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

339.    Plaintiff and Ohio Subclass Members lack an adequate remedy at law. Microsoft's misconduct has interfered with Plaintiff's and Ohio Subclass Members' ability to profit from their affiliate marketing efforts and constitutes ongoing harm that requires equitable relief.

340.    Plaintiff and Ohio Subclass Members have an interest, both equitable and legal, in the referral fees and commission payments to which they were wrongfully deprived. These payments were rightfully earned by Plaintiff and Ohio Subclass Members, not Microsoft

341.    Plaintiff and Ohio Subclass Members conferred a benefit on Microsoft, because Plaintiff and Ohio Subclass Members drove prospective customers to eCommerce merchants' webpages, through their affiliate links and advertising efforts, to make purchases that resulted in Microsoft's receipt of referral fees and commission payments from those merchants.

342.    Microsoft benefitted from the referral fees and commission payments that were credited to it as a function of the Microsoft Shopping extension wrongfully representing to the merchant that Microsoft, rather than Plaintiff and Ohio Subclass Members, should be assigned credit for the conversion via last-click attribution.

343.    Microsoft understood that it so benefitted, and it also understood and appreciated that the Microsoft Shopping extension would cause the harm described herein because the Microsoft Shopping extension monitors for existing affiliate tracking codes in a consumer's browser and, when activated, overwrites any existing affiliate tracking codes. Specifically, the

Microsoft Shopping extension is designed to contemporaneously monitor and log detailed information about a user's browsing activity. This information includes, among other things, the full-string URL of each web page visited by a consumer. From these URLs, Microsoft knew when a consumer navigated to a specific merchant's website using a specific affiliate's referral link. Microsoft further knew that, when activated, the Microsoft browser extension overwrites and replaces any existing affiliate codes with Microsoft's own tracking code. Microsoft understood that when a consumer navigated to an eCommerce merchant's website using a specific online marketer's affiliate link and the Microsoft Shopping extension was activated, the Microsoft Shopping extension would overwrite and replace the online marketer's tracking code with Microsoft's tracking code, which would result in Microsoft, rather than the online marketer, being assigned credit for the sale and awarded any commission or referral fee.

344. But for Microsoft's unjust and improper use of the Microsoft Shopping extension, it would not have been credited and awarded commission on sales that emanated from Plaintiff's and Ohio Subclass Members' respective affiliate marketing links.

345. As a result of Microsoft's wrongful conduct as alleged in this Complaint, Microsoft has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Ohio Subclass Members.

## CLAIMS ON BEHALF OF THE TEXAS SUBCLASS
## COUNT NINETEEN — CONVERSION

346. The Texas Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Texas Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

347. At the time consumers made purchases on eCommerce merchant's websites, Plaintiff and Texas Subclass Members had an entitlement to possession of the affiliate tracking code that identified Plaintiff and Texas Subclass Members as the parties entitled to commissions for referring consumers to products and services sold by eCommerce merchants. These affiliate

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

tracking codes are specific to Plaintiff and each Texas Subclass Member.

348.    Microsoft deprived Plaintiff and Texas Subclass Members of their specific affiliate tracking codes through the operation of the Microsoft Shopping extension, which intentionally caused Plaintiff's and Texas Subclass Members' affiliate tracking codes to be overwritten with Microsoft's own tracking codes.

349.    Microsoft assumed and exercised control over Plaintiff's and Texas Subclass Members' affiliate tracking codes, in hostility to the rights of Plaintiff and Texas Subclass Members, without justification.

350.    Microsoft's wrongful exercise of control over Plaintiff's and Texas Subclass Members' personal property constitutes conversion.

351.    Plaintiff and Texas Subclass Members neither assented to nor ratified Microsoft's over interference with their commissions.

352.    As a direct and proximate result of Microsoft's conversion, Plaintiff and Texas Subclass Members were harmed.

353.    Microsoft is liable to Plaintiff and Texas Subclass Members for damages and costs permitted by law.

## COUNT TWENTY — INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

354.    The Texas Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Texas Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

355.    Plaintiff and Texas Subclass Members are engaged in ongoing, valid contractual relationships with eCommerce merchants to promote products and services to consumers in exchange for commissions, including as set forth herein. Under the terms of these contracts, Plaintiff and Texas Subclass Members distribute affiliate links to refer consumers to products and services sold or offered by the eCommerce merchants. In return, eCommerce merchants provide Plaintiff and Texas Subclass Members with a referral fee or commission payment if a consumer

CONSOLIDATED CLASS ACTION COMPLAINT - 83
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

completes a transaction on the eCommerce merchant's website after navigating to the merchant's website through an affiliate link distributed by Plaintiff and Texas Subclass Members.

356.    Microsoft knew that its conduct was certain or substantially certain to interfere with Plaintiff's and Texas Subclass Members' contracts with eCommerce merchants. Specifically, Microsoft understood that the Microsoft Shopping extension, when activated, overwrites and replaces any existing affiliate tracking codes. Microsoft knew that when the Microsoft Shopping extension activated after a consumer navigated to a specific merchant's website using a specific online marketer's affiliate link, the Microsoft Shopping extension would overwrite and replace the existing online marketer's tracking code and replace it with Microsoft's tracking code. Microsoft knew that the overwriting and replacement of existing affiliate tracking codes by the Microsoft Shopping extension would result in Microsoft, rather than the online marketer, being credited for the sale and would cause eCommerce merchants to breach their agreements with Plaintiff and Texas Subclass Members by paying Microsoft, instead of Plaintiff and Texas Subclass Members, the monies that Plaintiff and Texas Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links. This conduct is wrongful, improper, and without justification as set forth herein, including because it constitutes conversion and violates the Washington Consumer Protection Act, RCW §§ 19.86 *et seq*. This conduct is further wrongful, improper, and without justification because it contravenes existing standards and norms in the affiliate marketing industry that prohibit the use of cookie stuffing to divert affiliate commissions.

357.    Microsoft's willful and intentional conduct interfered with Plaintiff's and Texas Subclass Members' contracts with eCommerce merchants by causing eCommerce merchants to pay Microsoft, instead of Plaintiff and Texas Subclass Members, the monies that Plaintiff and Texas Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links.

358.    As a direct and proximate result of Microsoft's interference with Plaintiff's and Texas Subclass Members' contracts with eCommerce merchants, Plaintiff and Texas Subclass

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Members suffered harm and economic injury by being deprived of commissions they should have rightfully received pursuant to their contracts with eCommerce merchants for providing referrals through their affiliate links. As a result of the above conduct, Microsoft is liable to Plaintiff and Texas Subclass Members for damages in an amount to be determined at trial.

## COUNT TWENTY-ONE — UNJUST ENRICHMENT

359.     The Texas Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Texas Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

360.     Plaintiff and Texas Subclass Members lack an adequate remedy at law. Microsoft's misconduct has interfered with Plaintiff's and Texas Subclass Members' ability to profit from their affiliate marketing efforts and constitutes ongoing harm that requires equitable relief.

361.     Plaintiff and Texas Subclass Members have an interest, both equitable and legal, in the referral fees and commission payments that Microsoft received.

362.     Plaintiff and Texas Subclass Members rightfully earned the referral fees and commission payments that Microsoft ultimately received, because Plaintiff and Texas Subclass Members drove prospective customers to eCommerce merchants' webpages, through their affiliate links and advertising efforts, to make purchases.

363.     Microsoft received the referral fees and commission payments that were credited to it by eCommerce merchants as a function of the Microsoft Shopping extension wrongfully representing to those merchants that Microsoft, rather than Plaintiff and Texas Subclass Members, should be assigned credit for the transaction via last-click attribution.

364.     Microsoft wrongfully secured the referral fees and commission payments by using the Microsoft Shopping extension to overwrite affiliate tracking codes that identified Plaintiff and Texas Subclass Members as the referrers of consumers and the parties to be awarded commissions with tracking codes identifying Microsoft as the referrer to whom a commission should be awarded.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

365.    But for Microsoft's unjust and improper use of the Microsoft Shopping extension, it would not have been credited and awarded commission on sales that emanated from Plaintiff's and Texas Subclass Members' respective affiliate marketing links.

366.    As a result of Microsoft's wrongful conduct as alleged in this Complaint, Microsoft has received money in the form of commissions and referral fees that rightfully belongs to Plaintiff and Texas Subclass Members, and it would be unjust to permit Microsoft to retain the commissions and referral fees it diverted from Plaintiff and Texas Subclass Members.

367.    Microsoft continues to benefit and profit from the operation of the Microsoft Shopping extension while Plaintiff and Texas Subclass Members continue to have their rightful commission payments diverted to Microsoft.

368.    The money conferred upon, received, and enjoyed by Microsoft was not conferred officiously or gratuitously, and it would be inequitable and unjust for Microsoft to retain the benefit.

369.    Equity and good conscience militate against permitting Microsoft to retain the profits and benefits from its wrongful conduct, which should be restored to Plaintiff and Texas Subclass Members.

## CLAIMS ON BEHALF OF THE WASHINGTON SUBCLASS
## COUNT TWENTY-TWO — CONVERSION

370.    The Washington Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Washington Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

371.    At the time consumers made purchases on eCommerce merchant's websites, Plaintiff and Washington Subclass Members had a right in the affiliate tracking code that identified Plaintiff and Washington Subclass Members as the parties entitled to commissions for referring consumers to products and services sold by eCommerce merchants. These affiliate tracking codes are specific to Plaintiff and each Washington Subclass Member.

CONSOLIDATED CLASS ACTION COMPLAINT - 86
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

372.    Microsoft deprived Plaintiff and Washington Subclass Members of their rights in their specific affiliate tracking codes through the operation of the Microsoft Shopping extension, which intentionally caused Plaintiff's and Washington Subclass Members' affiliate tracking codes to be overwritten with Microsoft's own tracking codes.

373.    Microsoft assumed and exercised control over Plaintiff's and Washington Subclass Members' affiliate tracking codes, in hostility to the rights of Plaintiff and Washington Subclass Members, without justification.

374.    Microsoft's wrongful exercise of control over Plaintiff's and Washington Subclass Members' personal property constitutes conversion.

375.    Plaintiff and Washington Subclass Members neither assented to nor ratified Microsoft's interference with their commissions.

376.    As a direct and proximate result of Microsoft's conversion, Plaintiff and Washington Subclass Members were harmed.

377.    Microsoft is liable to Plaintiff and Washington Subclass Members for damages and costs permitted by law.

### COUNT TWENTY-THREE — INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS OR BUSINESS EXPECTANCY

378.    The Washington Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Washington Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

379.    Plaintiff and Washington Subclass Members are engaged in ongoing contractual relationships with eCommerce merchants to promote products and services to consumers in exchange for commissions, including as set forth herein. Under the terms of these contracts, Plaintiff and Washington Subclass Members distribute affiliate links to refer consumers to products and services sold or offered by the eCommerce merchants. In return, eCommerce merchants provide Plaintiff and Washington Subclass Members with a referral fee or commission payment if a consumer completes a transaction on the eCommerce merchant's website after

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

navigating to the merchant's website through an affiliate link distributed by Plaintiff and Washington Subclass Members.

380.    Microsoft knew of or knew of facts giving rise to the business relationships between eCommerce merchants on the one hand and Plaintiff and Washington Subclass Members on the other, whereby Plaintiff and Washington Subclass Members promote and provide affiliate links to consumers for products or services on an eCommerce merchant's website in exchange for receiving commissions from the eCommerce merchant for transactions credited to Plaintiff's and Washington Subclass Members' affiliate links via last-click attribution. Microsoft knew that the Microsoft Shopping extension monitors and logs a consumer's browsing activity and understood that economic relationships such as those between affiliate marketers like Plaintiff and Washington Subclass Members and eCommerce merchants are standard in the affiliate marketing industry. Specifically, the Microsoft Shopping extension is designed to monitor and contemporaneously log detailed information about a consumer's browsing activity, including the full-string URL of each web page visited by a consumer. From these URLs, Microsoft knew when a consumer navigated to a specific merchant's website using a specific affiliate's referral link and thus knew of the existence of a commission-based economic relationship between the specific merchant and the specific affiliate retailer.

381.    Through use of the Microsoft Shopping extension, Microsoft diverts commission payments from Plaintiff and Washington Subclass Members who promoted and shared an affiliate link and generated the referral and ultimate sale of an eCommerce merchant's product or service. Specifically, the Microsoft Shopping extension replaces tracking tags that identify online marketers as the source of an eCommerce referral with its own tracking tags and holds itself out as the referrer of the specific products and/or services even though the sale in question emanated from an online marketer's affiliate marketing link. Microsoft's conduct is wrongful, improper, and without justification as set forth herein, including because Microsoft in fact caused injury to Plaintiff's and Washington Subclass Members' contractual relationships with eCommerce

CONSOLIDATED CLASS ACTION COMPLAINT - 88
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

merchants. This conduct is also wrongful and without justification because it constitutes conversion and violates Washington's Consumer Protection Act, RCW §§ 19.86 *et seq.* This conduct is further wrongful and without justification because it contravenes existing standards and norms in the affiliate marketing industry that prohibit the use of cookie stuffing to divert affiliate commissions.

382.    Microsoft knew that its conduct was certain or substantially certain to interfere with Plaintiff's and Washington Subclass Members' business relationships with eCommerce merchants. Specifically, Microsoft understood that the Microsoft Shopping extension, when activated, overwrites and replaces any existing affiliate tracking codes. Microsoft knew that when the Microsoft Shopping extension activated after a consumer navigated to a specific merchant's website using a specific online marketer's affiliate link, the Microsoft Shopping extension would overwrite and replace the existing online marketer's tracking code and replace it with Microsoft's tracking code. Microsoft knew that the overwriting and replacement of existing affiliate tracking codes by the Microsoft Shopping extension would result in Microsoft, rather than the online marketer, being credited for the sale and would cause eCommerce merchants to breach their agreements with Plaintiff and Washington Subclass Members by paying Microsoft, instead of Plaintiff and Washington Subclass Members, the monies that Plaintiff and Washington Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links.

383.    Microsoft's intentional conduct interfered with Plaintiff's and Washington Subclass Members' business relationships with eCommerce merchants by causing eCommerce merchants to pay Microsoft, instead of Plaintiff and Washington Subclass Members, the monies that Plaintiff and Washington Subclass Members rightfully earned as the true originators of sales arising from their affiliate marketing links.

384.    As a direct and proximate result of Microsoft's interference with Plaintiff's and Washington Subclass Members' contracts with eCommerce merchants, Plaintiff and Washington

CONSOLIDATED CLASS ACTION COMPLAINT - 89
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Subclass Members suffered harm and economic injury by being deprived of commissions they should have rightfully received pursuant to their contracts with eCommerce merchants for providing referrals through their affiliate links. As a result of the above conduct, Microsoft is liable to Plaintiff and Washington Subclass Members for damages in an amount to be determined at trial.

## COUNT TWENTY-FOUR — UNJUST ENRICHMENT

385.    The Washington Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Washington Subclass, repeats and realleges the allegations contained in the Statement of Facts as if fully set forth herein.

386.    Plaintiff and Washington Subclass Members lack an adequate remedy at law. Microsoft's misconduct has interfered with Plaintiff's and Washington Subclass Members' ability to profit from their affiliate marketing efforts and constitutes ongoing harm that requires equitable relief.

387.    Plaintiff and Washington Subclass Members have an interest, both equitable and legal, in the referral fees and commission payments to which they were wrongfully deprived. These payments were rightfully earned by Plaintiff and Washington Subclass Members, not Microsoft.

388.    Plaintiff and Washington Subclass Members conferred a benefit on Microsoft, because Plaintiff and Washington Subclass Members drove prospective customers to eCommerce merchants' webpages, through their affiliate links and advertising efforts, to make a purchase that resulted in Microsoft's receipt of referral fees and commission payments from those merchants.

389.    Microsoft benefitted from the referral fees and commission payments that were credited to it as a function of the Microsoft Shopping extension wrongfully representing to the merchant that Microsoft, rather than Plaintiff and Washington Subclass Members, should be assigned credit for the conversion via last-click attribution.

390.    Microsoft understood that it so benefitted, and it also understood and appreciated that the Microsoft Shopping extension would cause the harm described herein because the Microsoft Shopping extension monitors for existing affiliate tracking codes in a consumer's

CONSOLIDATED CLASS ACTION COMPLAINT - 90
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

browser and, when activated, overwrites any existing affiliate tracking codes. Specifically, the Microsoft Shopping extension is designed to contemporaneously monitor and log detailed information about a user's browsing activity. This information includes, among other things, the full-string URL of each web page visited by a consumer. From these URLs, Microsoft knew when a consumer navigated to a specific merchant's website using a specific affiliate's referral link. Microsoft further knew that, when activated, the Microsoft browser extension overwrites and replaces any existing affiliate codes with Microsoft's own tracking code. Microsoft understood that when a consumer navigated to an eCommerce merchant's website using a specific online marketer's affiliate link and the Microsoft Shopping extension was activated, the Microsoft Shopping extension would overwrite and replace the online marketer's tracking code with Microsoft's tracking code, which would result in Microsoft, rather than the online marketer, being assigned credit for the sale and awarded any commission or referral fee.

391.    But for Microsoft's unjust and improper use of the Microsoft Shopping extension, it would not have been credited and awarded commission on sales that emanated from Plaintiff's and Washington Subclass Members' respective affiliate marketing links.

392.    As a result of Microsoft's wrongful conduct as alleged in this Complaint, Microsoft has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Washington Subclass Members.

393.    Microsoft continues to benefit and profit from the operation of the Microsoft Shopping extension while Plaintiff and Washington Subclass Members continue to have their rightful commission payments diverted to Microsoft.

394.    Microsoft's unjust enrichment is traceable to, and resulted directly and proximately from the conduct alleged herein, including by using the Microsoft Shopping extension to wrongfully credit itself with referrals and commissions it did not rightfully earn.

395.    The benefit conferred upon, received, and enjoyed by Microsoft was not conferred officiously or gratuitously, and it would be inequitable and unjust for Microsoft to retain the

CONSOLIDATED CLASS ACTION COMPLAINT - 91
No. 2:25-cv-00088-RSM

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    benefit.

2       396.    Equity and good conscience militate against permitting Microsoft to retain the

3    profits and benefits from its wrongful conduct, which should be restored to Plaintiff and

4    Washington Subclass Members.

5                        X.      RELIEF REQUESTED

6       397.    Plaintiffs, on behalf of themselves and all others similarly situated, ask the Court

7    for the following relief:

8           A.      Certify this case as a class action, and appoint Plaintiffs as Class

9    Representatives and appoint Class Counsel;

10          B.      Enter judgment in favor of Plaintiffs and the Classes;

11          C.      Enter injunctive and declaratory relief as is necessary to protect the interests

12   of Plaintiffs and the Classes, including to prevent the Microsoft Shopping browser

13   extension from taking credit for sales it did not originate;

14          D.      Award all actual, general, special, incidental, statutory, treble, punitive,

15   liquidated, and consequential damages and restitution to which Plaintiffs and the Classes

16   are entitled;

17          E.      Award disgorgement of monies obtained through and as a result of the

18   wrongful conduct alleged herein;

19          F.      Award Plaintiffs and the Classes pre-judgment and post-judgment interest

20   as provided by law;

21          G.      Enter such other orders as may be necessary to restore Plaintiffs and the

22   Classes any money and property acquired by Microsoft through its wrongful conduct;

23          H.      Award Plaintiffs and the Classes reasonable litigation expenses and

24   attorneys' fees as permitted by law; and

25          I.      Award such other and further relief as the Court deems just and proper.

26

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

## XI.    JURY TRIAL DEMAND

2   398. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury

3 for all issues so triable as of right.

4

5 Dated May 2, 2025       By: *s/ Derek W. Loeser*
               Derek W. Loeser, WSBA #24274
6               KELLER ROHRBACK L.L.P.
               1201 Third Avenue, Suite 3400
7               Seattle, WA 98101-3268
               Telephone: (206) 623-1900
8               Facsimile: (206) 623-3384
               dloeser@kellerrohrback.com
9

10 Dated May 2, 2025      By: *s/ Jason T. Dennett*
               Jason T. Dennett, WSBA #30686
11              TOUSLEY BRAIN STEPHENS PLLC
               1200 Fifth Avenue, Suite 1700
12              Seattle, Washington 98101
               Telephone: (206) 682-5600
13              jdennett@tousley.com

14

15 Dated May 2, 2025      By: *s/ Gary M. Klinger*
               Gary M. Klinger (*pro hac vice*)
16              MILBERG COLEMAN BRYSON
               PHILLIPS GROSSMAN, PLLC
17              227 W. Monroe Street, Suite 2100
               Chicago, IL 60606
18              Telephone: (866) 252-0878
               gklinger@milberg.com
19

20 Dated May 2, 2025      By: *s/ Adam E. Polk*
               Adam E. Polk (*pro hac vice*)
21              GIRARD SHARP LLP
               601 California Street, Suite 1400
22              San Francisco, CA 94108
               Telephone: (415) 981-4800
23              apolk@girardsharp.com

24              ***Interim Class Counsel***

25

26

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384