The Honorable Ricardo S. Martinez

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

IN RE MICROSOFT BROWSER
EXTENSION LITIGATION

10

This Document Relates to:
ALL ACTIONS

11

12

13

14

15

16

17

No. 2:25-cv-00088-RSM

**MICROSOFT CORPORATION'S
MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT**

NOTE ON MOTION CALENDAR:

September 2, 2025

ORAL ARGUMENT REQUESTED

18

19

20

21

22

23

24

25

26

27

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

    I.       MICROSOFT SHOPPING ............................................................................... 2

    II.      THE AFFILIATE MARKETING INDUSTRY ............................................... 2

    III.    PLAINTIFFS' LAWSUITS .............................................................................. 3

LEGAL STANDARD .......................................................................................................... 4

ARGUMENT ...................................................................................................................... 4

    I.       PLAINTIFFS LACK ARTICLE III STANDING ............................................... 4

            A.      Plaintiffs Do Not Plausibly Allege an Injury in Fact ............................... 5

                 1.      Plaintiffs' Five Alleged "Scenarios" Fail to Establish Injury in Fact .............................................................................................. 6

                 2.      Plaintiffs' One "Actual Transaction" Fails to Establish Injury in Fact ......................................................................................... 7

                 3.      Plaintiffs' Statistical Model Fails to Establish Injury in Fact .......................................................................................................... 7

            B.      Plaintiffs Do Not Plead That Their Alleged Injuries Are Traceable to Microsoft Shopping. ............................................................................ 9

    II.      PLAINTIFFS' COMMON LAW CLAIMS FAIL ............................................. 10

            A.      Plaintiffs Fail to State a Claim for Tortious Interference. ...................... 10

            B.      Plaintiffs Fail to State a Claim for Unjust Enrichment. ......................... 15

    III.    PLAINTIFFS' STATE LAW STATUTORY CLAIMS FAIL BECAUSE PLAINTIFFS DO NOT ALLEGE UNFAIR OR DECEPTIVE ACTS. ........... 17

            A.      Plaintiffs Fail to State a Washington Consumer Protection Act Claim. ..................................................................................................... 17

            B.      Plaintiffs Fail to State a Claim Under the UCL. .................................... 19

    IV.    PLAINTIFFS' COMPUTER FRAUD AND ABUSE ACT CLAIM FAILS BECAUSE PLAINTIFFS DO NOT ALLEGE INJURY OR LOSS ................. 21

CONCLUSION ................................................................................................................. 23

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*7EDU Impact Acad. Inc. v. You*,
    760 F. Supp.3d 981 (N.D. Cal. 2024) ......................................................................................11

*Abshire v. Newsom*,
    2023 WL 3243999 (9th Cir. May 4, 2023) ...............................................................................10

*Abuelhawa v. Santa Clara Univ.*,
    529 F. Supp. 3d 1059 (N.D. Cal. 2021) ...............................................................................App. A

*Access the USA, LLC v. State*,
    2018 WL 1709674 (Wash. Ct. App. Apr. 9, 2018)................................................12, App. A

*Aerokool Aviation Corp. v. Dofflemeyer*,
    2021 WL 12311287 (S.D. Fla. Aug. 4. 2021)......................................................................App. A

*Akil v. Freedom Mortg. Corp*.,
    2025 WL 1094315 (W.D. Wash. Apr. 11, 2025)....................................................................17

*Alaska Wilderness League v. Jewell*,
    637 Fed. App'x 976 (9th Cir. 2015) .........................................................................................8

*Am. Med. & Life Ins. Co. v. Crosssummit Enters.*,
    2010 WL 1493136 (N.Y. Sup. Ct. Apr. 1, 2010)...............................................................App. A

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc*.,
    790 F. Supp. 2d 1024 (N.D. Cal. 2011) .................................................................................14

*In re Amazon Prime Video Litig*.,
    765 F. Supp. 3d 1165 (W.D. Wash. 2025)................................................................................4

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc*.,
    239 Cal. Rptr. 3d 577 (Ct. App. 2018) ...................................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................................4

*Austin v. Ettl*,
    286 P.3d 85 (Wash. Ct. App. 2012).............................................................................15, App. A

*Bassett v. ABM Parking Servs., Inc*.,
    883 F.3d 776 (9th Cir. 2018) ...........................................................................................5, 6, 7

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Beaver-Jackson v. Standard Tr. Co. of Wash.*,
  2008 WL 5100308 (W.D. Wash. Dec. 1, 2008) (Martinez, J.)................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................4

*Bort v. Parker*,
  42 P. 3d 980 (Wash. Ct. App. 2002)................................15

*Boycat v. Microsoft Corp.*,
  No. 2:25-cv-00088-RSM (W.D. Wash. filed Jan. 14, 2025) ................................7

*Cal. State Emps. Ass'n v. Bogart*,
  2015 WL 461646 (E.D. Cal. 2015)................................16

*Caliber Home Loans, Inc. v. CrossCountry Mortg., LLC*,
  2023 WL 2711546 (W.D. Wash. Mar. 30, 2023) ................................12

*In re: Cap. One Affiliate Mktg. Litig.*,
  2025 WL 1570973 (E.D. Va. 2025)................................8, 19, 20

*Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Enters. Inc.*,
  50 N.E.3d 955 (Ohio Ct. App. 2015)................................App. A

*Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co.*,
  973 P.2d 527 (Cal. 1999)................................20

*Cincinnati Arts Assoc. v. Jones*,
  777 N.E.2d 346, 353 (C.P. Ohio 2002)................................App. A

*Chem. Bank v. Wash. Pub. Power Supply Sys.*,
  102 Wash. 2d 874 (Wash. 1984)................................15

*Coast Surgery Ctr. v. United Healthcare Ins. Co.*,
  2024 WL 650174 (C.D. Cal. Jan. 5, 2024) ................................11

*Copeland v. Alamo Billing Co.*,
  2021 WL 2792354 (E.D. Tex. May 3, 2021)................................App. A

*Cornelius v. Fid. Nat. Title Co.*,
  2009 WL 596585 (W.D. Wash Mar. 9, 2009) ................................6

*Daley's Dump Truck Serv., Inc. v. Kiewit Pac. Co.*,
  759 F. Supp. 1498 (W.D. Wash. 1991)................................7, 8

*Day v. GEICO Cas. Co.*,
  580 F. Supp. 3d 830 (N.D. Cal. 2022)................................20

MICROSOFT'S MTD CONSOL. CLASS ACTION COMPL.
(2:25-cv-00088-RSM) - ii

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Diederich v. Providence Health & Servs.*,
    2011 WL 13195986 (W.D. Wash. May 5, 2011) *on reconsideration in part*,
    2011 WL 13195978 (W.D. Wash. June 30, 2011)............................................................11, 12

*Dougherty v. Pohlman*,
    16 Wash. App. 2d 1008 (2021) ...............................................................................App. A

*Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*,
    797 F.3d 1248 (11th Cir. 2015) ......................................................................................14

*eBay v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006).........................................................................................................19

*Erhart v. BofI Holding, Inc.*,
    612 F. Supp. 3d 1062 (S.D. Cal. 2020)...........................................................................23

*Essex Capital Group, Inc. v. Warnell*,
    2024 WL 4956731 (M.D. Fla. Dec. 3, 2024)...............................................................App. A

*Fruci & Assocs., PS v. A10 Cap. LLC*,
    510 F. Supp. 3d 962 (W.D. Wash. 2020).........................................................................10

*Greek Islands Cuisine, Inc. v. YourPeople, Inc.*,
    2024 WL 4257626 (E.D. Wash. Sept. 20, 2024) ...............................................................4

*Greenberg v. Amazon*,
    553 P.3d 626 (W.D. Wash. 2024)....................................................................................18

*Guard-Life Corp. v. Parker Hardware Mfg. Corp.*,
    50 N.Y.2d 183 (N.Y. Ct. App. 1980)..........................................................................App. A

*Hambrick v. Healthcare Partners Med. Grp., Inc.*,
    189 Cal. Rptr. 3d 31 (Ct. App. 2015) .............................................................................19

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F. 4th 1180 (9th Cir. 2022) ...................................................................................21, 23

*Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC*,
    135 P.3d 499 (Wash. App. 2006)................................................................................17, 19

*Ibarra v. Pharmagenics LLC*,
    660 F. Supp. 3d 914 (C.D. Cal. 2023) ........................................................................19, 20

*Image Online Design, Inc. v. Internet Corp. for Assigned Names & Numbers*,
    2013 WL 489899 (C.D. Cal. Feb. 7, 2013).....................................................................12

*Int'l Paper Co. v. Stuit*,
    2012 WL 1857143 (W.D. Wash. May 21, 2012)..............................................................11

MICROSOFT'S MTD CONSOL. CLASS ACTION COMPL.
(2:25-cv-00088-RSM) - iii

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Jay v. Mobley*,
    783 So. 2d 297 (Fla. Dist. Ct. App. 2001) ...................................................................14

*Jedson Eng'g, Inc. v. Spirit Const. Servs., Inc.*,
    720 F. Supp. 2d 904 (S.D. Ohio 2010) ...............................................................App. A

*Jungers v. Benton Rural Elec. Assoc.*,
    2008 WL 819029 (E.D. Wash. Mar. 25, 2008)...........................................................5

*Katz Lacabe v. Oracle Am., Inc.*,
    668 F. Supp. 3d 928 (N.D. Cal. 2023) ......................................................................20

*Lectrodryer v. SeoulBank*,
    77 Cal. App. 4th 723 (Cal. Ct. App. 2000) .........................................................App. A

*London v. Sears, Roebuck & Co.*,
    619 F. Supp. 2d 854 (N.D. Cal. 2009), *aff'd*, 458 F. App'x 649 (9th Cir. 2011)....................16

*Lozano v. AT&T Wireless Serv., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ...................................................................................20

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) .................................................................................21

*Mandarin Trading Ltd. v. Wildenstein*,
    944 N.E.2d 1104 (N.Y. 2011) ............................................................................App. A

*Markels v. AARP*,
    689 F. Supp. 3d 722 (N.D. Cal. 2023) ...............................................................App. A

*Martinez v. Newsom*,
    46 F.4th 965 (9th Cir. 2022) .....................................................................................5

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) ....................................................................22

*Microsoft Corp. v. My Choice Software, LLC*,
    2018 WL 9662626 (W.D. Wash. Sep. 28, 2018) ......................................................13

*Mitsuoka v. Fumoto Eng'g of Am., Inc.*,
    2015 WL 5012929 (Wash. Ct. App. Aug 24, 2015).................................................10

*Mr. 99 & Assocs., Inc. v. 8011*,
    2016 WL 7470065 (Wash. App. 2016).....................................................................16

*Name.Space, Inc. v. ICANN*,
    795 F.3d 1124 (9th Cir. 2015) ..........................................................................11, 13

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Nat'l City Bank, N.A. v. Prime Lending, Inc.*,
2010 WL 2854247 (E.D. Wash. July 19, 2010)..............................................................App. A

*NC Interactive, LLC v. Amber Studio S.A.*,
2024 WL 1832951 (W.D. Wash. Apr. 26, 2024)............................................................App. A

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
926 F.3d 528 (9th Cir. 2019) ........................................................................................5

*Newport Harbor Offs. & Marina, LLC v. Morris Cerullo World Evangelism*,
2016 WL 410977 (Cal. Ct. App. Feb. 3, 2016) ............................................................11

*Noah v. L. Daitch & Co.*,
192 N.Y.S.2d 380 (N.Y. Sup. Ct. 1959) .......................................................................14

*North State Autobahn, Inc. v. Progressive Ins. Group Co.*,
953 N.Y.S.2d 96 (N.Y. App. Div. 2012) .....................................................................App. A

*People's Nat'l Bank of Com. v. First Union Nat'l Bank of Fla.*,
667 So. 2d 876 (Fla. Dist. Ct. App. 1996) ...................................................................App. A

*Polskie Linie Lotnicze Lot S.A. v. Boeing Co.*,
2022 WL 4598486 (W.D. Wash. 2022) (Martinez, J.) .................................................12

*Prime Hydration LLC v. Garcia*,
2025 WL 963361 (N.D. Tex. Mar. 31, 2025) ...............................................................App. A

*Puget Sound Security Patrol, Inc. v. Bates*,
389 P.3d 709 (Wash. Ct. App. 2017) ...........................................................................App. A

*Register v. Pierce*,
530 So. 2d 990 (Fla. Dist. Ct. App. 1988) ...................................................................App. A

*Richardson Hosp. Auth. V. Duru*,
387 S.W.3d 109 (Tex. Ct. App. 2012) ..........................................................................App. A

*S. Cal. Elec. Firm v. S. Cal. Edison Co.*,
668 F. Supp.3d 1000 (C.D. Cal. 2023) .........................................................................App. A

*San Francisco Design Ctr. Assocs. v. Portman Cos.*,
41 Cal. App. 4th 29 (Cal. Ct. App. 1995) ....................................................................14

*Satanic Temple, Inc. v. Rokita*,
2023 WL 7016211 (S.D. Ind. Oct. 25, 2023) ...............................................................8

*Satanic Temple v. Labrador*,
716 F. Supp. 3d 989 (D. Idaho 2024) ...........................................................................8

MICROSOFT'S MTD CONSOL. CLASS ACTION COMPL.
(2:25-cv-00088-RSM) - v

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Shamrock Foods Co. v. Gast*,
    535 F. Supp. 2d 962 (D. Ariz. 2008) ........................................................21

*Sii Nippon Paper Indus. USA Co. v. Ga. Pac.*,
    LLC, 2023 WL 5747180 (W.D. Wash. 2023) ..........................................15

*Smith v. Meridian Techs., Inc.*,
    86 A.D.3d 557 (N.Y. App. Div. 2011) ......................................................13

*Song Fi Inc. v. Google, Inc.*,
    108 F. Supp. 3d 876 (N.D. Cal. 2015) .......................................................13

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)......................................................................................5

*State Farm Mutual Auto. Ins. Co. v. Peter J. Hanson, P.C.*,
    2017 WL 1304445 (W.D. Wash. Feb. 3, 2017) ...................................App. A

*Stelmachers v. Verifone Sys., Inc.*,
    2016 WL 6835084 (N.D. Cal. Nov. 21, 2016) .............................................8

*Stevenson Real Est. Servs., Inc. v. CB Richard Ellis Real Est. Servs., Inc.*,
    42 Cal. Rptr. 3d 235 (Ct. App. 2006) .......................................................20

*Storey v. Amazon.com Serv. LLC*,
    2025 WL 887373 (W.D. Wash. Mar. 21, 2025) .........................................19

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp.*,
    2018 WL 10689420 (N.D. Cal. July 9, 2018)......................................App. A

*SunPower Corp. v. SunEdison, Inc.*,
    129 F. Supp. 3d 918 (N.D. Cal. 2015) .......................................................21

*Syed v. Poulos*,
    2016 WL 3020066 (Ohio Ct. App. May 26, 2016)......................................10

*Sylabs, Inc. v. Rose*,
    2024 WL 4312719 (N.D. Cal. 2024) ..........................................................23

*Tamiami Trail Tours, Inc. v. Cotton*,
    463 So.2d 1126 (Fla. 1985)........................................................................12

*Travelers Cas. & Sur. Co. of Am. v. Decker*,
    756 F. Supp. 3d 1097 (W.D. Wash. 2024)..................................................10

*UMG Recordings, Inc. V. Global Eagle Ent., Inc.*,
    117 F. Supp. 3d. 1092 (C.D. Cal. 2015) .....................................................11

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*United Fed'n of Churches, LLC v. Johnson*,
    522 F. Supp. 3d 842 (W.D. Wash. 2021) (reversed on other grounds) ................................22

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) ........................................................................21, 22, 23

*Van Buren v. United States*,
    593 U.S. 374 (2021) ..............................................................................................21, 23

*W. & S. Life Ins. Co. v. JPMorgan Chase Bank, N.A.*,
    54 F. Supp.3d 888 (S.D. Ohio Oct. 16, 2014) .................................................App. A

*Watters v. Breja*,
    2024 WL 201356 (N.D. Cal. 2024) ................................................................................22

*Weisman v. S. Wine & Spirits of Am., Inc.*,
    297 So. 3d 646 (Fla. Dist. Ct. App. 2020) .......................................................14

*Welch v. See*,
    2023 WL 6322649 (Tex. Ct. App. Sep. 29, 2023) ........................................App. A

*Williams v. Sisolak*,
    2023 WL 8469159 (9th Cir. Dec. 7, 2023) ...........................................................9

**Statutes**

*Cal. Bus. & Prof. Code* § 17200 ......................................................................19

California Unfair Competition Law ("UCL") ...............................................19, 20

Computer Fraud and Abuse Act ("CFAA") ....................................15, 21, 22, 23

Washington Consumer Protection Act ("CPA") ............................................17

**Other Authorities**

66 Am. Jur. 2d Restitution & Implied Conts. § 16 (2025) ................................15

Article III of the Constitution ...............................................................1, 4, 20

Restatement (First) of Restitution § 110 (A.L.I. 1937) .....................................15

Restatement (Second) of Torts § 773 (1979) ..................................App. A

Restatement (Third) of Restitution & Unjust Enrichment § 1 (2011) .............15

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## INTRODUCTION

Plaintiffs compete with Microsoft for merchant commissions from online shopping. Unhappy with the results of that competition, Plaintiffs ask the Court to re-write the third-party rules, to which they agreed, that dictate attribution and payment of commissions. But Plaintiffs do not challenge the legitimacy of those rules or the process through which merchants adopt and implement those rules. Nor do Plaintiffs allege that Microsoft either set or violated those rules. Instead, in every instance alleged in the Amended Consolidated Class Action Complaint ("Amended Complaint" or "CAC"), Microsoft was the proper recipient of commissions under the attribution rules Plaintiffs admit should apply.

Plaintiffs promote products using affiliate links in hopes of earning commissions when consumers make on-line purchases on a merchant's website. Microsoft Shopping is a suite of features built into internet browsing that offers cashback and price comparisons and, in doing so, competes for commissions. Merchants dictate who gets commissions, and the prevailing rule they have adopted is "last-click attribution," which Plaintiffs admit gives commission credit to the source of the "last click" by a consumer before completing an online purchase.

The facts as alleged show that, under last-click attribution as Plaintiffs concede it should be applied, Microsoft Shopping was entitled to commission credit in each of the examples in the Amended Complaint. Plaintiffs' problem is therefore not with Microsoft Shopping; it is with the merchants' commission attribution rules. The Court should dismiss Plaintiffs' claims with prejudice for at least two reasons.

*First*, Plaintiffs lack Article III standing because they do not allege that Microsoft deprived them of a legally protected interest. In both their prepared-for-litigation examples and one "actual transaction," Plaintiffs admit that Microsoft Shopping was the source of the last click before purchase. CAC ¶¶ 110–16, 125–47, 148–55. Their made-for-litigation statistical model also fails to show injury because it is entirely speculative, premised on lawyer-generated assumptions, and unsupported by any factual allegations.

Davis Wright Tremaine LLP
Law Offices
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Second*, each of Plaintiffs' common law, consumer protection, and computer fraud claims requires pleading and proving wrongful conduct. The Amended Complaint pleads no wrongful conduct by Microsoft, and for this reason, among others, fails to state any claims on which relief can be granted.

## BACKGROUND

### I.    MICROSOFT SHOPPING

Microsoft Shopping is a suite of services that provides its users with access to cashback, discounts, and price comparisons for products or services. CAC ¶¶ 5–6, 88, 92. The feature is preloaded on certain Microsoft consumer products, including the Bing search engine and Edge browser. *Id.* ¶¶ 5, 88. For other browsers, users must download the extension. *Id.* ¶¶ 4–5. Even when Microsoft Shopping is pre-installed, users can disable it via browser settings. The feature is popular among consumers because it streamlines the process of finding discounts and saves them money when they make purchases. *Id.* ¶¶ 5–6, 89, 92. It also benefits online merchants who partner with Microsoft Shopping by driving sales that may not otherwise occur.

### II.    THE AFFILIATE MARKETING INDUSTRY

Plaintiffs' claims arise in the affiliate marketing industry. Affiliate marketing is a revenue sharing strategy where merchants provide individuals or companies—often referred to as "publishers"[1]—with commissions from sales that result from the publishers' promotion of merchants' products. CAC ¶¶ 64–65, 69–70, 75–76. Just as multiple salespeople may work in the same showroom—say, a car dealership—and compete to sell the same cars to the same customers, so too do multiple publishers compete to promote the same products from the same online merchants. *Id.* ¶ 83. Thus, a consumer may click on promotional links for the same product from any number of publishers before making a purchase—if any. *Id.* This scenario—multiple publishers contributing to a sale—necessitates clear merchant rules regarding which publisher is

---

[1] "Publisher" is used synonymously to include affiliates. Both Plaintiffs and Microsoft operate as publishers in the affiliate marketing industry.

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

credited with the commission for a sale when a consumer may have clicked on links from different publishers.

Merchants may use any number of attribution models to assign commission credit, including "last-click," "first-click," or others. *Id.* Plaintiffs allege most merchants use the "last-click" attribution model, which, as Plaintiffs explain, "attributes the sale to the affiliate [*i.e.*, publisher] who provided the final link clicked by a customer before making a purchase." *Id.* If a customer "clicks on an affiliate link on a blogger's website but later clicks a different affiliate link from another source before completing their purchase, the second affiliate—the one with the 'last click'—is the one who gets credit for the sale." *Id.* The affiliate marketing industry is competitive, and merchants' attribution rules apply equally to all publishers, whether they are Plaintiffs, Microsoft Shopping, or any of the many others who promote products or offer online shopping-related browser features or extensions to consumers. *See id.* ¶¶ 64–66.

Microsoft Shopping receives affiliate codes just like any other publisher. And just as a consumer must click on any other publisher's affiliate link for the publisher to get credit for a sale (if one results), so too a consumer must click on the Microsoft Shopping pop-up—"to receive a discount, search for coupons, or earn cash back," *id.* ¶ 100—for Microsoft Shopping to get credit for a sale (if one results). In other words, when Microsoft Shopping is the "last click" before a consumer completes a purchase, it receives attribution for that sale under the "last-click" model. *Id.* ¶¶ 83, 99. But—as with any other publisher—if a consumer clicks on another affiliate link after Microsoft Shopping (and before the purchase), then Microsoft Shopping does not receive attribution for that sale. *Id.* Likewise, if the consumer does not affirmatively choose to click on Microsoft Shopping before completing a sale, Microsoft Shopping receives no credit. *Id.*

## III.   PLAINTIFFS' LAWSUITS

Plaintiffs claim Microsoft Shopping received commissions to which Plaintiffs were entitled. But Plaintiffs have not alleged any unlawful conduct by Microsoft, or that Microsoft failed to comply with the merchants' rules dictating commission attribution. Nor have Plaintiffs alleged any transaction in which they were entitled to commissions they did not receive under these rules, or that

Microsoft Shopping received them instead.  Rather, Plaintiffs allege only that consumers often click on many publisher links when shopping for products and sometimes click on Plaintiffs' links and then on something else—whether it be Microsoft Shopping, a browser extension from a different publisher, or any other publisher's link.  In those instances, as Plaintiffs allege, Plaintiffs do not receive attribution or, therefore, a commission.  CAC ¶¶ 83, 100.  But that is how the rules work for all publishers, including Plaintiffs and Microsoft—and Microsoft did not write those rules and does not enforce them, the merchants do.

Plaintiffs and Microsoft Shopping agreed to these attribution rules—set by merchants—and compete in the affiliate marketing industry accordingly.  Merchants adopted the rules through the ordinary course of the competitive process and Plaintiffs do not allege otherwise.  Plaintiffs' speculative "injuries" merely amount to frustration that, under rules adopted by merchants and applied equally to Plaintiffs and Microsoft alike, a click on their links that is not the last click before purchase does not result in a commission to them—just as it does not for Microsoft.

## LEGAL STANDARD

"Under Fed. R. Civ. P. 12(b)(6), the Court must dismiss a complaint if a plaintiff can prove no set of facts in support of her claim which would entitle her to relief."  *Beaver-Jackson v. Standard Tr. Co. of Wash.*, 2008 WL 5100308, *2 (W.D. Wash. Dec. 1, 2008) (Martinez, J.).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient to survive dismissal.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Dismissal is also appropriate where the complaint lacks a cognizable legal theory or sufficient facts supporting a cognizable legal theory.  *In re Amazon Prime Video Litig.*, 765 F. Supp. 3d 1165, 1168 (W.D. Wash. 2025).

## ARGUMENT

## I.    PLAINTIFFS LACK ARTICLE III STANDING

"Article III of the Constitution limits federal courts to the adjudication of actual, ongoing cases or controversies between litigants."  *Greek Islands Cuisine, Inc. v. YourPeople, Inc.*, 2024 WL 4257626, *2 (E.D. Wash. Sept. 20, 2024) (citation omitted). It follows that "[i]f none of the named

1    plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the

2    defendants, none may seek relief on behalf of himself or any other member of the class." *NEI*

3    *Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc*., 926 F.3d 528, 532 (9th Cir. 2019)

4    (citation omitted). To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that

5    is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by

6    a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

7         Here, Plaintiffs fail to plead facts showing injury in fact or traceability.

8         **A.    Plaintiffs Do Not Plausibly Allege an Injury in Fact**

9         An injury in fact is "'an invasion of a legally protected interest' that is 'concrete and

10   particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Bassett v. ABM Parking*

11   *Servs., Inc*., 883 F.3d 776, 779 (9th Cir. 2018) (citation omitted). Named plaintiffs "must allege

12   and show that they personally have been injured, not that injury has been suffered by other,

13   unidentified members of the class." *Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022).

14   Where an alleged loss "may be attributable to many different reasons" and the "court would need

15   to engage in a speculative and complicated analysis" to determine what that reason is, there is no

16   standing. *Jungers v. Benton Rural Elec. Assoc*., 2008 WL 819029, *4 (E.D. Wash. Mar. 25, 2008).

17   Here, Plaintiffs' fundamental theory of harm cannot square with the attribution model they allege,

18   which specifically "attributes the sale to the affiliate who provided the *final link clicked* by a

19   customer before making the purchase." CAC ¶ 83 (emphasis added). Plaintiffs claim they "would

20   have earned more in commissions" but for Microsoft Shopping. *Id.* ¶¶ 24, 33, 40, 47, 55, 62.

21   Specifically, they contend they are the "rightful referrer" of certain online sales and entitled to the

22   associated commissions when clicking on their affiliate link leads to a sale. *Id.* ¶ 102. But

23   Plaintiffs do not allege that Microsoft Shopping was ever credited with a commission when it was

24   *not* the last link clicked by a customer before a purchase.

25        Plaintiffs attempt to allege injury-in-fact through three strategies: (1) identifying five

26   hypothetical, made-for-litigation scenarios, each illustrating that Microsoft Shopping is the last

27   click, consistent with last-click attribution; (2) identifying one actual transaction, similarly

showing that Microsoft Shopping was the last click; and (3) citing a statistical model premised on lawyer-generated assumptions that Microsoft "took" a commission from another publisher in some percentage of sales. None of Plaintiffs' allegations plausibly pleads a "concrete injury" whereby Microsoft received a commission to which a Plaintiff was entitled under Plaintiffs' own description of last-click attribution. *See id.* ¶ 83. *See also Bassett*, 883 F.3d at 779. As a result, Plaintiffs fail to establish a "legally protected interest" and lack standing to assert these claims. *See Cornelius v. Fid. Nat. Title Co.*, 2009 WL 596585, *5 (W.D. Wash Mar. 9, 2009).

         **1.**     **Plaintiffs' Five Alleged "Scenarios" Fail to Establish Injury in Fact.**

Plaintiffs allege "several scenarios" in which they claim Microsoft "works to displace the rightful referrer of an online sale." CAC ¶ 102. But none was an actual consumer transaction; rather, each was created for purposes of this litigation. And in each hypothetical, Plaintiffs concede that Microsoft Shopping was the last click before the hypothetical consumer completed the hypothetical sale:

1.    **Plaintiff Justin Tech Tips.**  The alleged harm only occurs "[i]f the buyer clicks 'Activate'" for Microsoft Shopping during checkout. *Id.* ¶ 116.

2.    **Plaintiff Colbow.**  The alleged harm only occurs "[i]f the user activates the Microsoft Shopping browser extension during checkout by clicking 'OK' to participate in the cash back rewards program." *Id.* ¶ 120.

3.    **Plaintiff Perez.**  The alleged harm only occurs "[i]f the user clicks 'OK' to activate the Microsoft Shopping browser extension during checkout." *Id.* ¶ 128.

4.    **Plaintiff Hiser.**  The alleged harm only occurs "if the online shopper activates the Microsoft Shopping browser extension by clicking 'OK.'" *Id.* ¶ 134.

5.    **Plaintiff Madison Avenue Spy.**  The alleged harm only occurs "[i]f the online shopper activates the Microsoft Shopping browser extension by clicking 'OK.'" *Id.* ¶ 139.

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Because even under Plaintiffs' hypothetical examples Microsoft Shopping would have been entitled to the purchase attribution under last-click attribution, Plaintiffs' "scenarios" fail to establish a concrete injury resulting from any conduct by Microsoft. *Bassett*, 883 F.3d at 779.

 2.     **Plaintiffs' One "Actual Transaction" Fails to Establish Injury in Fact.**

The only actual transaction allegedly occurred on April 24, 2025, more than four months *after* the original Complaint in this action. *See* CAC ¶ 121; *Boycat v. Microsoft Corp.*, No. 2:25-cv-00088-RSM (W.D. Wash. filed Jan. 14, 2025). But the transaction fails to establish injury in fact because, like the hypothetical "scenarios" above, Plaintiffs still allege Microsoft Shopping was the last click, such that giving it a commission is consistent with the last-click attribution that Plaintiffs concede governs their merchant relationships.

Further illustrating this point, Plaintiffs allege that in one transaction "Mr. Colbow did receive a commission for a purchase made from one of his affiliate links where the Microsoft Shopping extension had not been activated." CAC ¶ 121. This comes as no surprise, as there, Mr. Colbow was the last click before the sale and so he was credited with the sale. *Id.* This is exactly how last-click attribution works. *Id.* ¶ 83. Plaintiffs then allege in a "subsequent purchase," Microsoft Shopping Cashback was "activated" before the purchase. *Id.* ¶¶ 122-23. But by Plaintiffs' own allegation under this scenario, Microsoft was the last click before the sale was completed and so was rightfully entitled to receive credit. Because even Plaintiffs' one "actual transaction" is consistent with last-click attribution, they fail to establish a concrete injury. *See Bassett*, 883 F.3d at 779. Plaintiffs do not allege "anything more than a 'generalized grievance'" about attribution rules in the affiliate marketing industry. *Daley's Dump Truck Serv., Inc. v. Kiewit Pac. Co.*, 759 F. Supp. 1498, 1499, 1502 (W.D. Wash. 1991).

 3.     **Plaintiffs' Statistical Model Fails to Establish Injury in Fact.**

In a last-ditch attempt to allege a concrete injury, Plaintiffs resort to statistical modeling using a Monte Carlo simulation. CAC ¶ 158. These models generate speculative probabilities for when Plaintiffs purportedly lost commissions because their tracking tag was "swap[ped]" with another publisher's. *Id.* ¶ 163. This gambit is flawed for two reasons. *First*, this model assumes some

transactions are wrongful. But none of Plaintiffs' examples shows that Microsoft Shopping was ever credited with a transaction when it was not the last click. *Second*, even if they could substantiate this assumption, Plaintiffs' models cannot plausibly allege concrete injury.

Plaintiffs' model is premised on a lawyer-generated assumption that Microsoft engaged in wrongful conduct in 20% of transactions in which an online shopper used Microsoft Edge. The model then purports to estimate the likelihood that a Plaintiff would have been injured in at least some of those transactions. *Id.* ¶ 163. But Plaintiffs allege no facts supporting an assumption that Microsoft engaged in a wrongful act in even a single transaction, let alone the extreme assumption it did so in 20% of transactions. Standing does not lie where an injury requires "a litany of speculative events [to] come about." *Stelmachers v. Verifone Sys., Inc.*, 2016 WL 6835084, *4 (N.D. Cal. Nov. 21, 2016). Plaintiffs do not and cannot establish injury in fact based on a speculative statistical model.

Moreover, even if Plaintiffs had alleged a single transaction in which Microsoft "took" a commission (they have not), "statistical probabilities" alone—estimating how many commissions "would be taken by Microsoft" in hypothetical transactions, *id.* ¶¶ 165, 171—do not establish an injury in fact suffered by Plaintiffs as a result of conduct by Microsoft. *Satanic Temple, Inc. v. Rokita*, 2023 WL 7016211, *6 (S.D. Ind. Oct. 25, 2023); *Alaska Wilderness League v. Jewell*, 637 Fed. App'x 976, 980 (9th Cir. 2015). Plaintiffs concede that, at most, they can "estimate[]" an injury. *Id.* ¶¶ 157–60.[2] But speculation based on "statistical analysis and probabilities will not suffice" to establish that any one of the actual Plaintiffs before the Court suffered injury in fact as a result of any conduct by Microsoft. *Satanic Temple v. Labrador*, 716 F. Supp. 3d 989, 998 (D. Idaho 2024). "It is insufficient for purposes of threshold standing analysis to speculate that one of the named plaintiffs would have likely received at least one [commission]…, given the laws of probability." *Daley's Dump Truck Serv.*, 759 F. Supp. at 1502 (emphasis added).

---

[2] This case is readily distinguishable from *In re: Cap. One Affiliate Mktg. Litig.*, 2025 WL 1570973, *9 (E.D. Va. 2025), where the court found plaintiffs plausibly alleged standing through their use of expert test purchases. Unlike here, the statistical analysis in *Capital One* involved an expert's *actual purchases on merchants' websites*, not hypothetical simulations as Plaintiffs alleged here.

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**B.    Plaintiffs Do Not Plead That Their Alleged Injuries Are Traceable to Microsoft Shopping.**

Plaintiffs further fail to allege that their speculative injury is traceable to Microsoft. Traceability "require[s] plaintiffs to 'establish a line of causation' between defendants' action and their alleged harm that is more than 'attenuated.' ... [I]n cases where a chain of causation 'involves numerous third parties' whose 'independent decisions' collectively have a 'significant effect' on plaintiffs' injuries, ... the causal chain [is] too weak to support standing at the pleading stage." *Williams v. Sisolak*, 2023 WL 8469159, *1 (9th Cir. Dec. 7, 2023) (quotation omitted).

Plaintiffs claim they were owed more commissions in a competitive online marketplace. But just because a consumer clicks on one of Plaintiffs' affiliate links does not mean they will purchase a product or that the sale is attributable to Plaintiffs under the terms of the last-click rules if they do.  CAC ¶¶ 1, 83.

Plaintiffs admit there are various browser extensions in the online marketplace that consumers may choose to click.  *Id.* ¶¶ 4–5.  Like Microsoft Shopping, many extensions provide concrete value to consumers in the form of coupons, cash-back, and lowest-price guarantees, offering consumers peace of mind as they decide whether to make a purchase.  *Id.* ¶¶ 4–7.  As such, the extension may sometimes be the *only* reason consumers complete a purchase, whereas consumers may click on one of Plaintiffs' affiliate links merely to view a product on a merchant site without intending to purchase it (*e.g.*, price-checking).  Beyond Microsoft Shopping and the various available browser extensions, other factors bear on why online promoters do not always receive commissions if consumers click their links, including where consumers click on another publisher's affiliate link before completing a purchase, or where too much time passes before the consumer makes a purchase.  *Id.* ¶¶ 76, 83.

Plaintiffs' Amended Complaint attempts to reverse-engineer its way into its goal, that of the supposed harm.  Working backwards from their decreased earnings, Plaintiffs' reason that consumers *always* buy specific products after clicking Plaintiffs' affiliate links, that Microsoft Shopping specifically—out of all other market actors—intervened without a customer's affirmative click, and that the benefits available using Microsoft Shopping were not responsible

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

for persuading the consumer to make the purchase. Indeed, numerous browser extensions—all competing in the same marketplace—have been subject to similarly speculative allegations (some by overlapping plaintiffs) that they "stole" commissions from publishers such as Plaintiffs. That fact alone belies that any alleged injury is traceable to Microsoft Shopping. Where the court is required to "infer" that an alleged injury is "fairly traceable to Defendants' conduct instead of other causes," there is no standing. *Abshire v. Newsom*, 2023 WL 3243999, \*2 (9th Cir. May 4, 2023). *See also Fruci & Assocs., PS v. A10 Cap. LLC*, 510 F. Supp. 3d 962, 968 (W.D. Wash. 2020) (failing to establish which lender "caused Plaintiff's alleged injuries.").

For these reasons, Plaintiffs cannot demonstrate standing, requiring dismissal.

## II.    PLAINTIFFS' COMMON LAW CLAIMS FAIL

Plaintiffs fail to allege facts establishing essential elements of their tortious interference and unjust enrichment claims, and Plaintiffs' common law claims therefore cannot stand.

### A.    Plaintiffs Fail to State a Claim for Tortious Interference.[3]

Plaintiffs claim that Microsoft tortiously interfered with their current and prospective[4] "contractual relationships with eCommerce merchants." CAC ¶¶ 214, 272, 298, 305, 327, 344. But they cannot identify what specific contract—prospective or otherwise—Microsoft interfered with—much less through any improper conduct.

To state this claim, Plaintiffs must allege: (1) The existence of a valid contractual relationship or business expectancy; (2) defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) defendants interfered for an improper purpose or used improper means; and (5) resultant damage. *Travelers Cas. & Sur. Co. of Am. v. Decker*, 756 F. Supp. 3d 1097, 1104 (W.D. Wash. 2024). *See also Mitsuoka v. Fumoto Eng'g of Am., Inc.*, 2015 WL 5012929, \*6 (Wash. Ct. App. Aug 24, 2015) (failing to state a claim). Plaintiff must "identify a particular

---

[3] This section analyzes Counts III-IV, VIII-IX, XI-XIV, XVI, and XVIII together given the overlapping elements across the state law claims. *See* Appendix A.

[4] There is no separate Ohio cause of action for intentional interference with prospective economic advantage. *Syed v. Poulos*, 2016 WL 3020066, \*3 (Ohio Ct. App. May 26, 2016). The Court should dismiss Count XIV.

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

relationship." *7EDU Impact Acad. Inc. v. You*, 760 F. Supp.3d 981, 1001 (N.D. Cal. 2024) (dismissing tortious interference).

*First*, Plaintiffs fail to plead facts identifying specific, valid contracts, as required. "Without allegations of a valid contractual relationship, [Plaintiffs] cannot state a claim for tortious interference. *Int'l Paper Co. v. Stuit*, 2012 WL 1857143, *9 (W.D. Wash. May 21, 2012). As for their business expectancy claims, Plaintiffs fail to plead "the relationship *will* produce the desired benefit;" instead, they plead merely "the more speculative expectation that a potentially beneficial relationship will arise." *Newport Harbor Offs. & Marina, LLC v. Morris Cerullo World Evangelism*, 2016 WL 410977, *12 (Cal. Ct. App. Feb. 3, 2016) (upholding sustaining of demurrer) (citation omitted) (emphasis added). Without this, Plaintiffs cannot allege a "specific resultant disruption to contractual or economic relationships." *Name.Space, Inc. v. ICANN*, 795 F.3d 1124, 1134 (9th Cir. 2015).

Plaintiffs offer scant detail regarding the nature, terms, or parties involved in the alleged contracts or business expectancies underlying their claims. Instead, they include vague references to "business relationships," CAC ¶ 266, and "contracts with eCommerce merchants." *Id.* ¶ 216. But they "must identify the third party or parties with whom they contracted, and the nature and extent of their relationship with that party or parties." *UMG Recordings, Inc. V. Global Eagle Ent., Inc*., 117 F. Supp. 3d. 1092, 1115 (C.D. Cal. 2015). *See also Coast Surgery Ctr. v. United Healthcare Ins. Co*., 2024 WL 650174, *7 (C.D. Cal. Jan. 5, 2024) (dismissing for not sufficiently identifying third party contracts). The only reference to any arrangement between the Plaintiffs and a merchant, outside of hypotheticals, is to "individuals who participate in Walmart's Affiliate Link program." CAC ¶ 76. This single reference fails to identify which specific terms were interfered with and why they would have provided Plaintiffs with a contractual right or expectancy to a commission. Instead, Plaintiffs repeatedly refer only to a "hope of a future [commission, which] is not a valid prospect or business expectancy—it is mere speculation, and speculation does not equate to a valid contract or expectancy." *Diederich v. Providence Health & Servs*., 2011 WL

13195986, *2 (W.D. Wash. May 5, 2011), on reconsideration in part, 2011 WL 13195978 (W.D. Wash. June 30, 2011).

*Second*, Plaintiffs must plead specific allegations of the defendant's knowledge of the contract, including some knowledge of the terms and conditions of the allegedly interfered-with contract. *Image Online Design, Inc. v. Internet Corp. for Assigned Names & Numbers*, 2013 WL 489899, *9 (C.D. Cal. Feb. 7, 2013). They do not. Plaintiffs allege only that "Microsoft knew or reasonably should have known of the economic relationships between eCommerce merchants on the one hand and Plaintiff ... on the other." CAC ¶ 215. But a defendant's general awareness that the plaintiff did business with third parties is not enough. *Image Online Design, Inc.*, 2013 WL 489899, *9. *See also, e.g., Polskie Linie Lotnicze Lot S.A. v. Boeing Co.*, 2022 WL 4598486, *8 (W.D. Wash. 2022) (Martinez, J.).

Plaintiffs allege no facts explaining how Microsoft, a multinational company, would have any way of reasonably knowing about the detailed contracting practices of certain content creators and unnamed third-party merchants. Indeed, under Plaintiffs' description of the last-click model, where affiliate networks enforce their own attribution system, CAC ¶ 83, Microsoft would have no reason to investigate what relationships may or may not exist with any Plaintiff.

Attempting to cure this defect, Plaintiffs allege Microsoft has "unique access to the cookies and other information associated with online transactions made to the Edge browser." *Id.* ¶ 156. But operating a web browser does not give Microsoft visibility into **contracts** to which it is not a party. Those are solely known by Plaintiffs and merchants. *Caliber Home Loans, Inc. v. CrossCountry Mortg., LLC*, 2023 WL 2711546, *7 (W.D. Wash. Mar. 30, 2023). Microsoft cannot intentionally interfere with contracts or business expectancies it does not know about, so these claims must fail.

*Third*, Plaintiffs must allege wrongful conduct by Microsoft.[5] *Access the USA, LLC v. State*, 2018 WL 1709674, *10 (Wash. Ct. App. Apr. 9, 2018). They don't. Plaintiffs cannot make

---

[5] In Florida, a plaintiff must further allege that the defendant's action was intentional "and unjustified" interference. *Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985). This defeats Counts IX and XIII because Plaintiffs have not done so. Similarly, in New York, "[a]s a general rule, such wrongful conduct must amount to a

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

out a case for the requisite wrongfulness element of their intentional interference claim.  Courts have defined "wrongful conduct" as: "(1) conduct that is independently tortious or a restraint of trade; (2) conduct violating a statute, regulation, a recognized rule of common law, or an established standard of a trade or profession; or (3) conduct that is illegal, unfair, or immoral according to common understandings of society." *Microsoft Corp. v. My Choice Software, LLC*, 2018 WL 9662626, *6 (W.D. Wash. Sep. 28, 2018).

As discussed *supra* Section I.A, Microsoft did nothing wrong—each  of the alleged examples, CAC ¶¶ 116, 120, 128, 134, 138, is consistent with Plaintiffs' *own description* of the agreed-upon last-click attribution model designed by merchants (not Microsoft) to "address the scenario where a user has clicked on multiple affiliate links before making a purchase," and award the commission to the last-clicked affiliate.  *Id.* ¶ 83.  In each of Plaintiffs' examples, a consumer must affirmatively activate Microsoft Shopping and complete a purchase for Microsoft to receive a commission, making Microsoft the rightful commission recipient if it is the last click in that consumer's purchase journey.  *Name.Space, Inc.*, 795 F.3d at 1134; *Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 887 (N.D. Cal. 2015).

*Microsoft v. My Choice Software* is instructive. My Choice Software ("MCS") brought a counterclaim for intentional interference alleging that Microsoft wrongfully terminated MCS' membership "without cause."  Critically, the conduct at issue was permissible by Microsoft under the contract, and at no point did MCS allege that Microsoft was engaged in anything impermissible.  2018 WL 9662626, *6.  The Court explained that MCS "fails to allege how this conduct, which was specifically provided for in the Agreement and which Microsoft gave MCS thirty days to contest, was 'wrongful.'"  *Id.*  The Court found that MCS' allegations were "little more than conclusory assertions and formulaic recitals of the elements" and dismissed the claim. *Id.*  So too here.

---

crime or an independent tort, and may consist of 'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions.'" *Smith v. Meridian Techs., Inc.*, 86 A.D.3d 557, 560 (N.Y. App. Div. 2011).  Because Plaintiffs failed to allege an independent wrongful act, Counts XI and XII should be dismissed.

*Fourth*, Plaintiffs have failed to allege non-speculative damages. Courts dismiss tortious interference claims where a plaintiff fails to allege any particular lost contract or failed negotiation. *See Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1032 (N.D. Cal. 2011). Here, the only harm alleged is contained in a hypothetical "Monte Carlo simulation," which is meant to simulate "the probability of Microsoft Shopping taking an affiliate commission on various numbers of online transactions." CAC ¶ 158. This speculation is based on the extreme "assumption of a 20% probability that a cookie swap occurs when an online shopper is using Microsoft Edge" and that the hypothetical cookie swap was improper. *Id.* ¶ 163. Plaintiffs offer no basis for this high "assumption," nor do they plausibly allege that but for Microsoft Shopping, they would have earned a commission under the merchant's attribution model. *Id.* ¶¶ 83, 166–171.

*Finally*, Plaintiffs' tortious interference claims fail in states that recognize the competition privilege, including California, New York, and Florida. *See San Francisco Design Ctr. Assocs. v. Portman Cos.*, 41 Cal. App. 4th 29, 42-43 (Cal. Ct. App. 1995); *Noah v. L. Daitch & Co.*, 192 N.Y.S.2d 380, 386 (N.Y. Sup. Ct. 1959); *Jay v. Mobley*, 783 So. 2d 297, 299 (Fla. Dist. Ct. App. 2001). The competition privilege is a recognized defense to a tortious interference claim, which is "generally applied where two companies compete over a contract or business." *Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 650 (Fla. Dist. Ct. App. 2020). *See Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1280 (11th Cir. 2015). "To defeat the privilege plaintiff must prove defendants committed an unlawful or illegitimate act which is independently actionable." *San Francisco Design Ctr.*, 41 Cal. App. 4th at 33. Microsoft has the same legally protected interest as Plaintiffs to compete for last-click commissions. Any alleged interference—even if it did exist—falls within the purview of the competition privilege whereby both Plaintiffs and Microsoft are free to compete for commissions under existing attribution rules.

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiffs do not plead the essential elements of their tortious interference claims and the Court should dismiss Counts III-IV, VIII-IX, XI-XIV, XVI, and XVIII.[6]

### B.    Plaintiffs Fail to State a Claim for Unjust Enrichment.[7]

Plaintiffs' Amended Complaint fails to allege facts establishing essential elements of their claims for unjust enrichment.  To state an unjust enrichment claim, Plaintiffs must plausibly allege: "(1) a plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge or appreciation of the benefit, and (3) the defendant's accepting or retaining the benefit without the payment of its value is inequitable under the circumstances." *Austin v. Ettl*, 286 P.3d 85, 92 (Wash. Ct. App. 2012)).  *Sii Nippon Paper Indus. USA Co. v. Ga. Pac*., LLC, 2023 WL 5747180, *6 (W.D. Wash. 2023).

When asserting such a claim, "[e]enrichment alone will not trigger the doctrine." *Bort v. Parker*, 42 P. 3d 980, 991 (Wash. Ct. App. 2002).  *See also* Restatement (Third) of Restitution & Unjust Enrichment § 1 (2011); *Chem. Bank v. Wash. Pub. Power Supply Sys*., 102 Wash. 2d 874, 911 (Wash. 1984).  It is not enough for Plaintiffs to allege that Microsoft received a benefit; the law requires that the benefit *came at the expense of the Plaintiffs*.  *See* 66 Am. Jur. 2d Restitution & Implied Conts. § 16 (2025); Restatement (First) of Restitution § 110 (A.L.I. 1937).

Plaintiffs conveyed no benefit to Microsoft.  Where Microsoft is the publisher who provided the last click in a consumer's purchase, Microsoft is paid by online merchants, not by Plaintiffs.  *See* CAC ¶¶ 22, 31, 38, 45, 53, 60.  And, like Plaintiffs, Microsoft is paid nothing when a consumer does not complete a purchase, or a subsequent publisher receives last-click attribution.  *Id.* ¶ 83.  Even assuming Microsoft received improper commissions, the only entity entitled to recover would be the affiliate networks, because there is no privity between Microsoft and content creators like Plaintiffs.

---

[6] The *Capital One* court denied a motion to dismiss for a similar claim.  However, *Capital One* is readily distinguishable because there, plaintiffs' tortious interference claims survived because their CFAA and unjust enrichment claims provided the necessary wrongful act.  2025 WL 1570973, *10.  Here, Plaintiffs' CFAA claim fails and their unjust enrichment claim does not allege a wrongful act.  And the *Capital One* plaintiffs alleged that Capital One replaced the affiliate link to get credit for a sale *without* a user affirmatively clicking to activate the extension. *Id.*, *1.  In contrast, here, Plaintiffs allege Microsoft gets credit for a sale only "[w]hen a user of the Microsoft Shopping browser extension activates the extension" to receive a benefit. CAC ¶ 96.

[7] This section addresses Counts V, VII, X, XV, XVII, and XIX, which are analyzed together given the overlapping elements across the state law claims.  *See* Appendix A.

MICROSOFT'S MTD CONSOL. CLASS ACTION COMPL.
(2:25-cv-00088-RSM) - 15

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

And, as discussed *supra* Section II.A, Plaintiffs fail to allege that Microsoft had any knowledge of contracts between Plaintiffs and online merchants and fail to even allege what specific contracts or provisions Microsoft allegedly should have known about.

Nor do Plaintiffs allege facts suggesting it is inequitable for Microsoft to keep any commissions. Plaintiffs allege they were "entitled" to commissions for referring consumers to products and services sold by merchants.  CAC ¶ 10.  But "[c]ommission-based wages are not earned until all conditions precedent for receiving the commission are satisfied." *London v. Sears, Roebuck & Co.*, 619 F. Supp. 2d 854, 863 (N.D. Cal. 2009), *aff'd*, 458 F. App'x 649 (9th Cir. 2011). *See also Cal. State Emps. Ass'n v. Bogart*, 2015 WL 461646, *3 (E.D. Cal. 2015).  Here, those conditions are set by the last-click attribution model, which dictates who, if anyone, gets credit for the sale and applicable commissions, *i.e.*, the publisher of the last-clicked affiliate/promotion link. In this way, tracking tags alone cannot symbolize ownership.  *Id.*

*Mr. 99 & Assocs., Inc. v. 8011* demonstrates these principles.  There, the court recognized that an individual does not have a property interest in a commission until all preconditions are met. 2016 WL 7470065, *9-10 (Wash. App. 2016).  Plaintiff Rood entered a brokerage contract, which contained provisions entitling Rood to a commission *if* he met certain conditions—which he did not.  *Id.*, *1–2.  While playing a role in the sale, Rood *did not* "satisfy the requisite conditions affording him a commission payment." *Id.*, *2.  The court found that "because Rood is not entitled to a commission payment," his common law claims ***all failed*.  *Id.* *9.  He was "not entitled to recover on either his equitable claim of unjust enrichment or his tort claims of...conversion, misappropriation, and tortious interference with a business expectancy." *Id.* (emphasis added).  So too here.  Even if "at one point" in the consumer's journey Plaintiffs' tracking codes reflected a possibility of benefit, there is no entitlement to the commission until, by the merchant's rules, Plaintiffs were the consumer's last click.  *Id.* at *10.

Plaintiffs concede that sales are attributed to the affiliate who provided the final link clicked by a customer before making a purchase, which is precisely how Microsoft Shopping operates.

CAC ¶ 83.  As a result, they fail to allege Microsoft was not entitled to the commissions it received under the rules—there is nothing inequitable about keeping such payments.  *Id.*

As such, Plaintiffs fail to plead the essential elements of their unjust enrichment claims, and the Court should dismiss Counts V, VII, X, XV, XVII, and XIX.[8]

## III.   PLAINTIFFS' STATE LAW STATUTORY CLAIMS FAIL BECAUSE PLAINTIFFS DO NOT ALLEGE UNFAIR OR DECEPTIVE ACTS.

Plaintiffs' state consumer protection and antitrust claims fail because Plaintiffs do not allege an unfair or deceptive act by Microsoft toward them, let alone one that caused them injury. As a result, the Court should dismiss these claims too, with prejudice.

### A.   Plaintiffs Fail to State a Washington Consumer Protection Act Claim.

Plaintiffs fail to state a claim under the Washington Consumer Protection Act ("CPA").  A CPA claim requires "(1) an unfair or deceptive act or practice; (2) that occurs in trade or commerce; (3) impacts the public interest; (4) which causes injury to the plaintiff in his or her business or property; and (5) the injury is causally linked to the unfair or deceptive act."  *Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC*, 135 P.3d 499, 507 (Wash. App. 2006).  But Plaintiffs allege no wrongful act—let alone an "unfair or deceptive act"—by Microsoft.

This District has recently clarified that "a plaintiff may satisfy the first element of a private CPA claim—an unfair or deceptive act—in a number of ways."  *Akil v. Freedom Mortg. Corp.*, 2025 WL 1094315, *10 (W.D. Wash. Apr. 11, 2025) (citations omitted). Specifically:

> A plaintiff may allege that an act is in violation of the public interest. Or a plaintiff may claim that an act is unethical, oppressive, or unscrupulous.  A plaintiff may also allege that the acts cause or are likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

---

[8] The *Capital One* court declined to dismiss as to unjust enrichment because plaintiffs pled defendants violated last-click attribution rules by "swap[ping] Plaintiffs' tracking codes for its own codes," "even where a consumer does not engage with the Extension."  2025 WL 1570973, *1, *8.  In contrast, here, Plaintiffs allege that Microsoft gets credit for a sale only "[w]hen a user of the Microsoft Shopping browser extension activates the extension" to receive a benefit, *without* violating last-click attribution rules. CAC ¶ 96.

MICROSOFT'S MTD CONSOL. CLASS ACTION COMPL.
(2:25-cv-00088-RSM) - 17

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Id.* (cleaned up).  Even so, as discussed below, Plaintiffs cannot demonstrate any unfair or deceptive act by Microsoft toward them.

Plaintiffs do not plead any facts suggesting conduct by Microsoft that qualifies as immoral, unethical, oppressive, unscrupulous, or in violation of the public interest.  *Id.* *10.  Plaintiffs conclude that Microsoft's conduct "offends public policy" for violating "norms in the affiliate marketing industry" through "[d]esigning, maintaining, and operating" the browser to misappropriate commissions and referral fees fails by its own terms because, according to Plaintiffs, industry norms prohibit claiming attribution when "the user has not actually clicked."  CAC ¶ 84, 193-94.  But the only facts actually alleged directly contradict this assertion: "Microsoft has designed its browser extension in a manner that requires users to actively engage with the browser extension."  *Id.* ¶ 100.  And, as discussed *supra* Section II.B, if Plaintiffs did not complete the conditions for receiving a commission, there is no commission to be "misappropriated."  Plaintiffs thus fail to plead any violation of industry norms, let alone anything immoral or unethical—because as their own allegations show, Microsoft abides by the same rules as other affiliates in the market.

*Further*, Plaintiffs have failed to allege acts likely to cause substantial injury that are not reasonably avoidable or outweighed by countervailing benefits.  Being a normal participant in the affiliate marketplace causes no injury to consumers, who pay the same price for the products regardless of who is rightfully credited the last-click commission.  Indeed, consumers may end up paying less by activating Microsoft Shopping's comparison and cashback features.  And any alleged injury to Plaintiffs was entirely avoidable.  Plaintiffs are free to compete under the same rules to be the last click before purchase, such as offering an exclusive coupon code for use at checkout.  *Greenberg v. Amazon*, 553 P.3d 626, 642 (W.D. Wash. 2024) (failing to allege injury because harm was "reasonably avoidable by [Plaintiffs] themselves").  Moreover, any supposed "injury" is outweighed by the benefits to competition.  Offering consumers the opportunity to save money and allowing a greater number of affiliates to participate and have a chance at earning commissions creates a more robust ecosystem beyond what any single content creator can provide.

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Nor do Plaintiffs plead any facts that Microsoft has made representations to Plaintiffs, has concealed the way last-click attribution works, or had any duty to disclose its participation in affiliate networks. Operating by the same rules as all others in the marketplace inherently lacks "the capacity to deceive a substantial portion of the public." *Storey v. Amazon.com Serv. LLC*, 2025 WL 887373, *3 (W.D. Wash. Mar. 21, 2025).

Finally, Plaintiffs fail to allege facts showing that their speculative "injuries" are "causally linked" to Microsoft Shopping. *Holiday Resort Cmty. Ass'n*, 135 P.3d at 507. To the contrary, Plaintiffs concede that it is the actions of consumers, not Microsoft, that determine which publishers, if any, will be credited with the last click and, therefore, receive a commission. As Plaintiffs admit, Microsoft Shopping is only engaged prior to a purchase when a consumer chooses to click on it. And as discussed, the fact that numerous lawsuits have been filed against other web extensions on the same theories underscores that Plaintiffs cannot show Microsoft Shopping caused any alleged injury to them.

### B.    Plaintiffs Fail to State a Claim Under the UCL.

Plaintiffs' claim under the California Unfair Competition Law ("UCL"), which prohibits "unlawful, unfair, or fraudulent" business acts, fares no better. *See Cal. Bus. & Prof. Code* § 17200. As explained above, Plaintiffs have failed to plead any unlawful, unfair, or fraudulent conduct by Microsoft. In addition, the UCL provides only equitable relief; damages cannot be recovered. *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 189 Cal. Rptr. 3d 31, 54 (Ct. App. 2015). Plaintiffs allege only that they lost commissions, CAC ¶ 1, which are easily redressable with monetary damages. *See, e.g., eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). While Plaintiffs try to assert that they are seeking restitution, they "fail to explain how the money they seek through restitution is any different than the money they seek as damages, [so] the UCL claim must be dismissed." *In re: Cap. One Affiliate Mktg. Litig.*, 2025 WL 1570973, *16 (E.D. Va. 2025) (dismissing UCL claim in browser extension affiliate marketing case). Moreover, Plaintiffs' common law tort claims are based on the same alleged conduct as their UCL claim, which "undermines any potential inadequacy of legal remedies." *Ibarra v. Pharmagenics LLC*, 660 F.

Supp. 3d 914, 922 (C.D. Cal. 2023). *See also Cap. One*, *16 (no equitable jurisdiction where "TechSource has not plausibly alleged that it has no adequate legal remedy"). Moreover, the UCL standing requirements extend "over and above the demands of Article III," *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023). As discussed *supra* Section I.A, Plaintiffs have failed to plausibly allege an injury in fact under Article III, and so they fail under the UCL, which requires that "the economic injury was … *caused by*, the unfair business practice." *Id.,* 943.

Plaintiffs' UCL claim also fails under the "unlawful" prong. As described above, Plaintiffs do not plausibly allege that Microsoft Shopping behaved unlawfully. Even if they had, where the "unlawful" conduct alleged under the UCL is the same as the underlying legal claims, the derivative UCL claim fails alongside them. *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc*., 239 Cal. Rptr. 3d 577, 599 (Ct. App. 2018).

Plaintiffs' claim likewise fails under the "unfair" prong. California courts may apply either a balancing test or a tethering test to determine if alleged conduct is "unfair" under the UCL. *Day v. GEICO Cas. Co*., 580 F. Supp. 3d 830, 844-45 (N.D. Cal. 2022). Plaintiffs' dispute is a competitive one. Intra-competitor disputes have been rejected under the balancing test. *Lozano v. AT&T Wireless Serv., Inc*., 504 F.3d 718, 735 (9th Cir. 2007).

Nor can this theory survive the tethering test, which requires that the alleged conduct threatens antitrust laws or policies. *See Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co*., 973 P.2d 527, 565 (Cal. 1999). Plaintiffs do not claim a violation of antitrust law, nor do their wishes to change the competitive last-click attribution process resemble any antitrust violation. *See Stevenson Real Est. Servs., Inc. v. CB Richard Ellis Real Est. Servs., Inc*., 42 Cal. Rptr. 3d 235, 238, 243 (Ct. App. 2006) (commission dispute not a UCL claim); *Cel-Tech*, 973 P.2d, 565 ("[I]njury to a competitor is not equivalent to injury to competition; only the latter is the proper focus of antitrust laws.").

### IV.    PLAINTIFFS' COMPUTER FRAUD AND ABUSE ACT CLAIM FAILS BECAUSE PLAINTIFFS DO NOT ALLEGE INJURY OR LOSS

Plaintiffs fail to state a claim that Microsoft violated the Computer Fraud and Abuse Act ("CFAA"), which is an "anti-hacking statute," not an "expansive misappropriation statute." *United States v. Nosal*, 676 F.3d 854, 857 (9th Cir. 2012); *SunPower Corp. v. SunEdison, Inc*., 129 F. Supp. 3d 918, 919 (N.D. Cal. 2015). Plaintiffs claim that "Microsoft misappropriated commissions [Plaintiffs] earned by referring customers to purchase online products." CAC ¶ 1. *See also id.* ¶¶ 13, 193. But this type of alleged misappropriation is not appropriate for a CFAA claim. Further, Plaintiffs do not claim a loss of the type contemplated by the CFAA.

To state a CFAA claim, Plaintiffs must allege that defendant "(1) accessed a 'protected computer,' (2) without authorization or exceeding such authorization that was granted, (3) 'knowingly' and with 'intent to defraud,' and thereby (4) 'further[ed] the intended fraud and obtain[ed] anything of value,'" and (5) caused a loss in a one-year period of at least $5,000. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009). "[A]n individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Van Buren v. United States*, 593 U.S. 374, 396 (2021). *See also hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F. 4th 1180, 1198 (9th Cir. 2022). "[T]he plain language of [the CFAA] target[s] 'the unauthorized procurement or alteration of information, not its misuse or misappropriation.'" *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965 (D. Ariz. 2008).

Plaintiffs allege that Microsoft "exceeded its authorized access to the computers of its consumer by accessing and altering or removing tracking codes." CAC ¶ 204. But they concede that Microsoft could not access, let alone exceed authorized access to, tracking codes on consumers' computers, since "consumers themselves do not have that access and cannot overwrite tracking codes." *Id.* ¶ 207. Plaintiffs suggest Microsoft "'tricked' the online merchant's website into replacing the...tracking codes of Plaintiffs," *id.* ¶ 208, but this is no trick. It is the nature of how attribution is recorded, and how merchants enforce the rules of last-click attribution for all participants. *Id.* ¶¶ 83–84.

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*United Fed'n of Churches, LLC v. Johnson* is on point. There, an organization's Facebook administrator allegedly improperly removed other administrators, allegedly in violation of Facebook's terms, and made posts. 522 F. Supp. 3d 842, 848–49 (W.D. Wash. 2021) (reversed on other grounds). The court dismissed the CFAA claim, explaining:

> [Plaintiff] does not claim that it prohibited Defendants from accessing its Facebook accounts altogether, yet they accessed it anyway. Nor does it claim that it restricted Defendants' access to certain features of those accounts, yet Defendants wandered where they were not allowed.

*Id.* Plaintiffs similarly fail to allege that Microsoft engaged in any prohibited practices. At no point do Plaintiffs allege Microsoft engaged in any hacking or unauthorized use of any merchant platform or consumer account, because they cannot. Microsoft has engaged in the same lawful activity as Plaintiffs—participating as an affiliate in the affiliate marketing business. And the same last-click rules apply when a user clicks on a Plaintiff's link after engaging with Microsoft Shopping—Plaintiff's code overtakes Microsoft's and the Plaintiff gets the commission. At no point do Plaintiffs allege Microsoft garners an attribution in this marketplace without the *affirmative clicks and conduct* of the consumer. CAC ¶¶ 98, 100.

Even if the Court were to credit Plaintiffs' conclusory allegations that Microsoft received certain undue commissions (it should not), that is a far cry from the hacking the CFAA was meant to protect against. *See id.* ¶¶ 84, 108. "[V]iolating a company's terms of use … is insufficient to state a CFAA claim." *United Fed'n of Churches*, 522 F. Supp. 3d at 848. *See also Watters v. Breja*, 2024 WL 201356, *3 (N.D. Cal. 2024).[9] As the Ninth Circuit explained by way of example, it is improper to use the CFAA in a situation where an employee is "authorized to access customer lists in order to do his job" but then sends them to a competitor—because access was authorized and the CFAA is limited to access restrictions, not use restrictions. *United States v. Nosal*, 676

---

[9] The rule of lenity applies, and this Court should not expand the scope of CFAA. Any ambiguity points in favor of Microsoft: "[T]he CFAA is primarily a criminal statute, and is interpreted consistently in the criminal and civil contexts, the rule of lenity applies and requires courts to limit [its] reach ... to the clear import of [its] text and construe any ambiguity against enforcement." *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1260 (N.D. Cal. 2022).

MICROSOFT'S MTD CONSOL. CLASS ACTION COMPL.
(2:25-cv-00088-RSM) - 22

F.3d at 857.  Here, where the merchant rules allow Microsoft and any other publisher to have its tracking codes attached when it is the last click, a CFAA claim is inappropriate.

Further, Plaintiffs do not sufficiently allege loss.  The Supreme Court has "concluded that [the CFAA's] civil remedies provision requires a showing of 'technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data.'"  *hiQ Labs*, 31 F.4th at 1195 (citing *Van Buren*, 593 U.S. at 392).  CFAA does not allow for damages for "general injuries unrelated to the hacking itself." *Erhart v. BofI Holding, Inc*., 612 F. Supp. 3d 1062, 1129 (S.D. Cal. 2020); *Sylabs, Inc. v. Rose*, 2024 WL 4312719, *2 (N.D. Cal. 2024). Plaintiffs cannot, and do not, state any facts that would show their alleged losses arise from the type of "technological harms" *Van Buren* requires, or accuse Microsoft of "hacking," only misappropriation. Plaintiffs have not plausibly alleged the type of harm required by the CFAA; the Court should dismiss the CFAA claims in Count II.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

**Certification:**  I certify that this memorandum contains 8,391, in compliance with the Local Civil Rules.

Dated: June 27, 2025

By: /s/ Fred Burnside
Fred B. Burnside, WSBA #32491
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 622-3150
E-mail: fredburnside@dwt.com

George Gordon (admitted *pro hac vice*)
Julia Chapman (admitted *pro hac vice*)
DECHERT LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
george.gordon@dechert.com
julia.chapman@dechert.com

MICROSOFT'S MTD CONSOL. CLASS ACTION COMPL.
(2:25-cv-00088-RSM) - 23

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2
Gregory Chuebon (admitted pro hac vice)
DECHERT LLP
1095 6th Ave
3
New York, NY 10036
Telephone: (212) 698-3500
greg.chuebon@dechert.com

4

5
Attorneys for Defendant Microsoft Corporation

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DAVIS WRIGHT TREMAINE LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on this day I electronically filed the foregoing with the Clerk of the

3  USDC, Western District of Washington, using the CM/ECF system which will send notification

4  of such filing to the following:

5

6                              */s/ Fred B. Burnside*

7                              Fred B. Burnside, WSBA #32491
                               DAVIS WRIGHT TREMAINE LLP
8                              920 Fifth Avenue, Suite 3300
                               Seattle, WA 98104-1610
9                              Telephone: (206) 622-3150
                               E-mail: fredburnside@dwt.com
10

11                             ***Attorney for Defendant Microsoft Corporation***

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

MICROSOFT'S MTD CONSOL. CLASS ACTION COMPL.
(2:25-cv-00088-RSM) - 25

# APPENDIX A

## Appendix A

| Claim | Element(s) | | | | | |
|---|---|---|---|---|---|---|
| | **CA** | **FL** | **NY** | **OH** | **TX** | **WA** |
| Intentional interference with contractual relations | A plaintiff must allege:<br>(1) the existence of a valid contract between plaintiff and third party;<br>(2) defendant's knowledge of this contract;<br>(3) defendant's intentional acts designed to induce a breach or disruption of the relationship;<br>(4) actual breach of disruption or the contractual relationship; and<br>(5) resulting damages.[1] | A plaintiff must allege:<br>(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract;<br>(2) defendant's knowledge of the relationship;<br>(3) intentional and unjustified interference with the relationship by the defendant; and<br>(4) resultant damages to plaintiff.[2] | A plaintiff must allege:<br>(1) the existence of a contract that is enforceable by the plaintiff;<br>(2) the defendant's knowledge of the existence of that contract;<br>(3) the intentional procurement by the defendant of the breach of contract; and<br>(4) resultant damages to the plaintiff.[3] | A plaintiff must allege:<br>(1) the existence of a contract;<br>(2) the wrongdoer's knowledge of the contract;<br>(3) the wrongdoer's intentional procurement of the contract's breach;<br>(4) lack of justification; and<br>(5) resulting damages.[4] | A plaintiff must allege:<br>(1) the existence of a valid contract subject to interference;[5]<br>(2) the defendant willfully and intentionally interfered with the contract;[6]<br>(3) the interference proximately caused the plaintiff's injury; and<br>(4) the plaintiff incurred actual damage or loss.[7] | A plaintiff must allege:<br>(1) the existence of a valid contractual relationship or business expectancy;<br>(2) defendant's knowledge of that relationship;<br>(3) intentional interference inducing or causing breach or termination of the relationship;[8]<br>(4) defendant interfered for improper purpose or used improper means; and<br>(5) resultant damage.[9] |

[1] *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp.*, 2018 WL 10689420, *11 (N.D. Cal. July 9, 2018) (actual knowledge of the contract is required).

[2] *Essex Capital Group, Inc. v. Warnell*, 2024 WL 4956731, *3 (M.D. Fla. Dec. 3, 2024) (quoting *Salit v. Ruden, P.A.*, 742 So. 2d 381, 385 (Fla. Dist. Ct. App. 1999)).

[3] *Am. Med. & Life Ins. Co. v. Crosssummit Enters.*, 2010 WL 1493136, *6 (N.Y. Sup. Ct. Apr. 1, 2010).

[4] *Cincinnati Arts Assoc. v. Jones*, 777 N.E.2d 346, 353 (C.P. Ohio 2002) (quoting *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995)); *W. & S. Life Ins. Co. v. JPMorgan Chase Bank, N.A.*, 54 F.Supp.3d 888, 913 (S.D. Ohio Oct. 16, 2014) (quoting *Kenty*, 650 N.E.2d at 866).

[5] *Welch v. See*, 2023 WL 6322649, *9 (Tex. Ct. App. Sep. 29, 2023).

[6] *Welch* at *9. Willful and intentional interference requires the plaintiff to establish "that the defendant was legally capable of tortious interference" by "be[ing] a stranger to the contract." *Copeland v. Alamo Billing Co.*, 2021 WL 2792354, *5 (E.D. Tex. May 3, 2021) (quoting *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017)). Additionally, "[i]ntentional interference does not require intent to injure, only that 'the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" *Welch* at *9 (quoting *Sw. Bell Tel. Cp. V. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992)).

[7] *Welch* at *9.

[8] "An intentional interference 'requires an improper objective of harming the person or the use of wrongful means that in fact cause injury to the person's contractual or business relationships.'" *Access the USA, LLC v. Washington*, 2018 WL 1709674, *10 (Wash. Ct. App. Apr. 9, 2018) (quoting *Schmerer v. Darcy*, 910 P.2d 498, 502 (Wash. Ct. App. 1996)). "Exercising in good faith one's legal interests is not an improper interference." *State Farm Mutual Auto. Ins. Co. v. Peter J. Hanson, P.C.*, 2017 WL 1304445, *4 (W.D. Wash. Feb. 3, 2017) (quoting *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997)). Interference is improper if it is "wrongful by some measure beyond the fact of the interference itself, such as a statute, regulation, recognized rule of common law, or an established standard of trade or profession." *NC Interactive, LLC v. Amber Studio S.A.*, 2024 WL 1832951, *5 (W.D. Wash. Apr. 26, 2024) (quoting *Moore v. Commercial Aircraft Interiors, LLC*, 278 P.3d 197, 200 (Wash. Ct. App. 2012)).

[9] *Access the USA, LLC*, 2018 WL 1709674, at *10.

| | CA | FL | NY | OH | TX | WA |
|---|---|---|---|---|---|---|
| Intentional interference with prospective economic advantage | A plaintiff must allege:<br>(1) a prospective economic interest between plaintiff and third party;<br>(2) defendant's knowledge of this relationship;<br>(3) defendant's intentional act designed to disrupt the relationship;<br>(4) actual disruption of the contractual relationship; and<br>(5) resulting damages proximately caused by acts of the defendant.[10] | A plaintiff must allege:<br>(1) the existence of a business relationship;<br>(2) knowledge of the relationship on the part of the defendant;<br>(3) an intentional and unjustified interference with the relationship by the defendant; and<br>(4) damage to the plaintiff as a result of the breach of the relationship.[11] | A plaintiff must allege:<br>(1) business relations with a third party;<br>(2) defendant interfered with those relations;<br>(3) defendant acted with sole purpose of harming plaintiff or using unlawful means; and<br>(4) resulting injury to the business relationship.[12] | A plaintiff must allege:<br>(1) prospective contractual relations not yet reduced to contract;<br>(2) the tortfeasor's knowledge of the relationship;<br>(3) the tortfeasor's intentional interference causing breach of termination of the relationship;<br>(4) lack of privilege; and<br>(5) resulting damages.[13] | N/A | A plaintiff must allege:<br>(1) the existence of a valid contractual relationship or business expectancy;<br>(2) that defendants had knowledge of that relationship;<br>(3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy;[14]<br>(4) that defendants interfered for an improper purpose or used improper means; and<br>(5) resultant damage.[15] |

---

[10] *S. Cal. Elec. Firm v. S. Cal. Edison Co.*, 668 F.Supp.3d 1000, 1020 (C.D. Cal. 2023).

[11] *Register v. Pierce*, 530 So. 2d 990, 993 (Fla. Dist. Ct. App. 1988) ("The alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights.").

[12] *North State Autobahn, Inc. v. Progressive Ins. Group Co.*, 953 N.Y.S.2d 96, 108 (N.Y. App. Div. 2012). *See also Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 187 (Ct. App. 1980) ("As a general rule, if no improper means have been employed, a competitor may not be held liable for intentional interference with a contract").

[13] *Jedson Eng'g, Inc. v. Spirit Const. Servs., Inc.*, 720 F. Supp. 2d 904, 923 (S.D. Ohio 2010).

[14] "Intentional interference requires an improper objective or the use of wrongful means that in fact cause injury to the person's contractual relationship," and exercising in good faith one's legal interests is not improper interference. *See Access the USA, LLC*, 2018 WL 1709674, at *10; Restatement (Second) of Torts § 773 (1979)

[15] *Nat'l City Bank, N.A. v. Prime Lending, Inc.*, 2010 WL 2854247, *4 (E.D. Wash. July 19, 2010).

| | CA | FL | NY | OH | TX | WA |
|---|---|---|---|---|---|---|
| Unjust enrichment | A plaintiff must allege:<br>(1) receipt of a benefit and<br>(2) unjust retention of the benefit<br>(3) at the expense of another.[16] | A plaintiff must allege:<br>(1) plaintiff has conferred benefit on the defendant, who has knowledge thereof;<br>(2) defendant voluntarily accepts and retains the benefit conferred; and<br>(3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.[17] | A plaintiff must allege:<br>(1) the other party was enriched,<br>(2) at that party's expense and<br>(3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.[18] | A plaintiff must allege:<br>(1) a benefit conferred by a plaintiff upon a defendant;<br>(2) knowledge by the defendant of the benefit; and<br>(3) retention of the benefit by the defendant under the circumstances where it would be unjust to do so without payment.[19] | Unjust enrichment is not an independent cause of action. Instead, it characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay.[20] Furthermore, unjust enrichment may be found under circumstances in which one person obtained a benefit from another by fraud, duress, or the taking of an undue advantage.[21] | A plaintiff must allege:<br>(1) a plaintiff conferred a benefit upon the defendant;<br>(2) the defendant had knowledge or appreciation of the benefit; and<br>(3) the defendant's accepting or retaining the benefit without the payment of its value is inequitable under the circumstances.[22] |

---

[16] *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (Cal. Ct. App. 2000). *See also Abuelhawa v. Santa Clara Univ.*, 529 F.Supp. 3d 1059, 1070 (N.D. Cal. 2021) ("California does not recognize a separate cause of action for unjust enrichment."); *Markels v. AARP*, 689 F.Supp. 3d 722, 731 (N.D. Cal. 2023) ("no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected").

[17] *People's Nat'l Bank of Com. v. First Union Nat'l Bank of Fla.*, 667 So. 2d 876, 879 (Fla. Dist. Ct. App. 1996). *See also Aerokool Aviation Corp. v. Dofflemeyer*, 2021 WL 12311277, *5 (S.D. Fla. Aug. 4. 2021).

[18] *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011).

[19] *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Enters. Inc*., 50 N.E.3d 955, 967 (Ohio Ct. App. 2015) (quoting *Hambleton v. R.G. Barry Corp*., 465 N.E.2d 1298, 1302 (Ohio 1984)).

[20] *Richardson Hosp. Auth. V. Duru*, 387 S.W.3d 109, 114 (Tex. Ct. App. 2012).

[21] *Prime Hydration LLC v. Garcia*, 2025 WL 963361, *10–11 (N.D. Tex. Mar. 31, 2025).

[22] *Austin v. Ettl*, 286 P.3d 85, 92 (Wash. Ct. App. 2012) (citing *Young v. Young*, 191 P.3d 1258 (Wash. 2008)). "Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Id.* (quoting *Young*, 191 P.3d at 1262). The enrichment must be unjust both under the circumstances and as between the two parties to the transaction. Thus, to recover for unjust enrichment the plaintiff must plead both unjust retaining of benefits and why an equitable remedy is necessary. *See also Puget Sound Security Patrol, Inc. v. Bates*, 389 P.3d 709, 716–17 (Wash. Ct. App. 2017); *Dougherty v. Pohlman*, 16 Wash. App. 2d 1008 (2021) (affirming dismissal of unjust enrichment based on the three-year statute of limitations); *Austin*, 286 P.3d 85–93 (affirming dismissal of unjust enrichment claim where defendant had failed to disclose the "potential costs of the not-yet extant" local improvement districts).