The Honorable Ricardo S. Martinez

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

*In re Microsoft Browser Extension Litigation*

Consolidated Case No.
2:2025-cv-00088-RSM

11
12

**PLAINTIFFS' OPPOSITION TO MICROSOFT'S MOTION TO DISMISS**

13
14
15
16
17
18
19
20
21
22
23
24
25
26

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - i
Case No. 2:2025-cv-00088

# TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................1

II.    BACKGROUND .............................................................................................1

    A.     Affiliate Marketing ...................................................................... 1

    B.     The Microsoft Shopping Extension .................................................... 2

III.   LEGAL STANDARD .....................................................................................4

IV.    ARGUMENT ..................................................................................................4

    A.     Plaintiffs Have Sufficiently Alleged Article III Standing. ................................. 4

        1.   Plaintiffs have adequately alleged that they suffered monetary harm............ 4

        2.   Plaintiffs' injuries are fairly traceable to Microsoft. ..................................... 9

    B.     Plaintiffs Have Adequately Alleged the Computer Fraud and Abuse Act
        ("CFAA") Claim. ......................................................................... 10

    C.     Plaintiffs Have Adequately Alleged a Washington Consumer Protection Act
        ("WCPA") Claim........................................................................... 13

    D.     Unjust Enrichment ....................................................................... 15

    E.     Tortious Interference ..................................................................... 18

    F.     California UCL ............................................................................ 22

V.     CONCLUSION ..............................................................................................25

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AEGIS, LLC v. Schlorman*,
   250 N.E.3d 1251 (2024) .................................................................................18

*Akil v. Freedom Mortg. Corp.*,
   2025 WL 1094315 (W.D. Wash. Apr. 11, 2025) ...............................................13

*Alvarado v. Microsoft Corp.*,
   2010 WL 715455 (W.D. Wash. Feb. 22, 2010) .................................................16

*AngioScore, Inc. v. TriReme Med., LLC*,
   70 F. Supp. 3d 951 (N.D. Cal. 2014)................................................................24

*In re Anthem, Inc. Data Breach Litig.*,
   162 F. Supp.3d 953 (N.D. Cal. 2016)...............................................................24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................4

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015)............................................................................15

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................4

*Bluesky Greenland Env't Sols., LLC v. 21st Century Planet Fund*,
   LLC, 985 F. Supp. 2d 1356 (S.D. Fla. 2013) ...................................................22

*Bombardier Inc. v. Mitsubishi Aircraft Corp.*,
   383 F. Supp. 3d 1169 (W.D. Wash. 2019) ........................................................19

*California State Emps. Ass'n v. Bogart*,
   2015 WL 461646 (E.D. Cal. Feb. 3, 2015) .......................................................17

*Click v. Gen. Motors LLC*,
   2020 WL 3118577 (S.D. Tex. 2020).................................................................16

*Cornelius v. Fid. Nat. Title Co.*,
   2009 WL 596585 (W.D. Wash. Mar. 9, 2009).....................................................7

*Daley's Dump Truck Serv., Inc. v. Kiewit Pac. Co.*,
   759 F. Supp. 1498 (W.D. Wash. 1991) ...............................................................8

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - iii
Case No. 2:2025-cv-00088

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

*Digital Drilling Data Sys., L.L.C. v. Petrolink Svcs., Inc.*,
   965 F.3d 365 (5th Cir. 2020) ................................................................15

*eBay Inc. v. Digital Point Sols., Inc.*,
   608 F. Supp. 2d 1156 (N.D. Cal. 2009) ................................................12

*Edelson v. Travel Insured Int'l, Inc.*,
   2021 WL 4334075 (S.D. Cal. Sept. 23, 2021) .....................................23

*Epic Games, Inc. v. Apple, Inc.*,
   67 F. 4th 946 (9th Cir. 2023) ...............................................................24

*In re First Alliance Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ...................................................7, 12, 23

*Greenberg v. Amazon.com, Inc.*,
   3 Wash. 3d 434 (2024) ..........................................................................14

*Greensun Grp., LLC v. City of Bellevue*,
   7 Wash. App. 2d 754 (2019) ...........................................................19, 20

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
   105 Wash. 2d 778 (1986) .......................................................................13

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
   353 P.3d 319 (Cal. 2015) .......................................................................16

*Hrapoff v. Hisamitsu Am., Inc.*,
   2022 WL 2168076 (N.D. Cal. June 16, 2022) .....................................23

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
   162 Wash. 2d 59 (2007) .........................................................................15

*In re: Cap. One Fin. Corp. Affiliate Mktg. Litig.*,
   2025 WL 1570973 (E.D. Va. June 2, 2025) ...............5, 6, 9, 10, 11, 13, 17, 20, 22

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................22

*Kische USA, LLC v. Simsek*,
   2016 WL 6273261 (W.D. Wash. June 29, 2016) ..................................19

*Klem v. Washington Mut. Bank*,
   176 Wash. 2d 771 (2013) .......................................................................14

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................4, 5, 8

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - iv
Case No. 2:2025-cv-00088

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

*Mandarin Trading Ltd. v. Wildenstein*,
   944 N.E.2d 1104 (N.Y. 2011) ...................................................................................16

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ....................................................................................4

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) .................................................................................4, 9

*Mr. 99 & Assocs., Inc. v. 8011, LLC*,
   197 Wash. App. 1021 (2016) ....................................................................................17

*O'Handley v. Weber*,
   62 F.4th 1145 (9th Cir. 2023) .....................................................................................9

*Ocean Beauty Seafoods LLC v. CAPTAIN ALASKA*,
   603 F. Supp. 3d 1005 (W.D. Wash. 2022) ...............................................................18

*Oddo v. United Techs. Corp.*,
   2022 WL 577663 (C.D. Cal. Jan. 3, 2022) ...............................................................23

*Paikai v. Gen. Motors Corp.*,
   2009 WL 275761 (E.D. Cal. 2009) ...........................................................................16

*Panag v. Farmers Ins. Co. of Wash.*,
   166 Wash. 2d 27 (2009) ............................................................................................13

*Perea v. Walgreen Co.*,
   939 F. Supp. 2d 1026 (N.D. Cal. 2013) ....................................................................24

*San Luis Obispo Mothers for Peace v. United States Nuclear Regul. Comm'n*,
   100 F.4th 1039 (9th Cir. 2024) .................................................................................6, 7

*Satanic Temple, Inc. v. Rokita*,
   2023 WL 7016211 (S.D. Ind. Oct. 25, 2023) .............................................................8

*Six v. IQ Data Int'l, Inc.*,
   129 F.4th 630 (9th Cir. 2025) ......................................................................................5

*Syed v. Poulos*,
   2016 WL 3020066 (Ohio Ct. App. May 26, 2016) ...................................................18

*In re Takata Airbag Prods. Liab. Litig.*,
   462 F. Supp. 3d 1304 (S.D. Fla. 2020) .....................................................................16

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ................................................................................................5, 7

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - v
Case No. 2:2025-cv-00088

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

*U.S. E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*,
   2013 WL 1435290 (N.D. Cal. Apr. 9, 2013)........................................................23

*United Fed'n of Churches, LLC v. Johnson*,
   598 F. Supp. 3d 1084 (W.D. Wash. 2022) ....................................................12, 20

*United States v. Nosal*,
   676 F.3d 854 (9th Cir. 2012) .......................................................................12

*Van Buren v. United States*,
   593 U.S. 374 (2021) ...............................................................................10, 11

*Van v. LLR, Inc.*,
   61 F.4th 1053 (9th Cir. 2023) .................................................................4, 5, 6

*Wakefield v. ViSalus, Inc.*,
   51 F.4th 1109 (9th Cir. 2022) ...................................................................5

*Walgreen Co. v. Peters*,
   2025 WL 1725160 (N.D. Ill. June 20, 2025).................................................22

*Young v. Young*,
   164 Wash. 2d 477 (2008) .........................................................................15

*Zeiger v. WellPet LLC*,
   526 F. Supp. 3d 652 (N.D. Cal. 2021)...........................................................23

*Zunum Aero, Inc. v. Boeing Co.*,
   2022 WL 3346398 (W.D. Wash. Aug. 12, 2022)..............................................20

**Statutes**

18 U.S.C. § 1030(e)(11) ...............................................................................13

Cal. Bus. & Prof. Code § 17200 ......................................................................22

California Unfair Competition Law (UCL)................................................22, 23, 24

Washington Consumer Protection Act (WCPA) ......................................................13

**Other Authorities**

Rule 12(b)(6) ...............................................................................................4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - vi
Case No. 2:2025-cv-00088

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

## I.    **INTRODUCTION**

Microsoft does not dispute that it takes the online shopping sales commissions at issue in this case, but claims it is entitled to do so as a *competitor* of Plaintiffs. This claim, made repeatedly throughout their motion, is false—at best—raises quintessential disputed factual issues, not suitable for resolution at the motion to dismiss stage. The truth, according to Plaintiffs' well-pled allegations, is that online merchants pay these sales commissions to compensate content creators like Plaintiffs for generating consumer interest in their products and directing consumers to the websites through which consumers can purchase those products. Microsoft is not a competitor of content creators—it does not attract consumers to products through online content or direct consumers to merchants for purchases.

Instead, Microsoft uses its power as the developer of the consumers' internet browser to divert sales commissions to itself *after* Plaintiffs have already directed consumers to the merchant's website. That Microsoft must base its motion on the dubious claim that it competes with content creators like Plaintiffs speaks volumes. The claim lacks any credible basis, inverts the pleading standard by seeking for inferences to be drawn in its favor, and without it, Microsoft's motion collapses. Its motion should be denied.

## II.    **BACKGROUND**

### A.  **Affiliate Marketing**

With affiliate marketing, content creators partner with online merchants to promote products and services in exchange for sales commissions. CAC ¶¶ 63-66. Merchants use "affiliate links" unique to each creator, which can be shared by creators on social media and other platforms. *Id.* ¶¶ 3, 65, 75-77, 80-82. Affiliate links generally contain an "Affiliate ID" unique to a particular creator. *Id.* ¶ 80. When a consumer clicks an affiliate link, the consumer is directed to the merchant's website, where she can purchase the product promoted by the creator. *Id.* ¶¶ 3, 65, 75. At the same time, a tracking "cookie" is stored on the consumer's device that identifies the creator as the referrer and tracks the consumer's browsing activity,

1    including whether a purchase was completed on the merchant's site. *Id*. ¶¶ 80-82.

2         Most merchants use the industry-standard "last-click" attribution model to determine

3    which content creator should be awarded a commission for a particular transaction. *Id.* ¶¶ 76,

4    83, 167. This model credits the sale to the creator who drove the consumer from an external

5    website to the merchant's website. *See id.* ¶¶ 76, 83, 112-15, 117-18, 121. The "last click"

6    refers to a consumer's action of clicking an external affiliate link that directs the consumer to

7    the merchant's website, where the consumer then completes a purchase. *See id*. ¶¶ 9, 75-76, 82-

8    83. If a consumer clicks a creator's affiliate link, navigates to the merchant's website, and

9    completes a purchase, the creator's affiliate tracking cookie causes the creator to receive a

10   commission, regardless of what buttons the consumer clicks once on the merchant's website.

11   *See id.* ¶¶ 112-15, 117-18, 131-32, 142-43, 149-50.

12        Plaintiffs have contractual relationships with merchants that use the last-click attribution

13   model. *See id.* ¶¶ 76, 166-67. Pursuant to these relationships, Plaintiffs are entitled to a

14   commission if the final click that directs the consumer to the merchant's website prior to a sale

15   is on one of Plaintiffs' affiliate links. *See id*. ¶¶ 76, 83, 125, 131, 136, 166-68. However, as

16   described below, the Microsoft Shopping extension ("Extension") corrupts the commission-

17   attribution process and diverts commissions from Plaintiffs to Microsoft, even though

18   Microsoft was not the source of the click that drove the consumer to the merchant's website.

19   *See id.* ¶¶ 97-101.

20   **B.  The Microsoft Shopping Extension**

21        The Extension is built into Microsoft's Edge browser. *Id.* ¶ 88. It can also be installed

22   on other internet browsers. *Id.* The Extension purports to find coupons or discounts for

23   consumers. *See id.* ¶¶ 89-93. The Extension functions by automatically tracking the browsing

24   behavior of the consumer, including information about the websites the consumer accesses. *Id.*

25   ¶ 95. However, the Extension does not offer pop-ups or alerts to a consumer until the consumer

26   has already navigated to the merchant's website (i.e., *after* the "last click" has occurred). Thus,

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - 2
Case No. 2:2025-cv-00088

unlike the content creator, the extension does not direct the consumer to the merchant's website. *See id.* ¶¶ 89-93, 103, 105, 112-113, 118-19, 126-27, 132-33, 137-38, 142-44, 150-51. When a consumer accesses the merchant's website (and often during the checkout process), the Extension will trigger a pop-up inviting the consumer to apply coupons or activate Microsoft Cashback. *See id.* The consumer must click a button within the extension to activate coupons or cashback. *See id.* ¶¶ 96, 100, 119-20, 127-28, 133-34, 138-39, 151-52.

The Extension is designed to divert affiliate commissions from content creators like Plaintiffs. *Id.* ¶ 96-101. When a consumer activates the Extension to apply coupons or cashback, the extension modifies and replaces any existing affiliate tracking cookies to make it appear as though the consumer navigated to the merchant's website using an affiliate link associated with Microsoft. *See id.* ¶ 96-100, 119-20, 127-28, 133-34, 138-39, 151-52. Even though the consumer arrived at the merchant's website via the content creator's affiliate link, Microsoft uses the consumer's "click" on the Extension, which was purportedly to activate coupons or cashback, to replace existing affiliate tracking codes (including Plaintiffs') with Microsoft or its partners' codes. *Id.* ¶¶ 98-100, 119-20, 127-28, 133-34, 138-39, 151-52. As a result, Microsoft or its partners are credited with the referral, purchase, and commission. *Id.* In the industry, this is known as "cookie stuffing," a widely prohibited practice that tricks a merchant's tracking system into thinking that the consumer navigated to the merchant's website by clicking the cookie stuffer's affiliate link, even though the consumer did not. *Id.* ¶ 84.

Microsoft knows that it is engaging in cookie stuffing because the Extension has unique access to the cookies and information associated with online transactions made on the Edge browser. *Id.* ¶ 15. Through this tracking, Microsoft knows when a user has navigated to a merchant's website through a content creator's affiliate link. And when Microsoft overwrites the content creator's tracking codes, it does so with full knowledge that it is gaming the system and depriving the content creator of the commission he or she earned.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - 3
Case No. 2:2025-cv-00088

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1

### III.    LEGAL STANDARD

2      A court will deny a motion to dismiss under Rule 12(b)(6) when the complaint pleads

3  "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550

4  U.S. 544, 570 (2007). To establish plausibility, a plaintiff need only plead sufficient facts for "the

5  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

6  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering the motion, a court "accept[s]

7  factual allegations in the complaint as true and construe[s] the pleadings in the light most

8  favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025,

9  1031 (9th Cir. 2008).

10

### IV.    ARGUMENT

11  **A. Plaintiffs Have Sufficiently Alleged Article III Standing.**

12      To establish standing under Article III, "a plaintiff must show that he has '(1) suffered

13  an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3)

14  that is likely to be redressed by a favorable judicial decision.'" *Van v. LLR, Inc.*, 61 F.4th 1053,

15  1063 (9th Cir. 2023) (quoting *Gill v. Whitford*, 585 U.S. 48, 65 (2018)). Plaintiffs here have

16  Article III standing.

17      When, as here, standing is challenged at the pleading stage, the court "must accept as

18  true all material allegations of the complaint and must construe the complaint in favor of the

19  complaining party." *Maya v. Centex Corp.,* 658 F.3d 1060, 1068 (9th Cir. 2011) (citation

20  omitted). "At the pleading stage, general factual allegations of injury resulting from the

21  defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general

22  allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs.*

23  *of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted).

24  **1. Plaintiffs have adequately alleged that they suffered monetary harm.**

25      Article III standing requires a plaintiff to "have suffered an injury in fact — an invasion

26  of a legally protected interest which is (a) concrete and particularized and (b) actual or

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - 4
Case No. 2:2025-cv-00088

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560 (cleaned up). "A harm is particularized if it affects the plaintiff in 'a personal and individual way.'" *Six v. IQ Data Int'l, Inc.*, 129 F.4th 630, 633 (9th Cir. 2025) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). An injury is "concrete" if it is "'real rather than 'abstract'—that is, 'it must actually exist.'" *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1117 (9th Cir. 2022) (quoting *Spokeo*, 578 U.S. at 339). "[M]onetary harms readily qualify as concrete injuries under Article III. . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021). Plaintiffs plausibly allege that they each suffered monetary losses as a result of Microsoft's conduct. Plaintiffs each have relationships with merchants to promote products or services in exchange for receiving commissions on sales. *See* CAC ¶¶ 21, 30, 37, 44, 52, 59. Pursuant to their relationships with these merchants, Plaintiffs are entitled to a commission if the final click that directs the consumer to the merchant's website prior to a sale is through their affiliate links. *See id.* ¶¶ 21, 30, 37, 44, 52, 59, 76, 82-83, 167. Plaintiffs allege that, through the Extension, Microsoft misappropriated commissions to which Plaintiffs were rightfully entitled. *Id.* ¶¶ 24, 33, 40, 47, 55, 62, 168-70. Accordingly, but for the presence of the Extension, Plaintiffs each would have earned more money from their respective affiliate links. *Id.* Plaintiffs have thus alleged that they each suffered an actual, unique, monetary loss. *See Van*, 61 F.4th at 1064.

Plaintiffs' allegations are reinforced by their screenshots and test purchases, which demonstrate how Microsoft has overwritten Plaintiffs' affiliate tracking codes in instances where Plaintiffs' affiliate links were the last link the consumer clicked to enter the merchant's website before completing a purchase. CAC ¶¶ 110-155. In a case involving similar allegations of misconduct, *In re: Cap. One Fin. Corp. Affiliate Mktg. Litig.* ("*Capital One*"), plaintiffs relied on purchases made by their expert to demonstrate how Capital One deprived plaintiffs of commissions by overriding affiliate tracking codes. 2025 WL 1570973, at *5 (E.D. Va. June 2, 2025). The court held that the expert's purchases were sufficient at the pleading stage to demonstrate "economic losses that plausibly allege a concrete injury." *Id.*

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - 5
Case No. 2:2025-cv-00088

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    Here, Plaintiffs' expert made multiple purchases using Plaintiff Colbow's affiliate links.

2    CAC ¶¶ 121-124. When the Extension was not activated, Mr. Colbow received a commission.

3    *See id.* But when the Extension *was* activated, Mr. Colbow did not receive a commission. *See*

4    *id.* This demonstrates that Mr. Colbow suffered an actual, concrete monetary loss, which, like

5    in *Capital One*, is sufficient for standing.

6    Plaintiffs' well-pled allegations of concrete injury are further supported by their

7    statistical analysis. In *Capital One*, the plaintiffs alleged that, based on the number of annual

8    transactions for which they each were responsible, it was a near-statistical certainty that they

9    were personally harmed by the extension. *Capital One*, 2025 WL 150973, at *3. The court held

10   that the statistical evidence, combined with the plaintiffs' allegations that they each had

11   sufficient qualifying purchases, "sufficiently establish[ed] a plausible injury-in-fact for each

12   Lead Plaintiff at the motion to dismiss stage." *Id.* at *5.

13   Here, Plaintiffs' expert conducted a similar statistical analysis to model the probability

14   of the Extension overwriting a creator's affiliate tracking codes when a consumer completed a

15   purchase on the Microsoft Edge browser for which the creator was eligible to receive

16   compensation. CAC ¶¶ 156-165. Even when conservatively assuming that the extension

17   overwrites affiliate codes 20% of the time, there is a 99.9% probability that a creator with 200

18   purchases on which they were eligible to receive a commission, like each Plaintiff here, had at

19   least one commission diverted by the Extension. *Id.* ¶¶ 23, 32, 39, 46, 54, 61, 164. At the

20   pleading stage, this analysis "provides a basis to find that Article III standing is plausibly

21   alleged" for each Plaintiff. *Capital One*, 2025 WL 1570973, at *5.

22   Plaintiffs also plausibly allege a "substantial risk" of future harm stemming from

23   Microsoft's conduct. *See San Luis Obispo Mothers for Peace v. United States Nuclear Regul.*

24   *Comm'n*, 100 F.4th 1039, 1054 (9th Cir. 2024). Microsoft diverted Plaintiffs' commissions

25   through the Extension and continues to do so, with no indication that it will stop. *See* CAC ¶¶

26   24, 33, 40, 47, 55, 62, 168-71. Thus, Plaintiffs plausibly allege not only a concrete injury that

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - 6
Case No. 2:2025-cv-00088

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

1  has already occurred but also a risk of future harm sufficient to support standing for

2  prospective, injunctive relief. *See Mothers for Peace*, 100 F.4th at 1054.

3      Microsoft's standing arguments are without merit. *First*, Microsoft insists that

4  Plaintiffs' allegations cannot establish a "legally protected interest" or show a "concrete injury"

5  because Microsoft, not Plaintiffs, was entitled to the commissions at issue. Mot. 4–7. Microsoft

6  relies on a self-serving interpretation of Plaintiffs' Complaint, which it claims defines the

7  relevant "last click" as the absolute "last link clicked by the customer before a purchase" (Mot.

8  5), regardless of the type of link clicked or where the link was clicked. But this interpretation

9  inverts the pleading standard—improperly drawing inferences in Defendant's favor—and

10  ignores the totality of Plaintiffs' well-pled allegations.

11      The point of the last click attribution model is to pay commissions to the content creator

12  whose promotion of a product sends the consumer to the merchant website to purchase the

13  product through online affiliate links. *See* CAC ¶¶ 75-76, 83, 125-26, 131, 136. When that

14  occurs, the content creator should earn the commission—not Microsoft, which at the very last

15  instant overwrites the content creator's code with its own even though the consumer last arrived

16  on the merchant's website through the content creator's link. *Plaintiffs'* definition of last click

17  is plausible. *Id.* ¶¶75-76, 83.

18      Moreover, Plaintiffs have demonstrated through screenshots and test purchases how

19  Microsoft has overwritten their codes and deprived them of commissions in instances where

20  Plaintiffs' affiliate links were the last link used by the consumer to enter the merchant's

21  website. *See id.* ¶¶ 112-155. Thus, Plaintiffs have sufficiently alleged that they had a legally

22  protected interest in their monetary commissions, the loss of which "readily qualif[ies]" as a

23  concrete harm and is sufficient to confer standing. *See TransUnion*, 594 U.S. at 414.

24      Microsoft's cited cases do not compel a different result. In *Cornelius*, the court held that

25  the plaintiffs lacked standing because they could not establish a "legally protected interest" in

26  payments that, as a matter of law, were not their property. *See Cornelius v. Fid. Nat. Title Co.,*

2009 WL 596585, at *5 (W.D. Wash. Mar. 9, 2009). Here, by contrast, Plaintiffs have alleged that, pursuant to their relationships with merchants, they have a legally protected interest in a commission on a sale when the consumer's final click to reach the merchant's website is through their affiliate links. Nor is *Daley's Dump Truck* on point. There, the court found that the plaintiffs' complaint failed to establish they had personally been injured by the defendant's conduct, explaining that "[t]here [were] no allegations in the complaint that the named plaintiffs were qualified for, or bid on, any of the thirteen named projects at issue." *Daley's Dump Truck Serv., Inc. v. Kiewit Pac. Co.*, 759 F. Supp. 1498, 1502 (W.D. Wash. 1991). Here, Plaintiffs plausibly allege that they were each contractually entitled to commissions from merchants and that Microsoft wrongfully deprived each Plaintiff of such commissions.

*Second*, Microsoft claims that Plaintiffs' allegations are insufficient because none are "actual consumer transactions" and only raise "hypothetical[s]." Mot. 6–7. This is disingenuous. The sales described in the Complaint were actual sales that demonstrate the exact mechanism through which Microsoft deprived Plaintiffs of commissions. Microsoft does not and cannot show that this did not happen or is not happening continuously as a result of its conduct. At this stage, these allegations are sufficient to confer standing. *See Lujan*, 504 U.S. at 561.

Microsoft complains that Plaintiffs' statistical analysis is based on a "litany of speculative events." Mot. 8. However, the model relies on documented instances over multiple transactions supported by Plaintiffs' allegations, screenshots, and test purchases. Microsoft's argument that "statistical probabilities alone" are insufficient to give rise to standing, *id.*, misses the mark since Plaintiffs' statistical analysis is sound, and the allegations of harm are not speculative. *See, e.g. Satanic Temple, Inc. v. Rokita*, 2023 WL 7016211, at *6 (S.D. Ind. Oct. 25, 2023) (no standing where their proffered statistical analysis was mere "speculation" which was "no replacement for specifics"); *Daley's Dump Truck*, 759 F. Supp. at 1502 (no standing because court would have to "speculate" that the named plaintiffs were impacted by

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - 8
Case No. 2:2025-cv-00088

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1  defendant's conduct).

2       In *Capital One*, the Court found that a nearly identical statistical analysis was sufficient

3  to establish standing. *See Capital One*, 2025 WL 1570973, at *5. Microsoft insists that *Capital*

4  *One* is distinguishable from this case because "the statistical analysis [there] involved an

5  expert's *actual purchases on merchants' websites*" (Mot. 8 n.2), but that misconstrues the

6  court's order and misstates the holding. In *Capital One*, the plaintiffs' expert conducted test

7  purchases showing that commissions were not received when the extension at issue was used,

8  and also conducted a probabilistic statistical analysis based on the number of purchases made

9  by plaintiffs. *See Capital One*, 2025 WL 1570973, at *5. The Court found that each approach

10  plausibly alleged an injury-in-fact.

11       **2.  Plaintiffs' injuries are fairly traceable to Microsoft.**

12       At the pleading stage, "plaintiffs must establish a line of causation between defendants'

13  action and their alleged harm that is more than attenuated." *Maya v. Centex Corp.*, 658 F.3d

14  1060, 1070 (9th Cir. 2011) (cleaned up). "[T]he traceability requirement is less demanding than

15  proximate causation, and thus the 'causation chain does not fail solely because there are several

16  links' or because a single third party's actions intervened." *O'Handley v. Weber*, 62 F.4th 1145,

17  1161 (9th Cir. 2023), *cert. denied,* 144 S. Ct. 2715, 219 L. Ed. 2d 1318 (2024) (quoting *Maya*,

18  658 F.3d at 1070). Here, Plaintiffs plausibly allege a direct causal link between Microsoft's

19  conduct and their injuries—Microsoft diverted to itself commissions that Plaintiffs were

20  entitled to receive under their merchant relationships. CAC ¶¶ 24, 33, 40, 47, 55, 62, 168-70.

21  Accordingly, Plaintiffs allege that but for the Extension, Plaintiffs would have received those

22  commissions. *See id*. Plaintiffs' injuries are fairly traceable to Microsoft's conduct.

23       Microsoft asserts that Plaintiffs are not always entitled to a commission if a consumer

24  clicks on their affiliate link prior to making a purchase and that whether Plaintiffs receive a

25  commission depends on factors such as (1) whether a consumer completes a purchase because

26  of a browser extension; (2) whether a consumer clicks on another affiliate's link; or (3) whether

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - 9
Case No. 2:2025-cv-00088

**Tousley Brain Stephens PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

Plaintiffs' "cookie window" expires before the consumer completes the purchase. Mot. 9-10. None of these factors break the direct causal link between the Extension and Plaintiffs' injuries. That a consumer may click on another affiliate link or complete the purchase outside of the cookie window are accounted for by Plaintiffs' allegations concerning entitlement: Pursuant to their relationships with merchants, Plaintiffs are entitled to a commission when a consumer (1) clicks on their affiliate link and is directed the merchant's website, (2) does not subsequently navigate to the website through a different affiliate link, and (3) completes a purchase within the relevant "cookie" window. CAC ¶¶ 76, 83, 97, 99, 166-68. The other factor Microsoft raises—that browser extensions may be the reason that a consumer completes the purchase—is wholly irrelevant. Once directed to the merchant's website by Plaintiffs, the consumer's decision to buy triggers Plaintiffs' entitlement to the commission. *See id*.

Microsoft also argues that Plaintiffs' injuries are not fairly traceable to Microsoft because lawsuits have been filed against other browser extensions for allegedly engaging in similar conduct. Mot. 10. Setting aside that this argument relies wholly on facts not alleged in Plaintiffs' Complaint, the fact that other browser extensions may have engaged in similar conduct that separately injured Plaintiffs does not "insulate [Microsoft] from Plaintiffs' plausible factual allegations that [Microsoft] harmed them." *See Capital One*, 2025 WL 1570973, at *6 n.15.

**B. Plaintiffs Have Adequately Alleged the CFAA Claim.**

The CFAA provides a claim against "anyone who 'intentionally accesses a computer without authorization or exceeds authorized access,' and thereby obtains computer information." *Van Buren v. United States*, 593 U.S. 374, 379 (2021) (quoting 18 U.S.C. § 1030(a)(2)). The statute "defines the term 'exceeds authorized access' to mean 'to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter.'" *Id.* (quoting 18 U.S.C. §

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

1030(e)(6)). Victims "suffering 'damage' or 'loss' from CFAA violations [may] sue for money damages and equitable relief." *Id.* (quoting 18 U.S.C. § 1030(g)).

Plaintiffs plausibly allege that Microsoft "exceed[ed] authorized access" to the computers of consumers who used the Extension. Specifically, Plaintiffs allege that Microsoft "access[ed] and alter[ed] or remov[ed] tracking codes" on those consumers' browsers "that Microsoft was not entitled to access and alter or remove." CAC ¶ 205. Consumers did not grant Microsoft the access necessary to overwrite the tracking codes on their browsers, nor could they, "because consumers themselves do not have that access and cannot overwrite tracking codes." *Id.* ¶ 207. Accordingly, Microsoft "circumvent[ed] the technical restrictions in place" that prohibited it from altering these codes by requiring consumers to affirmatively click on its extension to activate the codes under false pretenses. *Id.* ¶ 208. When Microsoft did so, it "trick[ed] the online merchant's website into replacing the legitimate tracking codes . . . with Microsoft's illegitimate tracking codes." *Id.* ¶¶ 205-08.

In *Capital One*, the court found that plaintiffs had stated a CFAA claim where—as here—a consumer clicked the browser extension, and the extension caused the plaintiffs' affiliate tracking codes to be replaced in the consumer's browser with the defendant's tracking codes. *See Capital One*, 2025 WL 1570973 at *13. The court held that the plaintiffs adequately alleged the users of the extension had not authorized Capital One to modify plaintiffs' tracking codes when the users clicked on the extension, and thus Capital One had exceeded their "authorized level of access" to consumers' computers. *Id.*

Microsoft's contrary arguments regarding "authorized access" lack merit. Microsoft claims that "Plaintiffs concede that Microsoft could not access, let alone exceed authorized access to, tracking codes on consumers' computers." Mot. 21. But, as discussed above, the CAC alleges that Microsoft did in fact access and replace Plaintiffs' tracking codes, thus causing Plaintiffs' injury. *See e.g.*, CAC ¶¶ 10-11, 97-109, 205-208.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - 11
Case No. 2:2025-cv-00088

Microsoft then contends that even if it did have access, that is simply "the nature of how attribution is recorded, and how merchants enforce the rules of last-click attribution." Mot. 21. But this attempt to frame Microsoft's unauthorized access by typical attribution rules fails for two reasons. *First*, Plaintiffs allege that Microsoft exceeded its authorized access to the computers of Microsoft extension users—not merchants. *See e.g.*, CAC ¶¶ 204-209. *Second*, Microsoft mischaracterizes the severity and nature of its alleged conduct. Here, Plaintiffs allege the "unauthorized . . . alteration of information"—i.e., the replacement and overwriting of their affiliate tracking codes that Microsoft *lacked authorization from consumers to alter*. *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012); CAC ¶¶ 207-209. Thus, Microsoft's attempt to analogize this case to *United Fed'n of Churches, LLC v. Johnson*, a case about a Facebook site administrator *with authorization to change permissions* who changed them for allegedly improper motives, is not persuasive. 522 F. Supp. 3d 842, 848-49 (W.D. Wash. 2021). Similarly, Microsoft's complaint that more extreme forms of hacking are also barred by the CFAA (Mot. 22) is beside the point, because its own alleged conduct is also prohibited. *See e.g., eBay Inc. v. Digital Point Sols., Inc.,* 608 F. Supp. 2d 1156, 1164 (N.D. Cal. 2009) (cookie stuffing violates the CFAA). Microsoft's claim that it is merely "participating as an affiliate in the affiliate marketing business" (Mot. 22) relies on facts outside of the complaint and ignores Plaintiffs' allegations that (1) the "click" on the Extension is not a "click" on an affiliate link and (2) Extension users did not authorize Microsoft to use that click to overwrite existing affiliate codes. CAC ¶¶ 87-109.

Microsoft lastly argues that Plaintiffs failed to allege a cognizable loss under the CFAA. Mot. 23. Microsoft claims only "technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data" count under the CFAA, and that Plaintiffs do not allege losses from any such harms. Mot. 23. But this ignores Plaintiffs' allegations that Microsoft lacked authorization to alter Plaintiffs' affiliate codes through its browser extension but did so anyway, thereby corrupting that data. CAC ¶¶ 87-109, 205-209.

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - 12
Case No. 2:2025-cv-00088

Tousley Brain Stephens PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Microsoft also ignores that the CFAA provides a claim for a "loss" involving "revenue lost . . . because of interruption of service." 18 U.S.C. § 1030(e)(11). Here, Plaintiffs' allegations that they have lost revenue in the form of affiliate commissions due to Microsoft's interruption of the "commission attribution process, including communications between the merchant website and the merchant servers that attributed the sale to a Class Member" satisfy this standard. CAC ¶¶ 9, 63-84, 211; *see Capital One*, 2025 WL 1570973, at *12 (lost commissions due to the interruption of the commission attribution process are a cognizable "loss" under the CFAA).

### C. Plaintiffs Have Adequately Alleged a Washington Consumer Protection Act ("WCPA") Claim.

To prevail on a WCPA action, a plaintiff must prove an "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986). The Washington CPA is to be "liberally construed," and may reach unfair or deceptive conduct that "inventively evades regulation." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 37, 49 (2009). Microsoft contends that Plaintiffs have failed to plausibly allege the first and fifth elements.

A plaintiff may satisfy the first element of the CPA by alleging, for example, that a defendant's conduct is "unethical, oppressive or unscrupulous" or that it causes or is likely to cause "substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits' to consumers or to competition." *Akil v. Freedom Mortg. Corp.*, 2025 WL 1094315, at *10 (W.D. Wash. Apr. 11, 2025) (internal citations omitted).

Here, Plaintiffs sufficiently allege that Microsoft's conduct is just that. Specifically, Plaintiffs allege they are entitled to commissions when their affiliate tracking codes are responsible for directing consumers to the merchant's website to complete a sale. *See* CAC ¶¶ 76, 83, 125, 133, 136, 166-68. Microsoft's use of its Extension to misappropriate sales

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - 13
Case No. 2:2025-cv-00088

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

commissions to which Plaintiffs are rightfully entitled is "unethical, oppressive, or unscrupulous" and therefore an unfair act under the WCPA. *Klem v. Washington Mut. Bank*, 176 Wash. 2d 771, 786-787 (2013).

Plaintiffs also satisfy the "substantial injury" test by alleging that (1) they each suffered monetary harm from Microsoft's conduct in the form of lost commissions (CAC ¶¶ 24, 33, 40, 47, 55, 62, 168-70); (2) there is a substantial volume of transactions involving the extension (*Id.* ¶ 170), and (3) Plaintiffs' statistical analysis shows that an affiliate with as few as 200 qualifying transactions had a near certain chance that at least one commission was taken by Microsoft (*Id.* ¶ 164). *See also Greenberg v. Amazon.com, Inc.*, 3 Wash. 3d 434, 461 (2024) (finding allegations that plaintiffs suffered monetary harm and that defendant's actions had "widespread impacts").

Moreover, Microsoft's misappropriation is neither avoidable by Plaintiffs or consumers, nor outweighed by countervailing benefits. Microsoft is not a "normal participant" in the affiliate marketplace; rather, it owns the browser through which a consumer makes a purchase and uses its position to disrupt the affiliate attribution process and inflict harm on content creators. Further, Microsoft's cookie swap is unavoidable because Microsoft "inserts its cookie at the very last point of the transaction, as the shopper is completing the checkout process." *Id.* ¶ 99. Plaintiffs had no reason to anticipate that the Extension would overwrite their affiliate codes when consumers clicked on it to activate coupons or cashback. Nor are consumers readily aware that their engagement with the Extension, whether successful or unsuccessful in applying coupons, will remove the affiliate cookie of the content creator whose link drove th consumer to the website in the first place. *See Greenberg*, 3 Wash. 3d at 461 ("an injury is reasonably avoidable if consumers 'have reason to anticipate the impending harm and the means to avoid it,' or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact").

Plaintiffs also plausibly allege Microsoft's conduct is deceptive. Plaintiffs need not

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - 14
Case No. 2:2025-cv-00088

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    show Microsoft made any affirmative representations for the purposes of the WCPA. "An

2    unfair or deceptive act or practice need not be *intended* to deceive – it need only have the

3    *capacity* to deceive a substantial portion of the public." *Indoor Billboard/Wash., Inc. v. Integra*

4    *Telecom of Wash., Inc.*, 162 Wash. 2d 59, 74-75 (2007) (internal citations omitted). Here,

5    Microsoft's omission and concealment of the cookie-overwriting functionality of its extension

6    is a "knowing failure to reveal something of material importance" that is 'deceptive' within the

7    CPA." *Id.* at 76 (internal quotations omitted).

8         Microsoft also claims that Plaintiffs cannot show that their injuries are linked to

9    Microsoft's conduct because the consumer makes the choice to click on the Extension. But it is

10   Microsoft's hidden practice of cookie swapping that deprives Plaintiffs of their rightful

11   earnings. As discussed above, the Extension is designed to take advantage of that interaction by

12   wrongfully inserting its affiliate code just before a consumer makes their purchase, even though

13   Microsoft was not responsible for the referral. Plaintiffs have adequately pled their WCPA

14   claim.

15       **D.  Unjust Enrichment**

16        In Washington, claims for unjust enrichment comprise three elements: (1) "a benefit

17   conferred upon the defendant by the plaintiff"; (2) defendant's "acceptance or retention . . .of

18   the benefit"; and (3) that the circumstances would "make it inequitable for the defendant to

19   retain the benefit without the payment of its value." *Young v. Young*, 164 Wash. 2d 477, 484

20   (2008).[1] Here, Plaintiffs have adequately alleged each of these elements.

21

22   _____

      [1] Plaintiffs do not dispute that the core elements of unjust enrichment claims brought under
      Florida, New York, and Ohio law overlap with the elements under Washington law. Microsoft
23   separately notes that unjust enrichment is not an independent cause of action under California
      or Texas law. Mot., App. A at 3. However, courts construing the law in both states have
24   analyzed the claim as a standalone cause of action, with the same core elements as the other
      states at issue here. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015); *see*
25   *also Digital Drilling Data Sys., L.L.C. v. Petrolink Svcs., Inc.*, 965 F.3d 365, 379 n.11 (5th Cir.
      2020). Plaintiffs' analysis here under Washington law (Count Nineteen) therefore applies to
26   Counts Five (CA law), Seven (FL law), Ten (NY law), Fifteen (OH law), and Seventeen (TX
      law).

Microsoft asserts that Plaintiffs' unjust enrichment claims should be dismissed because it did not receive a benefit from Plaintiffs because "Microsoft is paid by online merchants, not by Plaintiffs." Mot. 15. However, Plaintiffs allege Microsoft was paid by online merchants *for purchases that never would have occurred but for Plaintiffs' affiliate links and advertising efforts that resulted in those purchases*. CAC ¶ 234; *see also id.* ¶¶ 257, 281, 321, 334-35, 352. Thus, the money Microsoft received from online merchants directly reflects the value of the benefit that it received from Plaintiffs, because without Plaintiffs' efforts, it would have received nothing.

Microsoft also argues that "there is no privity between Microsoft and content creators like Plaintiffs" (Mot. 15), but unjust enrichment claims do not require privity. *See, e.g.*, *Alvarado v. Microsoft Corp.*, 2010 WL 715455, at *4 (W.D. Wash. Feb. 22, 2010) ("An unjust enrichment claim is not defective where there is no direct privity."); *see also Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 353 P.3d 319, 326 (Cal. 2015) (same); *In re Takata Airbag Prods. Liab. Litig.*, 462 F. Supp. 3d 1304, 1328 (S.D. Fla. 2020) ("direct contact is not required to state a claim for unjust enrichment under Florida law.") *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1111 (N.Y. 2011) ("privity is not required for an unjust enrichment claim"); *Paikai v. Gen. Motors Corp.*, 2009 WL 275761, *5 (E.D. Cal. 2009) (rejecting argument that unjust enrichment claim under Ohio law failed merely because of indirect transactional relationship); *Click v. Gen. Motors LLC*, 2020 WL 3118577, *10 (S.D. Tex. 2020) (privity not required).

Microsoft's argument that "Plaintiffs fail to allege that Microsoft had any knowledge of contracts between Plaintiffs and online merchants" ignores Plaintiffs' allegations that Microsoft monitors and logs detailed information about a consumer's browsing activity, including information reflecting that a consumer accessed a specific merchant's website using a specific affiliate link (such as one of Plaintiffs' links). Mot. 16, CAC ¶¶ 96, 156. Likewise, Plaintiffs allege that Microsoft knew it was diverting Plaintiffs' commissions because it designed the

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - 16
Case No. 2:2025-cv-00088

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

Extension to overwrite any existing affiliate tracking codes with Microsoft's, resulting in Microsoft, rather than the online marketer, being awarded commissions. *See id.* ¶¶ 233, 283, 323, 354. Similar allegations were deemed sufficient to establish a claim for unjust enrichment in *Capital One*. 2025 WL 1570973, at *8. Microsoft attempts to distinguish *Capital One* based on perceived programming differences in how the two extensions function. But these distinctions are insignificant since this Complaint also plausibly alleges that Microsoft was unjustly enriched by overwriting Plaintiffs' affiliate codes CAC ¶¶ 140, 144–46. Thus, similar to *Capital One*, the facts here support that Microsoft violated last-click attribution rules through its unfair and unlawful conduct.

Finally, Microsoft argues that Plaintiffs do not "allege facts suggesting it is inequitable for Microsoft to keep any commissions" (Mot. 16) because "an individual does not have a property interest in a commission until all preconditions are met"—and Plaintiffs have not met those preconditions, because Plaintiffs were not "the consumer's last click." *Id.* This argument once again substitutes Microsoft's self-serving definition of "last click" for the plausible definition alleged in the Complaint. Thus, cases cited by Microsoft premised on plaintiff's failure to satisfy the conditions for payment of a commission (Mot. 16) are inapposite. *See, e.g., Mr. 99 & Assocs., Inc. v. 8011, LLC*, 197 Wash. App. 1021, *1 (2016) (finding that a real estate broker did not "qualify for a commission payment" because he "did not satisfy the pertinent conditions in the brokerage agreement"). Likewise, *California State Emps. Ass'n v. Bogart*, 2015 WL 461646, at *2 (E.D. Cal. Feb. 3, 2015) is unpersuasive as the case concerned a claim for conversion, which requires "ownership or right to possession of the property at the time of the conversion"—as compared to a claim for unjust enrichment, which has no such requirement.

Plaintiffs adequately plead unjust enrichment claims.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

### E. Tortious Interference

"The elements of tortious interference with a contract or business expectancy are: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendant[ ] had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendant[ ] interfered for an improper purpose or used improper means; and (5) resultant damage." *Ocean Beauty Seafoods LLC v. CAPTAIN ALASKA*, 603 F. Supp. 3d 1005, 1011 (W.D. Wash. 2022).[2] Microsoft challenges whether Plaintiffs have adequately pled the first, second, fourth, and fifth elements, as well as whether the "competition privilege" applies. Mot. 10–15. Microsoft's arguments have no merit.

*Business Relationship.* Plaintiffs have adequately pled the first element of the existence of a valid contract or business expectancy. The CAC not only identifies each Plaintiff's merchant partners (CAC ¶¶ 21, 30, 37, 44, 52, 59) but also details the relationships, which are consistent with the "last-click attribution" model. CAC ¶¶ 21-22, 30-31, 37-38, 44-45, 52-53, 59-60, 75-84, 167. Each Plaintiff further alleges that they have invested "substantial time and effort" into cultivating a quantified follower base and have well established relationships with their merchant partners. *E.g.*, CAC ¶¶ 27 -31; *id.* ¶¶ 19-22, 35-38, 42-45, 49-53, 57-60. Plaintiffs also detail the volume of transactions conducted and commissions earned through these ongoing relationships. *E.g.*, CAC ¶¶ 60-61 (plaintiff "has generated over 5,000 orders and earned over $200,000 in commissions payments" in the "past year" and "intends to continue

---

[2] Plaintiffs agree with Microsoft that the elements of tortious interference with contract or prospective economic advantage across the six states at issue have no material differences besides the "competition privilege" addressed herein. (Mot. 10 & n.3 & App. A.) Plaintiffs' analysis here under Washington law (Count Eighteen) therefore applies to Counts Three and Four (CA law), Eight and Nine (FL law), Eleven and Twelve (NY law), Thirteen and Fourteen (OH law), and Eighteen (WA law). Microsoft is wrong, however, about Ohio law not recognizing the tort of interference with prospective business relations. Ohio does recognize such a tort, and its elements are not materially different than the elements under the other states' laws. *E.g.*, *AEGIS, LLC v. Schlorman*, 250 N.E.3d 1251, 1257 (2024). The case cited by Microsoft, *Syed v. Poulos*, 2016 WL 3020066 (Ohio Ct. App. May 26, 2016), does not say otherwise, only that tortious interference with "business expectancy," tortious interference with "prospective economic advantage," and tortious interference with a "business relationship" are all the same thing. *Id.* at *3. That is the tort at issue in Count Fourteen.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

partnering with" listed merchants in the future); *id.* ¶¶ 22-23, 31-32, 38-39, 45-46, 53-54.
Given the length and terms of alleged merchant partnerships, volume of alleged business, and
alleged intent to continue the partnerships, Plaintiffs plausibly allege both existing contracts
and valid business expectancy—particularly at the pleading stage. *Bombardier Inc. v.
Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1188 (W.D. Wash. 2019) (to establish
business expectancy "all that is required is a relationship between parties contemplating a
contract, with at least a reasonable expectancy of fruition"); *Greensun Grp., LLC v. City of
Bellevue*, 7 Wash. App. 2d 754, 769 (2019).

Microsoft's arguments ignore and mischaracterize the details in the CAC. Mot. 11.
Microsoft suggests Plaintiffs must essentially attach every pre-existing contract or allege the
contents of the same to plausibly state a claim—but it cites no authority for this incorrect
proposition. *See Kische USA, LLC v. Simsek*, 2016 WL 6273261, at *9 (W.D. Wash. June 29,
2016) (regarding element of valid business relationship and expectancy, noting that "Stellar
Defendants contend that Kische must be more specific. However, Stellar Defendants provide
no authority for that proposition" (citation omitted)). Microsoft's arguments that the business
relationships are "speculative" and that Microsoft is purportedly uncertain what terms of the
relationships it interfered with is due to its failure to acknowledge the actual allegations in the
CAC. *See e.g.*, CAC ¶¶ 21, 37, 52, 76 (discussing certain Plaintiffs' contracts with Walmart and
Walmart's terms and conditions).

*Microsoft's Knowledge.* Plaintiffs also adequately allege Microsoft's knowledge of
Plaintiffs' business relationships with merchants. This element requires "only that the
defendant knew of facts giving rise to the presence of the business expectancy" and those "facts
need merely show the defendant had 'awareness of some kind of business arrangement.'"
*Greensun Grp.*, 7 Wash. App. 2d at 771 (internal citations omitted).

Here, Plaintiffs alleged that the Extension actively tracks consumers' browsing activity
(CAC ¶ 95) and that Microsoft "receives and retains logs" reflecting the transactions involving

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - 19
Case No. 2:2025-cv-00088

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

the Extension and any cookie replacements, including those for Plaintiffs. *Id.* ¶ 109-55, 156. Such allegations are sufficient to establish knowledge. *See Capital One*, 2025 WL 1570973, at *10 (plaintiffs sufficiently alleged the "knowledge" element of tortious interference where the defendant maintained detailed, contemporaneous logs of the affiliate tracking codes that were overwritten by its browser extension).

Microsoft asserts without authority that Plaintiffs must make detailed allegations regarding exactly what Microsoft knew about Plaintiffs' business relationships with particular merchants. Mot. 12. That is wrong. Plaintiffs' allegations are sufficient to establish that Microsoft had knowledge of facts showing "an awareness of some kind of business arrangement," which is all that is required. *Greensun Grp.*, 7 Wash. App. 2d at 771.

*Improper Purpose or Means.* Plaintiffs adequately allege that Microsoft's interference was for an improper purpose and using improper means, either of which are sufficient to state a claim in Washington. *United Fed'n of Churches, LLC v. Johnson*, 598 F. Supp. 3d 1084, 1099 (W.D. Wash. 2022). "Interference for improper purpose is interference with an intent to harm the plaintiff, and [i]nterference by improper means is interference that violates a statute, a regulation, a recognized rule of common law, or an established standard of the trade or profession." *Zunum Aero, Inc. v. Boeing Co.*, 2022 WL 3346398, at *12 (W.D. Wash. Aug. 12, 2022) (citation omitted).

Plaintiffs plausibly allege improper means. As an initial matter, Microsoft's conduct is independently wrongful and actionable as set forth in the remaining claims in the CAC. In addition, the extension violates the operative "last-click attribution" trade standard as discussed in detail *supra*.

The CAC also plausibly alleges an improper purpose because Microsoft intentionally designed its extension to replace pre-existing affiliate codes. CAC ¶¶ 100, 205-208. Nothing prevented it from designing an extension to only add its affiliate code if its extension was

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - 20
Case No. 2:2025-cv-00088

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

actually a referral that brought consumers to a merchant's checkout page as opposed to something clicked after the consumer was already there.

Microsoft's argument that it "did nothing wrong" (Mot. 13) rests on its improper attempt to invert the pleading standard and ignore Plaintiffs' well-pled allegations. In addition, Microsoft's reliance on *Microsoft v. My Choice Software* (Mot. 13) is misplaced because the defendant argued its allegedly interfering conduct was justified under the terms of an agreement with the plaintiff–Microsoft points to no similar agreement between it and Plaintiffs here. 2018 WL 9662626, *6 (W.D. Wash. Sep. 28, 2018).[3]

*Damages.* Plaintiffs alleged concrete damages in the form of commissions they should have earned but did not because Microsoft's extension replaced Plaintiffs' affiliate tracking codes. CAC ¶¶ 166-171. Plaintiffs provide detailed examples, including actual purchases, where Plaintiffs were entitled to and earned commissions when a consumer was not using the Extension, but use of the Extension resulted in Plaintiffs' affiliate codes being replaced and their commissions being taken. *Id.* ¶¶ 110-155. Also, Plaintiffs' statistical analysis (CAC ¶¶156-165) shows that "with the conservative assumption of a 20% probability that a cookie swap occurs when an online shopper is using Microsoft Edge, affiliates with as few as 100 purchases on which they are eligible to receive a commission have a 97.3% chance that at least one of their commissions would be taken by Microsoft." *Id.* ¶ 163.

Microsoft's characterization that these detailed allegations showing a 97.3% chance of lost commissions are only "speculative" damages is unsupported. Mot. 14. Rather, the one case it does cite, *Amaretto Ranch Breedables, LLC v. Ozimals*, Inc., 790 F. Supp. 2d 1024, 1032 (N.D. Cal. 2011), actually bolsters Plaintiffs' position because the *Ozimals* court suggested that

---

[3] In a footnote, Microsoft claims New York and Florida law have extra requirements that Microsoft's conduct be "intentional and unjustified" (Florida) or an "independent tort" (New York). Mot. 12 n.5. This appears to be a redundant argument with its final argument about the competition privilege defense, discussed herein. Regardless, as explained above, Plaintiffs have sufficiently alleged Microsoft's conduct was intentional, unjustified, and independently tortious.

alleging "failure to meet reasonable sales projections" could establish damages. *Id.* Plaintiffs' details about how they earn commissions and statistical analysis of likely lost commissions due to Microsoft's conduct provide exactly what was missing in *Ozimals*. *See also Capital One*, 2025 WL 1570973, at *10 (applying same analysis regarding plaintiffs' standing to find they "suffered economic injury"). Lastly, Microsoft's quibbles with assumptions in Plaintiffs' analysis amount to a fact dispute unsuitable for resolution at the pleading stage.

    *Competition Privilege.* Microsoft also says California, New York, and Florida recognize a "competition privilege" defense that requires Plaintiffs "prove" Microsoft's conduct is "independently actionable." Mot. 14. First, Microsoft's dubious claim that it is a competitor of Plaintiffs is a factual dispute: Plaintiffs deny that Microsoft competes with content creators such as Plaintiffs, who promote products in order to steer consumers to merchants. Microsoft merely swipes commissions that rightfully belong to Plaintiffs. Second, the competition privilege is an affirmative defense not appropriate for a motion to dismiss. *E.g.*, *Walgreen Co. v. Peters*, 2025 WL 1725160, at *5 (N.D. Ill. June 20, 2025). Third, under Florida, what constitutes "improper means" is a fuzzier concept than "independently actionable" and involves fact disputes unsuitable for resolution now. *See Bluesky Greenland Env't Sols., LLC v. 21st Century Planet Fund*, LLC, 985 F. Supp. 2d 1356, 1367 (S.D. Fla. 2013). Fourth, as discussed above, Plaintiffs have pled Microsoft's conduct included improper means that are independently actionable, so even if this defense were relevant and it required independently actionable conduct, Plaintiffs plausibly alleged such conduct.

### F. California UCL

    The California Unfair Competition Law ("UCL") "creates a cause of action for business practices that are: (1) unlawful, (2) unfair, or (3) fraudulent." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1071 (N.D. Cal. 2012); *see also* Cal. Bus. & Prof. Code § 17200. The statute's coverage is "sweeping" with an "intentionally broad" legal standard that "prohibits

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - 22
Case No. 2:2025-cv-00088

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

wrongful business conduct in whatever context such activity might occur." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006).

Microsoft argues that Plaintiffs' UCL claim—which provides only for equitable relief—fails because Plaintiffs' harms can be adequately redressed by monetary damages. Mot. 19. At this point in the case, it would be premature to determine the adequacy of any potential legal remedies, because "discovery may reveal that claims providing legal remedies are inadequate," *Edelson v. Travel Insured Int'l, Inc.*, 2021 WL 4334075, at *6 (S.D. Cal. Sept. 23, 2021), and "there is still a question of fact as to whether the legal remedies here provide adequate recovery." *Oddo v. United Techs. Corp.*, 2022 WL 577663, at *19 (C.D. Cal. Jan. 3, 2022). Plaintiffs allege that they lack an inadequate remedy at law (CAC ¶ 241) and also seek an injunction, which will confer unique relief. *Id.* ¶¶ 251, 253; *see Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) ("California's consumer protection laws permit courts to issue injunctions that serve different purposes and remedy different harms than retrospective monetary damages.").[4] At this stage, that is sufficient. *See Hrapoff v. Hisamitsu Am., Inc.*, 2022 WL 2168076, at *6 (N.D. Cal. June 16, 2022) ( "*Sonner* simply holds that a plaintiff 'must establish that she lacks an adequate remedy at law before securing' equitable relief—not before pleading it").

Microsoft's challenge to Plaintiffs' standing under the UCL is derivative of its Article III standing challenge and should be rejected for the reasons set forth above in Section IV.A. Plaintiffs satisfy the standing requirements for their UCL claim—they have shown a monetary loss caused by Microsoft's unfair business practice. *See, e.g.*, CAC ¶¶ 121–24 (demonstrating transactions made through Plaintiff Colbow's affiliate links in which he was deprived of a

---

[4] Even if Microsoft has discontinued the coupon feature of the Extension, Microsoft alleges no facts that all of the conduct leading to the displacement of Plaintiffs' affiliate codes has ceased. Whhere a defendant "has allegedly ceased the conduct complained of, the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *U.S. E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 2013 WL 1435290, *10 (N.D. Cal. Apr. 9, 2013) (internal quotation ommitted)).

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - 23
Case No. 2:2025-cv-00088

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

commission when the Extension was activated); *see also AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp. 3d 951, 962 (N.D. Cal. 2014) ("Loss of business . . . as a result of unfair competition is a paradigmatic, and indeed the original, variety of loss contemplated by the UCL.").

Finally, Plaintiffs sufficiently plead Microsoft's conduct is both unlawful and unfair— Plaintiffs have alleged Microsoft's violations of other state and federal laws, including the WCPA and the CFAA. CAC ¶¶ 190–212. *See Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1040 (N.D. Cal. 2013) ("the UCL 'borrows' violations of other laws and treats them as independently actionable"). Microsoft's conduct is also unfair because it significantly threatens or harms the economic activities of content creators. Microsoft recycles its argument that it is a "competitor" and this is therefore an "[i]ntra-competitor dispute[]".[5] As repeatedly explained above, Microsoft is not a competitor. Rather, it is a usurper. As such, Microsoft's diversion of Plaintiffs' rightfully earned commissions is deeply unfair. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp.3d 953, 990 (N.D. Cal. 2016) (declining to dismiss UCL claim where "Defendants' actions violated . . . public policy" and issue of whether "public policy violation is outweighed by the utility of [defendant's] conduct . . . is a question to be resolved at a later stage").

Plaintiffs' UCL claim, which seeks injunctive relief distinct from past monetary harms, satisfies the UCL's standing requirements and is adequately pled.

---

[5] Microsoft asserts that "intra-competitor" disputes are subject to the tethering test applied to UCL claims, "which asks whether defendant's conduct . . . significantly threatens or harms competition" rather than the balancing test "which 'weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Epic Games, Inc. v. Apple, Inc*., 67 F. 4th 946, 1000 (9th Cir. 2023) (internal citations omitted). However, the two "tests 'are not mutually exclusive.'" *Id.* (quoting *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007)). In any event, Plaintiffs satisfy both tests by showing both the harms to public policy based on Microsoft's interference with a prospective economic advantage as well as harms to competition at large by "contravening industry standards and norms that prohibit cookie stuffing . . . to wrongfully secure affiliate commissions." CAC ¶ 247.

1

## V.    <u>CONCLUSION</u>

2

For the foregoing reasons, Microsoft's motion to dismiss should be denied.

3

4

I certify that this memorandum contains 8, 394 words, in compliance with the Local

5

Civil Rules.

6

DATED this 11th day of August, 2025.

7

**TOUSLEY BRAIN STEPHENS PLLC**

8

9

By: */s/ Jason T. Dennett*

10

Jason T. Dennett, WSBA #30686
Joan M. Pradhan, WSBA #58134
1200 Fifth Avenue, Suite 1700

11

Seattle, Washington 98101
Telephone:  206.682.5600/Fax: 206.682.2992

12

jdennett@tousley.com
jpradhan@tousley.com

13

14

Gary M. Klinger (*pro hac vice*)
**MILBERG COLEMAN BRYSON**

15

 **PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100

16

Chicago, IL 60606
Telephone: (866) 252-0878

17

gklinger@milberg.com

18

Alexandra M. Honeycutt (*pro hac vice*)

19

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**

20

800 S. Gay St., STE 1100
Knoxville, TN 37929

21

Telephone: (866) 252-0878
ahoneycutt@milberg.com

22

23

Adam E. Polk (*pro hac vice*)
Simon S. Grille (*pro hac vice*)

24

**GIRARD SHARP LLP**
601 California Street, Suite 1400

25

San Francisco, CA 94108
Telephone: (415) 981-4800

26

apolk@girardsharp.com
sgrille@girardsharp.com

PLAINTIFFS' OPPOSITION TO MICROSOFT'S
MOTION TO DISMISS - 25
Case No. 2:2025-cv-00088

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Derek W. Loeser, WSBA #24274
Cari Campen Laufenberg, WSBA #34354
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com

*Interim Co-Lead Counsel for Plaintiffs*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992