The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE MICROSOFT BROWSER EXTENSION LITIGATION<br><br>This Document Relates to:<br>ALL ACTIONS | No. 2:25-cv-00088-RSM<br><br>**MICROSOFT CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>NOTE ON MOTION CALENDAR:<br><br>September 2, 2025<br><br>ORAL ARGUMENT REQUESTED |

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM)

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I.  Plaintiffs Improperly Seek To Retroactively Amend Their Complaint. ............................ 2

II. Plaintiffs Do Not Plausibly Allege Article III Standing. .................................................... 4

    a.  Plaintiffs Fail To Plead Injury In Fact. ......................................................... 4

    b.  Plaintiffs Fail To Plead That The Injury Is Fairly Traceable ...................... 5

III. Plaintiffs Do Not Plausibly Allege a Claim for Tortious Interference. ............................ 6

IV. Plaintiffs Do Not Plausibly Allege a Claim for Unjust Enrichment. ................................ 8

V.  Plaintiffs Do Not Plausibly Allege A CPA Claim. ............................................................ 9

VI. Plaintiffs Do Not Plausibly Allege a UCL Claim. ........................................................... 10

VII. Plaintiffs Do Not Plausibly Allege a Computer Fraud and Abuse Act Claim. ................ 11

CONCLUSION ..................................................................................................................... 12

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM) - i

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Lighthouse L. P.S. Inc.*,
  No. 15-CV-1976-RSL, 2016 WL 4041198 (W.D. Wash. July 28, 2016) .................................9

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
  239 Cal. Rptr. 3d 577 (Ct. App. 2018) ................................................................................10

*Blotnicki v. PayPal Holdings Inc.*,
  No. 25-CV-01386 (N.D. Cal. Feb. 10, 2025) .........................................................................3

*Campbell v. Honey Sci., LLC*,
  No. 25-CV-459473 (Cal. Super. Ct. Santa Clara Feb. 20, 2025)............................................3

*In re Cap. One Fin. Corp.*,
  No. 1:25-CV-00023, ECF No. 121 (E.D. Va. March 25, 2025) ..............................3, 5, 7, 9, 11

*In re Cap. One Fin. Corp.*,
  No. 1:25-CV-00023, 2025 WL 1570973 (E.D. Va. June 2, 2025) .......................1, 4, 5, 11, 12

*Daley's Dump Truck Serv., Inc. v. Kiewit Pac. Co.*,
  759 F. Supp. 1498 (W.D. Wash. 1991).................................................................................4

*Garza v. Swift Beef Co.*,
  No. 22-CV-06223-PSG, 2024 WL 5415842 (C.D. Cal. Jan. 23, 2024) .................................10

*Greenberg v. Amazon.com, Inc.*,
  3 Wash. 3d 434, 462 (2024)................................................................................................10

*Greensun Grp., LLC v. City of Bellevue*,
  7 Wash. App. 2d 754 (2019)..................................................................................................7

*IMEG Consultants Corp. v. Delta E Consulting, LLC*,
  No. 2:24-CV-01916-RAJ, 2025 WL 1371507 (W.D. Wash. May 12, 2025).......................6, 7

*Just Josh, Inc. v. Retailmenot, Inc.*,
  No. 25-CV-01422 (S.D.N.Y. Feb. 19, 2025).........................................................................3

*Microsoft v. My Choice Software*,
  No. 18-CV-608-RAJ, 2018 WL 966262 (W.D. Wash. 2018) ..................................................8

*Popa v. Microsoft Corp.*,
  No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) .........................................................4

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM) - i

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Satanic Temple v. Labrador*,
   716 F. Supp. 3d 989 (D. Idaho 2024), *aff'd* No. 24-1243 (9th Cir. Sep. 2, 2025) ................................................................................................................... 5

*Schneider v. Cal. Dep't of Corr.*,
   151 F.3d 1194 (9th Cir. 1998) ........................................................................... 2

*Shamrock Foods Co. v. Gast*,
   535 F. Supp. 2d 962 (D. Ariz. 2008) ............................................................... 12

*Squirrels Nest II LLC v. Fisher Broad.-Seattle TV, L.L.C.*,
   161 Wash. App. 1011 (2011) ............................................................................ 9

*Storey v. Amazon.com Serv. LLC*,
   No. 23-CV-1529-KKE, 2025 WL 887373 (W.D. Wash. Mar. 21, 2025) ........... 9

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ............................................................ 7

*United Fed'n of Churches*,
   522 F. Supp. 3d 842, 848 (W.D. Wash. 2022) ........................................... 11, 12

*Van Buren v. United States*,
   593 U.S. 374 (2021) ......................................................................................... 11

*Williams v. Sisolak*,
   No. 22-CV-16859, 2023 WL 8469159 (9th Cir. Dec. 7, 2023) ......................... 6

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM) - ii

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**INTRODUCTION**

Plaintiff's Opposition does not defend the case they have filed. Instead, Plaintiffs try to defend the case they *wish* they had filed. In doing so, Plaintiffs ignore, or misstate, the allegations in the actual Consolidated Class Action Complaint ("CAC"). It makes sense that Plaintiffs would try to change course: the CAC makes it clear that Microsoft followed the rules.

The CAC expressly (and accurately) defines last click attribution—the prevailing attribution model among merchants—as assigning commissions to the source of the "final link clicked by a customer before making a purchase." CAC ¶ 83. Under that definition, Microsoft was the source of the last click and, therefore, the proper recipient of commissions. *See* ECF No. 57 ("Mot."), 6-7. Now, in light of Microsoft's Motion, Plaintiffs pivot to a fundamentally different definition of last-click attribution that appears *nowhere* in, and contradicts, the CAC. Plaintiffs now say last-click actually refers to a consumer's click *before* reaching the merchant's website. This new definition is not the prevailing attribution model, as Plaintiffs' own CAC makes clear, and in any event, Plaintiffs may not amend their CAC by way of opposition briefing, and the Court should reject their effort and dismiss the CAC with prejudice.

Plaintiffs try to distract from this about-face by arguing there is a fact issue regarding whether Microsoft and Plaintiffs are competitors. That argument is beside the point. Whatever one calls the relationship between the parties, they each seek to qualify for online merchant commissions. Plaintiffs' allegations show that Microsoft complied with the attribution rules adopted by those merchants. That Plaintiffs do not like the outcome under those rules is not the basis for a lawsuit; nor does it demonstrate any unlawful conduct by Microsoft.

Plaintiffs' Opposition otherwise fails to provide a meaningful response to the deficiencies raised in Microsoft's Motion. Nothing in their Opposition changes the conclusion that—even applying the new definition of "last click"—they lack Article III standing, and neither Plaintiffs' speculative statistical model nor the distinguishable *In re: Cap. One Fin. Corp. Affiliate Mktg. Litig.*, 1:25-CV-00023 (E.D. Va.) ("*Capital One*") case can save their claims. Similarly, Plaintiffs do not substantively dispute that the CAC fails to plead wrongful conduct supporting their common

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM) - 1

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

law, consumer protection, and computer fraud claims. For at least the reasons above, Plaintiffs have failed to state any claims on which relief can be granted, requiring dismissal.

## ARGUMENT

### I. Plaintiffs Improperly Seek To Retroactively Amend Their Complaint.

Plaintiffs may not amend a complaint through an opposition brief. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("[A] court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Doing so is particularly inappropriate where, as here, the change is inconsistent with core allegations in the pleading. *Id.* (declining to consider Plaintiffs' moving papers asserting accounts "*do indeed* earn interest," as their own complaint suggested that accounts "might *not* have earned any interest," the central issue in dispute). Yet this is precisely what Plaintiffs' Opposition seeks to do.

Consistent with the norm among merchants, the CAC explicitly defines the "last click" for purposes of commission attribution as the "final link clicked by a customer before making a purchase." *Id.* This definition is critical because a core issue in this case is who is the source of the "last click." Mot. 5-6. In their Opposition, Plaintiffs argue for the first time that "Plaintiffs are entitled to a commission if the final click that directs the consumer to the merchant's website prior to a sale is through their affiliate links."[1] Opp. 5. But Plaintiffs' *argument* is inconsistent with their *pleading*.

---

[1] The allegations Plaintiffs cite for the proposition that a plaintiff "regularly partners with online merchants" fail to substantiate this assertion. Opp. 5 (citing CAC ¶¶ 21, 30, 37, 44, 52, 59).

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM) - 2

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

The difference between Plaintiffs' Opposition and their CAC is illustrated below:

| Plaintiffs' "Actual Last Click Definition" | Plaintiffs' "New Last Click Definition" |
|---|---|
| Last-click attribution:<br><br>***"attributes the sale to the affiliate who provided the final link clicked by a customer before making a purchase*** … if a customer clicks on an affiliate link on a blogger's website but later clicks a different affiliate link from another source before completing their purchase, ***the second affiliate—the one with the 'last click'—is the one who gets credit for the sale."***<br><br>CAC ¶ 83. | Last-click attribution:<br><br>***"credits the sale to the creator who drove the consumer from an external website to the merchant's website …*** The 'last click' refers to a consumer's action of clicking an external affiliate link that directs the consumer to the merchant's website … ***regardless of what buttons the consumer clicks once on the merchant's website."***<br><br>Opp. 2. |

Plaintiffs' Actual Last Click Definition was no accident—*twice* they had the chance to amend their complaint to define last-click attribution differently, and *twice* they chose not to.[2] *See* ECF Nos. 1, 39, 53.

Plaintiffs argue that Microsoft is relying on "a self-serving interpretation of Plaintiffs' Complaint," which they say "inverts the pleading standard." Opp. 7. Quite the opposite: relying on the plain text of the CAC is required. And the CAC offers no other definition of last click attribution.[3] Plaintiffs' allegations show that, under their Actual Last Click Definition, merchants' payment of commissions to Microsoft is consistent with the prevailing attribution model. Mot. 6-7.

But even if all that were otherwise, Plaintiffs' CAC still fails to allege facts establishing that they were eligible to receive commissions that Microsoft Shopping improperly received. Contrary to Plaintiffs' New Last Click Definition, merely directing the consumer to a merchant's

---

[2] Notably, at least a dozen similar complaints were previously brought against other browser extensions, including with different definitions of last-click attribution than Plaintiffs' definition in the CAC. *See, e.g.*, *In re Cap. One Fin. Corp.*, No. 1:25-CV-00023, ECF No. 121, (E.D. Va. March 25, 2025) ("*Cap. One* Compl."); *Blotnicki v. PayPal Holdings Inc.*, No. 25-CV-01386 (N.D. Cal. Feb. 10, 2025); *Campbell v. Honey Sci., LLC*, No. 25-CV-459473 (Cal. Super. Ct. Santa Clara Feb. 20, 2025); *Just Josh, Inc. v. Retailmenot, Inc.*, No. 25-CV-01422 (S.D.N.Y. Feb. 19, 2025).

[3] Nor does Plaintiffs' singular reference to a Walmart Affiliate Program change this fact. *See infra* Section III.

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM) - 3

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

website does not automatically create a right to commissions, as commissions are paid at the merchant's discretion and only upon satisfaction of additional conditions. As a result, under either definition, Plaintiffs' CAC fails to plausibly allege either an injury or wrongful conduct by Microsoft, which is fatal to Plaintiffs' claims.

## II. Plaintiffs Do Not Plausibly Allege Article III Standing.

### a. Plaintiffs Fail To Plead Injury In Fact.

Plaintiffs do not allege invasion of a legally protected interest because the CAC does not allege that Microsoft Shopping was ever credited with a commission when it was not the last link clicked by a customer before a purchase. Mot. 5-6.

*First*, neither Plaintiffs' CAC nor their Opposition identifies any concrete and particularized harm by Microsoft. *See Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824, at *4-5 (9th Cir. Aug. 26, 2025) (collecting cases and finding Plaintiff did not meet her burden to demonstrate standing). At most, under either last-click definition, Plaintiffs have alleged a "generalized grievance." *Daley's Dump Truck Serv., Inc. v. Kiewit Pac. Co.*, 759 F. Supp. 1498, 1502 (W.D. Wash. 1991) (no Article III standing where plaintiffs speculate they "would have likely received at least *one* contract out of hundreds" from defendants). Plaintiffs' Opposition attempts to distinguish *Daley's* by claiming Plaintiffs were "contractually entitled to commissions from merchants and that Microsoft wrongfully deprived each Plaintiff of such commissions." Opp. 8. But here, just like *Daley's*, Plaintiffs' CAC only speculates that they "should have been eligible" to receive a commission, and none of Plaintiffs' alleged examples demonstrate that Plaintiffs were ***actually*** entitled to a commission they did not receive. Mot. 6-7. Simply alleging a plaintiff "should have been eligible" to receive a commission is no more than a "generalized grievance" about the lack of potential business, which does not convey Article III standing. *Daley's*, 759 F. Supp. at 1502.

*Second*, Plaintiffs' reliance on a statistical analysis is misplaced and cannot cure the fact that Plaintiffs' alleged injuries are speculative. Their Opposition leans heavily on the holding in *Capital One*. Opp. 6, 9. But unlike this case, which relies on Plaintiffs' Actual Last Click

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM) - 4

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  Definition, the *Capital One* plaintiffs explicitly defined last click as the click "that *leads* the
2  consumer to a merchant's specific website or landing page from which the consumer can complete
3  the purchase." *Cap. One* Compl., ¶¶ 47-48.  In fact, the *Capital One* plaintiffs alleged that last
4  click "is *not* defined as an action the consumer takes once the consumer has already landed on the
5  merchant's site. In other words 'last click' does not literally mean 'last click made before consumer
6  purchase.'" *Id.*  The *Capital One* Court was evaluating *different* allegations and a *different*
7  definition of last click attribution that are inconsistent with what Plaintiffs in this case pled.  Its
8  holding does not apply here.

9  In addition, the expert test purchases in *Capital One* involved *actual* transactions allegedly
10 showing commissions improperly paid to the defendant, which were "bolstered by statistical
11 evidence." *Capital One*, 2025 WL 1570973, at *5 (E.D. Va. June 2, 2025).  By contrast, here,
12 Plaintiffs allege one "actual" transaction, for which Plaintiffs' allegations show that ***Microsoft***, not
13 Plaintiffs, was entitled to the commission under Plaintiffs' *own* last-click definition.  Mot. 7.
14 Plaintiffs' remaining allegations relate to various hypothetical "scenarios" in which, as alleged,
15 Microsoft would have (again) been the proper recipient of merchant commissions, not Plaintiffs.
16 Mot. 6-7.

17 Unlike *Capital One*, therefore, there are no alleged improper commission payments for
18 Plaintiffs' statistical analysis to "bolster." *Capital One*, 2025 WL 1570973, at *5.  It is simply an
19 exercise in probabilities not grounded in any alleged facts. As even Plaintiffs' Opposition
20 acknowledges, its Monte Carlo analysis shows nothing more than a "***chance***" of lost commissions.
21 Opp. 21.  Standing alone, untethered to actual factual allegations, Plaintiffs' statistical analysis is
22 insufficient to establish injury in fact. *Satanic Temple v. Labrador*, 716 F. Supp. 3d 989, 998 (D.
23 Idaho 2024) ("statistical analysis and probabilities will not suffice."), *aff'd* No. 24-1243 (9th Cir.
24 Sep. 2, 2025).

25 **b.     Plaintiffs Fail To Plead That The Injury Is Fairly Traceable.**

26 Plaintiffs fail to plausibly allege they were entitled to receive certain commissions that
27 Microsoft instead received, regardless of which last-click definition is applied.  As they concede,

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM) - 5

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

there are several reasons—having nothing to do with Microsoft Shopping—that would render them ineligible for commissions. Opp. 9-10 (acknowledging Plaintiffs are only eligible for a commission when a consumer: "(1) clicks on their affiliate link … (2) does not subsequently navigate to the website through a different affiliate link, and (3) completes the purchase within the relevant 'cookie' window"). The CAC pleads no facts tracing their failure to receive a commission to *Microsoft*, rather than one of these other factors. And, as detailed in the Walmart Affiliate Program—which is the *only* "contract" Plaintiffs cite in their CAC—an affiliate is only eligible to receive a commission when a litany of conditions is met. CAC ¶ 76, n.8.[4]

Because the purported chain of causation between Microsoft Shopping and Plaintiffs' alleged injury is "attenuated" and "involves numerous third parties," their allegations cannot support standing. *Williams v. Sisolak*, 22-CV-16859, 2023 WL 8469159, at *1 (9th Cir. Dec. 7, 2023). Plaintiffs do not adequately allege a fairly traceable injury and thus lack standing.

### III. Plaintiffs Do Not Plausibly Allege a Claim for Tortious Interference.

Plaintiffs' Opposition offers nothing new regarding the CAC's most basic deficiency: they do not plausibly allege any wrongful conduct by Microsoft under either of Plaintiffs' last click definitions.

**No Business Relationship**. Plaintiffs argue they are not required to "essentially attach every pre-existing contract or allege the contents of the same." Opp. 19. But this deliberately misconstrues both the case law and Microsoft's arguments. Microsoft does not argue that Plaintiffs must attach every pre-existing contract, but rather that they must allege facts showing that "future business opportunities are a reasonable expectation and ***not merely wishful thinking***." *IMEG Consultants Corp. v. Delta E Consulting, LLC*, 2:24-CV-01916-RAJ, 2025 WL 1371507, at *4-5 (W.D. Wash. May 12, 2025) (dismissing tortious interference claim). Speculation that a

---

[4] At any point in the purchasing process, a consumer could (1) disable cookies, (2) click another Qualifying Link before the purchase, (3) complete the purchase without a Qualifying Link; (4) purchase a product that is not a Qualifying Product, (5) fail to accept delivery, (6) fail to remit payment (*e.g.*, a charge back), or (7) return the purchase. https://affiliates.walmart.com/terms. Any of these actions, unrelated to Microsoft Shopping, could have rendered Plaintiffs ineligible to receive commissions.

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM) - 6

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

plaintiff "would have earned that business" does not suffice and does not establish a valid business expectancy. *Id.*

Plaintiffs claim their CAC "not only identifies each Plaintiff's merchant partners … but also details the relationships." Opp. 18. But the allegations supposedly "detailing" the relationships merely state repeatedly that a plaintiff "regularly partners with online merchants." CAC ¶¶ 21, 30, 37, 44, 52, 76. They contain nothing about the "nature and extent of" the alleged relationship, the parties to the contract, when they entered the contract, its duration, or anything about which provisions created the alleged contractual expectancy to a commission. *See UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1115-16 (C.D. Cal. 2015) (dismissing tortious interference claims). At most, Plaintiffs allege they "should have been eligible to receive a commission." CAC ¶ 123. But like *IMEG Consultants*, a bid on business "does not automatically create a valid business expectancy." 2025 WL 1371507, at *4.

**No Knowledge**. Plaintiffs argue Microsoft had knowledge of Plaintiffs' business relationships because Microsoft allegedly "receives and retains logs" reflecting transactions conducted using Microsoft Shopping. Opp. 19-20. But even crediting this as true, general awareness of *transaction logs* does not give Microsoft visibility into *Plaintiffs' contracts with merchants*—contracts to which Microsoft is not a party.[5] Nor would transaction logs reveal any information regarding the terms and conditions under which Plaintiffs are eligible to receive commissions.[6]

**No Improper Purpose or Means**. The CAC fails to allege facts showing improper purpose under the Actual Last Click Definition, which explicitly contemplates that commissions

---

[5] Plaintiffs' reliance on Capital One is, again, inapposite. Whereas Plaintiffs' CAC only alleges that Microsoft "receives and retains logs reflecting these transactions and cookie replacements," Capital One alleged knowledge of both transaction logs *and Plaintiffs' affiliate tracking codes*, which allegedly "identifies [Plaintiff] as the affiliate in the merchant's URL." *Compare* CAC ¶ 156 and Cap. One Compl. ¶¶ 71-75.

[6] Plaintiffs' reliance on *Greensun Group, LLC v. City of Bellevue* is misplaced. *Greensun* involved a defendant who was aware of plaintiffs' plans to open a store, which was sufficient to establish knowledge for a tortious interference claim related to the denial of a license to operate. 7 Wash. App. 2d 754, 771 (2019). By contrast, Plaintiffs' CAC states that each affiliate is identified by a unique numerical code, which does not reveal the identity of any specific affiliate. CAC ¶ 80. Transaction logs, without knowledge of the affiliate associated with each unique ID code, would not provide any awareness of a business arrangement with online merchants.

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM) - 7

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

are attributed to the source of the last click before a purchase. CAC ¶ 83. Under Plaintiffs' own definition, Microsoft cannot possibly be said to have acted with improper purpose when it received the commission for being the last click before purchase. Plaintiffs' attempt to distinguish *Microsoft v. My Choice Software*, Opp. 21, is unavailing because, there, the Court found that Plaintiff failed to allege how conduct, "which was specifically provided for in the Agreement" was wrongful. 18-CV-608-RAJ, 2018 WL 9662626, * 6 (W.D. Wash. 2018). Because both Plaintiffs and Microsoft Shopping agree to be bound by merchants' rules, which *expressly permit* an affiliate to replace existing tracking cookies when the affiliate's link is the last link clicked before a purchase, like *My Choice*, there is nothing wrongful. CAC ¶¶ 81-83.

Plaintiffs also have not alleged improper means. They argue that interference is for an improper means if it "violates a statute, a regulation, a recognized rule of common law, or an established standard of the trade or profession." Opp. 20. As discussed *infra* Sections V, VI, VII, Microsoft did not violate any statute or regulation: each of Plaintiffs' examples illustrates that Microsoft was permitted to receive commissions when it *was* the last click. Plaintiffs do not allege that Microsoft violated any "industry standard"—nor could they, because Microsoft is only eligible to receive commissions when it *is* the last click. That is how Plaintiffs' Actual Last Click Definition works—the only definition pled in the CAC.

**Damages**. Plaintiffs also do not allege concrete damages. *See supra* Section II. Their alleged "examples" are all consistent with Plaintiffs' Actual Last Click Definition and with the principle that multiple publishers can (and do) compete to promote the same products from the same online merchants. Mot. 2-3. Plaintiffs' reliance on a hypothetical "Monte Carlo simulation" lacks any factual basis and, standing alone, will not suffice. Because Plaintiffs do not plead these essential elements, the Court should dismiss Plaintiffs' tortious interference claims.

**IV.  Plaintiffs Do Not Plausibly Allege a Claim for Unjust Enrichment.**

Plaintiffs' unjust enrichment claims fail because Plaintiffs have not conferred a benefit on Microsoft. Plaintiffs have not alleged facts showing that Microsoft received commissions on any sale that was *intended* for, or came *at the expense of*, Plaintiffs. Plaintiffs have not shown they

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM) - 8

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

were even *eligible* to receive challenged commissions. While they argue the purchases "*never would have occurred but for Plaintiffs' affiliate links and advertising efforts*," they fail to allege facts—as opposed to conclusory statements—that they were ever *eligible* to receive commissions.[7] Opp. 16. Plaintiffs provide no basis for the idea that the Court should force Microsoft, simply by virtue of Microsoft receiving commissions, to turn the commissions over to Plaintiffs. *Squirrels Nest II LLC v. Fisher Broad.-Seattle TV, L.L.C.*, 161 Wash. App. 1011, *5 (2011) ("Enrichment alone will not suffice to invoke the remedial powers of a court of equity."). There is nothing "unjust" that would require judicial intervention to transfer Microsoft's rightfully earned commissions to Plaintiffs, merely because they feel slighted or wish the attribution rules were different. *Id.*

As alleged in the CAC, Microsoft Shopping was the "last click" in each alleged scenario, so Microsoft, not Plaintiffs, was eligible to receive the commissions. CAC ¶ 83. To the extent Plaintiffs believe merchants paid the wrong party, Plaintiffs have a contract dispute with the merchants. But where a dispute is between parties to a contract—in this case, Plaintiffs and merchants—an "incidental" beneficiary to that contract is not subject to an unjust enrichment claim. *Allstate Ins. Co. v. Lighthouse L. P.S. Inc.*, 15-CV-1976-RSL, 2016 WL 4041198, *6 (W.D. Wash. July 28, 2016) (dismissing unjust enrichment claim where defendant was "mere incidental beneficiary").

### V.     Plaintiffs Do Not Plausibly Allege A CPA Claim.

Plaintiffs have not pled the requisite unfair or deceptive act for a CPA claim. Microsoft operates by the same rules as all others in the marketplace, which conduct inherently lacks "the capacity to deceive a substantial portion of the public." *Storey v. Amazon.com Serv. LLC*, 23-CV-1529-KKE, 2025 WL 887373, *3 (W.D. Wash. Mar. 21, 2025). Plaintiffs also do not allege that Microsoft acted inconsistently with Plaintiffs' Actual Last Click Definition. CAC ¶ 83. Nor has

---

[7] *Capital One* does not help Plaintiffs here, as Capital One involved a different pleaded definition of last click attribution. *See supra* Section I; Cap. One Compl. ¶¶ 47-48.

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM) - 9

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Microsoft deceived users, who themselves ***choose*** to "***actively engage*** with the browser extension" and enable cookies. *Id.* ¶¶ 100, 76 (emphasis added).

Plaintiffs have not satisfied the requirement to plead a substantial injury caused by Microsoft that was not reasonably avoidable. In their Opposition, Plaintiffs conflate the "reasonably avoidable" standard by claiming that consumers, *i.e.*, shoppers, cannot reasonably avoid injury. Opp. 14. But Plaintiffs are not shoppers. The question is whether the injury is reasonably avoidable to the Plaintiffs, not others. *Greenberg v. Amazon.com, Inc.*, 3 Wash. 3d 434, 462 (2024) (plaintiffs must allege that *their* injuries were not reasonably avoidable). Plaintiffs were (and are) free to compete to be the last click under the same rules as Microsoft, and offer no meaningful response to this point. *Id.* at 461-62.

Finally, Plaintiffs make conclusory statements regarding a "hidden practice of cookie swapping." Opp. 15. But stripped of inflammatory rhetoric, Plaintiffs' actual allegations reveal that they and Microsoft alike use tracking tags in the same manner, *i.e.*, to "identify online marketers as the source of the referral." *See, e.g.*, CAC ¶¶ 81, 117, 193, 208, 216.

## VI.    Plaintiffs Do Not Plausibly Allege a UCL Claim.

Plaintiffs' UCL claims fail because their CFAA and CPA claims fail. Where the "unlawful" conduct alleged under the UCL is the same as the failed underlying legal claims, the derivative UCL claim fails alongside them. *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 239 Cal. Rptr. 3d 577, 599 (Ct. App. 2018).

The UCL claims fail for another reason: a claim may not proceed where an adequate remedy for monetary relief is also available. It is not enough for Plaintiffs to state "they lack an adequate remedy at law, but [] not explain why." *Garza v. Swift Beef Co.*, 22-CV-06223-PSG, 2024 WL 5415842, *9 (C.D. Cal. Jan. 23, 2024). And as one court recently made clear, where UCL claims depend on alleged violations of other state and federal laws—here, the CPA and CFAA, Opp. 24—which *do* allow for an adequate remedy, relief "under the UCL would still be precluded as there would be an adequate remedy at law." 2024 WL 5415842, at *9 n. 5.

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM) - 10

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### VII.   Plaintiffs Do Not Plausibly Allege a Computer Fraud and Abuse Act Claim.

To state a CFAA claim, Plaintiffs must show that Microsoft "exceed[ed] authorized access" to consumers' computers. *Van Buren v. United States*, 593 U.S. 374, 379 (2021). Plaintiffs' allegations show the opposite. Microsoft *had permission* to insert cookies into consumers' browsers: those consumers clicked affirmatively on the extension, CAC ¶¶ 83, 100, Microsoft's use of cookies "is rooted in its browser integration and permissions," *id.* ¶ 98, and users must enable cookies for an affiliate to insert a tracking code. *Id*, ¶ 76. This is hardly "cookie stuffing." Opp. 12.

*Capital One* does not change this. Opp. 13. Among other differences, in *Capital One*, the plaintiffs alleged that defendants "forc[ed] a refresh of the checkout page" and "inject[ed] a hidden tab to overwrite the previous affiliate tracking code," 2025 WL 1570973, at *3, to make it seem as though the customer clicked on a Capital One affiliate *before* reaching the merchant's landing page. *Cap. One*. Compl. ¶ 78. Plaintiffs here allege no such thing. Microsoft updates the affiliate tracking cookie with its own tracking cookie only when Microsoft is the last click, which is consistent with Plaintiffs' Actual Last Click Definition. CAC ¶¶ 83, 98. This is hardly "corrupting [Plaintiffs'] data," Opp. 12, and Plaintiffs cannot reframe rule-abiding last-click attribution activity as "interruption of service" to save their claims.

At most, Plaintiffs allege Microsoft violated terms of use of a merchant's affiliate contract—but "violating a company's terms of use […] is insufficient to state a CFAA claim." *United Fed'n of Churches*, 522 F. Supp. 3d 842, 848 (W.D. Wash. 2022). As Plaintiffs note, *United Fed'n* involved "a Facebook site administrator with authorization to change permissions who changed them for allegedly improper motives." Opp. 12. Plaintiffs admit that Microsoft had permission to insert cookies in the customers' browsers, but allege it did so for improper motives.[8] This alleged conduct is *exactly* like *United Fed'n*, where an administrator *had permission to access*

---

[8]  In the only merchant contract Plaintiffs cite, Walmart specifies that an affiliate will not receive credit for sales unless the browser *is configured to accept cookies*. *See* https://affiliates.walmart.com/terms. On its face, then, the contract shows inserting cookies when the consumer affirmatively chooses to enable cookies on their browsers cannot possibly be an improper motive.

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM) - 11

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

a page, but allegedly accessed it for improper motives. 522 F. Supp. 3d at 848-849 (dismissing claim). That sort of allegation does not state a CFAA claim because "the plain language of [the CFAA] target[s] 'the unauthorized procurement or alteration of information, not its misuse or misappropriation.'" *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965 (D. Ariz. 2008).

Once again, Plaintiffs wishfully rely on *Capital One*, but there the plaintiffs alleged that Capital One exceeded its *own* terms of service and privacy policy, and they alleged those specific terms and policies. 2025 WL 1570973 at *13-14. Plaintiffs here do not even bother to cite the allegedly relevant Microsoft policies it accuses Microsoft of violating.

Under Plaintiffs' logic, if Microsoft's actions violate the CFAA, so does the entire last-click attribution system, including ***Plaintiffs'*** own insertion of tracking codes. That makes no sense and is not conduct the CFAA was intended to prevent. Plaintiffs' CFAA claim falls far short of plausibly alleging the necessary facts and should be dismissed.

## CONCLUSION

For all of these reasons, Plaintiffs' CAC should be dismissed with prejudice.

**Certification:** I certify that this memorandum contains 4200, in compliance with the Local Civil Rules.

Dated: September 2, 2025

By: */s/ Fred B. Burnside*
Fred B. Burnside, WSBA #32491
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 622-3150
E-mail: fredburnside@dwt.com

George Gordon (admitted *pro hac vice*)
Julia Chapman (admitted *pro hac vice*)
DECHERT LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
E-mail: george.gordon@dechert.com
E-mail: julia.chapman@dechert.com

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM) - 12

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

        Gregory Chuebon (admitted pro hac vice)
        DECHERT LLP
        1095 6th Ave
        New York, NY 10036
        Telephone: (212) 698-3500
        E-mail: greg.chuebon@dechert.com

*Attorneys for Defendant Microsoft Corporation*

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM) - 13

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the USDC, Western District of Washington, using the CM/ECF system which will send notification of such filing to the following:

By: */s/ Fred B. Burnside*
Fred B. Burnside, WSBA #32491
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 622-3150
E-mail: fredburnside@dwt.com

***Attorney for Defendant Microsoft Corporation***

MICROSOFT'S REPLY ISO MTD
CONSOL. CLASS ACTION COMPL. (2:25-cv-00088-RSM) - 14

DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax