UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE MICROSOFT BROWSER EXTENSION LITIGATION

Case No. C25-88-RSM

ORDER GRANTING IN PART MOTION TO DISMISS

## I. INTRODUCTION

This matter comes before the Court on Defendant Microsoft Corporation's Motion to Dismiss under Rules 12(b)(1) and 12(b)(6). Dkt. #57. Plaintiffs have filed an opposition brief, Dkt #58, and Microsoft a Reply, Dkt. #59. The Court has determined that it can rule without the need of oral argument. For the reasons stated below, the Court GRANTS IN PART Defendant's Motion.

## II. BACKGROUND[1]

Plaintiffs Aaron Ramirez, Colbow Design LLC, Daniel Perez, Justin Tech Tips LLC, and Storm Productions LLC, individually and on behalf of all others similarly situated, bring this action against Defendant Microsoft Corporation. Plaintiffs are content creators who post on websites or platforms like YouTube, Instagram, and TikTok. One way they earn money is by directing viewers to purchase specific products and services from online retailers. Content creators post "affiliate links" that include an identifying code that is unique to a particular

[1] Except as otherwise noted, the following background facts are taken from Plaintiffs' Amended Complaint, Dkt. #53, and are accepted as true for purposes of ruling on this Motion to Dismiss.

creator, so when a purchase is made using a creator's affiliate link, online retailers know whom to credit with the sale.

Microsoft owns and operates "Microsoft Shopping," a browser extension tool that it advertises as a way for consumers to get online discounts. Microsoft Shopping, however, does not merely identify potential discounts—it replaces content creators' identifying codes with Microsoft's own code, allegedly allowing Microsoft to take millions of dollars in referral commissions away from Plaintiffs. Plaintiffs allege this is intentional.

In many instances, consumers voluntarily install a browser extension for online shopping and register for an account in order to get access to coupons and discounts. By contrast, the Microsoft Shopping extension comes pre-loaded on Microsoft's Edge browser, which is the default internet browser on every Windows PC. For online shoppers, the Microsoft Shopping extension works by searching for available coupons, offering price comparisons or price history, and incorporating a built-in rewards point system called "Microsoft Cashback." Microsoft claims it has saved users of the Microsoft Shopping extension over $14 billion as of the filing of this complaint.

Under industry standards for online marketing, when a shopper clicks an affiliate link and purchases a product, the content creator who posted the link should receive the affiliate commission for the sale because they provided the last link or affiliate code that was clicked before the user made their purchase. This process is referred to as "last-click attribution model" and is the most widely used model for online marketing. When shoppers activate the Microsoft Shopping extension it makes the shopper's interaction with that extension the "last click" for attribution purposes. It does this by substituting its own affiliate marketing identity code into a consumer's internet browser cookie in place of the Content Creator's affiliate marketing identity

code, even though the consumer used the Content Creator's specific affiliate web link to obtain and purchase a product or service. Microsoft gets the commission payment.

An Amended Complaint was filed in this consolidated class action on June 13, 2025. Dkt. #53. Plaintiffs bring causes of action for violations of Washington's Consumer Protection Act ("CPA") and California Unfair Competition Law ("UCL"), violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030 *et seq*., and for state law claims including tortious interference and unjust enrichment under the laws of several states for different subclasses of plaintiffs.

Microsoft moved to dismiss on June 27, 2025. Dkt. #57. Both parties have filed notices of supplemental authority in the ensuing months. *See* Dkts. #62, #71, #72, and #75.

## III. DISCUSSION

### A. Legal Standard

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction, while a motion under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways: (1) a "facial" attack that accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction, or (2) a "factual" attack that contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings. *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014). When a party raises a facial attack, the court resolves the motion as it would under Rule 12(b)(6), accepting all reasonable inferences in the plaintiff's favor and determining whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction. *Id*. at 1122.

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

**B. Standing under Rule 12(b)(1)**

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The plaintiff bears the burden of establishing that he or she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).

Plaintiffs cite to *In re: Cap. One Fin. Corp. Affiliate Mktg. Litig.* ("*Capital One*") 2025 WL 1570973 (E.D. Va. June 2, 2025) as an analogous case. Dkt. #58 at 11. They argue that the

testing of how the Microsoft extension works by their expert shows an actual, concrete monetary loss. *Id*. They discuss a statistical analysis performed by their expert. *Id*.

This kind of evidence is sufficient to establish standing at this early stage in litigation. *See Capital One*; *In re RetailMeNot Browser Extension Litig.*, 2026 U.S. Dist. LEXIS 63184, *12-13 (S.D.N.Y. Mar. 25, 2026); *Wendover Productions, LLC v. PayPal Inc.*, No. 5:24-cv-09470-BLF, ECF No. 277 (N.D. Cal. June 22, 2026). Plaintiffs adequately distinguish the cases cited by Microsoft. *See* Dkt. #58 at 13–14. The Court will not allow this case to get bogged down in factual disputes about how Plaintiffs' expert conducted the testing or statistical analysis; the allegations are sufficient to survive this Motion as a matter of law. Plaintiffs also plausibly allege a "substantial risk" of future harm stemming from Microsoft's conduct. *See San Luis Obispo Mothers for Peace v. United States Nuclear Regul. Comm'n*, 100 F.4th 1039, 1054 (9th Cir. 2024). The Court finds that Plaintiffs have adequately met their burden to demonstrate standing at this stage.

**C. Rule 12(b)(6)**

Microsoft next argues for Rule 12(b)(6) dismissal of Plaintiffs' various state common law claims, then dismissal of the Washington Consumer Protection Act ("CPA") claim, then the California Unfair Competition Law ("UCL") claim, and finally the Computer Fraud and Abuse Act ("CFAA") claim.

**1. Tortious Interference**

Microsoft "analyzes Counts III-IV, VIII-IX, XI-XIV, XVI, and XVIII together given the overlapping elements across the state law claims." Dkt. #57 at 19 n.3. To state a claim for tortious interference in Washington, Plaintiffs must allege: (1) The existence of a valid contractual relationship or business expectancy; (2) defendants had knowledge of that

relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) defendants interfered for an improper purpose or used improper means; and (5) resultant damage. *Travelers Cas. & Sur. Co. of Am. v. Decker*, 756 F. Supp. 3d 1097, 1104 (W.D. Wash. 2024).

Microsoft spends five pages analyzing this claim, only to admit via footnote that "[t]he *Capital One* court denied a motion to dismiss for a similar claim." Dkt. #57 at 24 n.6. Indeed, the *Capital One* case is on point and appears to address most of Microsoft's arguments only to allow this kind of claim to proceed on similar facts. Microsoft attempts but fails to distinguish the case in that same footnote. *See id*. For example, the allegation in this case (as opposed to the facts *Capital One*) that consumers affirmatively clicked to activate the Microsoft Shopping extension does not make it impossible for Plaintiffs to meet the above elements.

Plaintiffs have adequately pleaded the first element of the existence of a valid contract or business expectancy. The Amended Complaint not only identifies each Plaintiff's merchant partners, but also details the relationships, which are consistent with the "last-click attribution" model. Plaintiffs need not attach contracts at the pleading stage. Microsoft's knowledge has been adequately pleaded based on Microsoft maintaining detailed, contemporaneous logs of the affiliate tracking codes that were overwritten by its browser extension. *See Capital One*, 2025 WL 1570973, at *10. The intentional interference and improper purpose are adequately pleaded and will be contested later in this case. Plaintiffs allege concrete damages in the form of commissions they should have earned but did not because Microsoft's extension replaced Plaintiffs' affiliate tracking codes. Factual disputes about the amount of damages are best left for later in this case. Microsoft has failed to convince the Court these claims are properly dismissed under Rule 12(b)(6).

**2. Unjust Enrichment**

Microsoft analyzes Counts V, VII, X, XV, XVII, and XIX together "given the overlapping elements across the state law claims." Dkt. #57 at 24 n.7. In Washington, claims for unjust enrichment comprise three elements: (1) "a benefit conferred upon the defendant by the plaintiff"; (2) defendant's "acceptance or retention . . . of the benefit"; and (3) that the circumstances would "make it inequitable for the defendant to retain the benefit without the payment of its value." *Young v. Young*, 164 Wn.2d 477, 484 (2008). The parties appear to agree that these elements are sufficiently similar in Florida, New York, and Ohio.

Microsoft first argues that the benefit in this case is not "conferred upon the defendant by the plaintiff" because it is not Plaintiffs who are allegedly giving something of value to Microsoft, but the online merchants who are paying Microsoft instead of Plaintiffs. Dkt. #57 at 24. Plaintiffs counter that Microsoft is benefiting from earlier work done by Plaintiffs, and that "[s]imilar allegations were deemed sufficient to establish a claim for unjust enrichment in *Capital One*, 2025 WL 1570973, at *8." Dkt. #58 at 22–23. The Court agrees with these points and also finds that a discussion of element three requires a deeper analysis of the facts of this case than is warranted at this stage. This claim will not be dismissed.

The Court finds that differences in California and Texas law are insufficient to warrant dismissal of those claims at this time.

**3. CPA Claim**

To prevail on a CPA action, a plaintiff must prove an "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986). The Washington CPA is to be "liberally

construed," and may reach unfair or deceptive conduct that "inventively evades regulation." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 49 (2009).

This District has recently clarified that "a plaintiff may satisfy the first element of a private CPA claim—an unfair or deceptive act—in a number of ways." *Akil v. Freedom Mortg. Corp.*, 2025 WL 1094315, *10 (W.D. Wash. Apr. 11, 2025) (citations omitted). Specifically:

> A plaintiff may allege that an act is in violation of the public interest. Or a plaintiff may claim that an act is unethical, oppressive, or unscrupulous. A plaintiff may also allege that the acts cause or are likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

*Id.* (cleaned up).

The Court finds that Plaintiffs have alleged an unfair or deceptive practice in trade or commerce. However, the public interest element is missing. Microsoft adequately demonstrates that its behavior may harm Plaintiffs, but not consumers. *See* Dkt. #57 at 27 ("Being a normal participant in the affiliate marketplace causes no injury to consumers, who pay the same price for the products regardless of who is rightfully credited the last-click commission. Indeed, consumers may end up paying less by activating Microsoft Shopping's comparison and cashback features."). Plaintiffs are not consumers alleging deception by Microsoft, they are competitors in the business of affiliate marketing. Nor have Plaintiffs adequately alleged that consumers are being deceived by Microsoft, because the pleading alleges that consumers are choosing to actively engage with the Microsoft browser extension. This claim is properly dismissed under Rule 12(b)(6).

**4. UCL Claim**

The California Unfair Competition Law ("UCL") "creates a cause of action for business

practices that are: (1) unlawful, (2) unfair, or (3) fraudulent." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1071 (N.D. Cal. 2012); *see also* Cal. Bus. & Prof. Code § 17200.

Microsoft argues that Plaintiffs' UCL claim—which provides only for equitable relief—fails because Plaintiffs' harms can be adequately redressed by monetary damages. Plaintiffs argue that it is "premature to determine the adequacy of any potential legal remedies, because 'discovery may reveal that claims providing legal remedies are inadequate,' and 'there is still a question of fact as to whether the legal remedies here provide adequate recovery.'" Dkt. #58 at 29 (citing *Edelson v. Travel Insured Int'l, Inc.*, 2021 WL 4334075, at *6 (S.D. Cal. Sept. 23, 2021); *Oddo v. United Techs. Corp.*, 2022 WL 577663, at *19 (C.D. Cal. Jan. 3, 2022)).

The Court agrees, and also finds that Plaintiffs have sufficiently pleaded the above substantive elements without reliance on the CPA or CFAA claims. This claim will not be dismissed at this stage.

**5. CFAA Claim**

To state a CFAA claim, Plaintiffs must allege that defendant "(1) accessed a 'protected computer,' (2) without authorization or exceeding such authorization that was granted, (3) 'knowingly' and with 'intent to defraud,' and thereby (4) 'further[ed] the intended fraud and obtain[ed] anything of value,'" and (5) caused a loss in a one-year period of at least $5,000. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009). "[A]n individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Van Buren v. United States*, 593 U.S. 374, 396 (2021). *See also hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F. 4th 1180, 1198 (9th Cir. 2022). "[T]he plain language of [the CFAA]

target[s] 'the unauthorized procurement or alteration of information, not its misuse or misappropriation.'" *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965 (D. Ariz. 2008).

Microsoft argues that the CFAA is an "anti-hacking statute," not an "expansive misappropriation statute." Dkt. #57 at 30 (citing *United States v. Nosal*, 676 F.3d 854, 857 (9th Cir. 2012); *SunPower Corp. v. SunEdison, Inc.*, 129 F. Supp. 3d 918, 919 (N.D. Cal. 2015)).

The problem for Plaintiffs is that they do not allege Microsoft exceeded authorization to access a consumer's off-limits files. As Microsoft puts it, "[a]t no point do Plaintiffs allege Microsoft garners an attribution in this marketplace without the affirmative clicks and conduct of the consumer." Dkt. #57 at 31. Microsoft adequately distinguishes the facts of this case from *Capital One* for this claim. Dkt. #59 at 15 ("Among other differences, in Capital One, the plaintiffs alleged that defendants 'forc[ed] a refresh of the checkout page' and 'inject[ed] a hidden tab to overwrite the previous affiliate tracking code,' 2025 WL 1570973, at *3, to make it seem as though the customer clicked on a Capital One affiliate before reaching the merchant's landing page.").

The Court will thus dismiss this claim under Rule 12(b)(6).

**D. Leave to Amend**

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The parties do not meaningfully engage in a discussion of possible cures to the deficiencies above. The Court will dismiss with leave to amend.

## IV. CONCLUSION

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendant Microsoft's Motion to Dismiss, Dkt. #57, is GRANTED IN PART.

(2) Plaintiffs' claims brought under the Washington Consumer Protection Act and the Computer Fraud and Abuse Act are DISMISSED under Rule 12(b)(6) with leave to amend. The remaining claims are not dismissed. Plaintiffs may file a second amended complaint no later than November 11, 2026.

(3) The Court will now issue a scheduling order in this case.

DATED this 9th day of October, 2026.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE